# Formal Complaint Regarding Conduct During March 6th Parent Request PPT Meeting.

From: Robert ([redacted]verizon.net)

To: jstewart@milforded.org

Cc: [redacted]yahoo.com; acutaia@milforded.org; arizzo@milforded.org; jdavis@milforded.org; ttruscello@milforded.org; ldougherty@milforded.org; kkristan@milforded.org; nmacklin@milforded.org; dstuart@milforded.org

Date: Monday, March 10, 2025 at 06:23 PM EDT

To the Team,

I am writing to formally express serious concerns about the conduct exhibited by district staff during the Parent-Requested PPT meeting held on March 6th. **The unprofessional, obstructive, and confrontational** manner in which this meeting was conducted not only undermined the purpose of the discussion but also directly hindered my ability to advocate for my son, [redacted]

As this was a meeting I specifically requested, I had expected a respectful and productive exchange to address my concerns and have my questions honestly answered. However, throughout the meeting, I was met with frequent and deliberate interruptions whenever I attempted to raise questions or make points. My sentences were often cut off mid-way, and I was silenced when attempting to bring up critical matters.

Ms. Stewart, in particular, repeatedly interrupted me and dismissed my questions with remarks such as, 'We need to move on from your question,' or, 'Going back and forth over tit for tat, we're not going to make any progress,' clearly intended to discourage me from seeking clarification or asking further questions. Instead of addressing my concerns or answering my current question, she would abruptly cut me off and interject, "Do you have any other questions?" These dismissive comments were clearly intended to sidestep and avoid further addressing my concerns, leaving my questions unanswered and preventing other staff members from responding. On several occasions, I was silenced mid-sentence so others, such as Ms. Truscello, could interject and derail my points. This calculated behavior made it evident that my questions, particularly those addressing uncomfortable truths and critical issues, were deliberately avoided. These repeated efforts to silence me left me feeling disregarded and undermined, making it increasingly difficult to focus on advocating effectively for my son, [redacted] Ultimately, this pattern of dismissive interruptions and efforts to shut down meaningful dialogue created an atmosphere where my concerns were not only ignored but actively suppressed.

I repeatedly reminded Ms. Stewart, Ms. Rizzo, and the team to refrain from interrupting me, as such behavior was disrespectful, unprofessional, and made it difficult to maintain my train of thought. Yet, the interruptions continued, even as I extended the courtesy of allowing them to speak. Adding to the confrontational tone, Ms. Stewart raised her voice, became loud, and even threatened to terminate the meeting simply because I stated that my questions needed to be answered and reminded her of the purpose of the meeting.

This confrontational and dismissive tone undermined the very spirit and purpose of the meeting, which was to advocate for and address matters concerning my son. Instead of fostering meaningful collaboration, the team's behavior eroded the cooperative spirit required under IDEA and discouraged productive discussion.

When I did manage to ask questions, my sentences were often cut off mid-way, and my concerns were

frequently deflected, sidestepped, or dismissed—an apparent effort to avoid accountability. Instead of receiving transparent responses, I was met with defensive and evasive comments. For instance, Ms. Rizzo repeatedly interjected, accusing me of “saying inaccurate things” and 'manipulating words' and 'piecing together pieces to create a narrative that isn’t true,' and even told me, 'you’re reading that incorrectly,' despite the fact that I was quoting the district’s own communications verbatim. This was clearly intended to distort the facts and make me doubt my perception of events. **Particularly troubling were these baseless accusations, which were designed to deflect attention from the district's own conduct—conduct that clearly mirrored the very accusations being leveled against me.**

When I attempted to raise questions and concerns about the district's communications in previous emails, Ms. Stewart attempted to silence me by saying, "Do you have any other questions that do not pertain to emails?" This statement was not only dismissive but also an explicit attempt to restrict me from addressing my concerns. As these emails were directly relevant to the issues under discussion, this tactic further exemplifies the district's pattern of deflection and avoidance of accountability.

Additionally, there were statements made during the meeting that were clearly distorted and did not align with the facts. These misrepresentations undermined the integrity of the discussion and created unnecessary confusion, further obstructing a constructive exchange. This pattern of distortion, along with the team’s refusal to provide clear answers, raises serious doubts about the district's commitment to transparency and accountability.

Another major concern is the district's outright and ongoing refusal to address my questions and concerns via email, which dates back to August 2024. Despite numerous attempts to seek clarification in writing, I was told by Ms. Stewart that these matters would only be discussed during a meeting. However, even during the meeting I requested, the district demonstrated the same pattern of avoidance. My questions were continually dismissed and deflected, or outright ignored, leaving critical concerns and questions unresolved. This ongoing refusal to provide clear, accountable responses—both in writing and during the meeting—further exposes the district’s lack of transparency and erodes any belief that it is engaging in good faith.

Compounding these issues, there was a glaring misrepresentation of meeting details. During the discussion, Ms. Stewart stated that I had received a revised invite containing transition planning. In reality, this revised invite was only uploaded to the district’s website on January 24th—eight days after the meeting—and only after the IEP had been finalized with the addition of 'transition planning' language. Additionally, Ms. Stewart referred to the meeting as taking place at the 'end of January,' but the meeting actually occurred on January 16, 2025. This discrepancy raises further concerns about the accuracy of the district's statements and its transparency. Such inconsistencies only deepen my concerns about the district's procedural integrity and willingness to provide clear, truthful information.

Finally, when I raised concerns about being instructed to collect my son’s medical records from the Milford Department of Health by Ms. Stewart, I was abruptly silenced by her without receiving any explanation or resolution as to why. This left yet another important issue unaddressed.

**It is important to note that the recording of this meeting speaks for itself**, as it captures the **unprofessional and confrontational** conduct exhibited by the district team throughout the discussion. Additionally, the recording documents a plethora of inconsistencies and discrepancies in the statements made, further raising concerns about the accuracy and reliability of the information presented. At times, I was made to question my understanding of the facts, as my valid concerns were dismissed or contradicted without clear justification, which only compounded the sense that the team was attempting to obscure the truth. **This recording will now be preserved as evidence.**

The conduct exhibited during this meeting—frequent interruptions, avoidance of accountability,

sidestepping concerns, distortion of facts, unfounded allegations, raised voices, and baseless accusations—not only hindered my ability to advocate effectively for my son's educational needs but also appeared to be aimed at discrediting my role as a parent. These behaviors, coupled with the ongoing refusal to engage transparently, have left me with no confidence in the district's willingness to work in good faith.

Robert

# Re[redacted]AIL] Immediate Action Required: Request for Removal of Improper Statement in [redacted] IEP

From: Jennifer Stewart (jstewart@milforded.org)

To: [redacted]verizon.net

Cc: [redacted]yahoo.com; acutaia@milforded.org; arizzo@milforded.org

Date: Monday, March 31, 2025 at 06:12 PM EDT

---

Good evening,

To remove the statement and incorporate the parent input into the IEP, we will need to process an amendment. The IEP cannot be reopened without either holding a meeting or completing an amendment, and I believe an amendment would be sufficient in this case.

Ms. [redacted] since you have the authority to make educational decisions, you would need to sign the amendment paperwork. Would you like Tara to proceed with the amendment to accommodate Mr. [redacted] request?

Thank you.

> On Mon, Mar 31, 2025 at 6:00 PM Robert <[redacted]verizon.net> wrote:
>
> > Dear Ms. Stewart,
> >
> > I am writing to formally request the immediate removal of the following statement that was improperly added to the Parent and/or Student Input section of [redacted] current IEP:
> >
> > "At the March 6, 2025 PPT meeting, Mr. [redacted] requested that the following statement be entered, word for word into the Parent and/or Student Input section. While the District-based members of the PPT disagree with Mr. [redacted] perspective, they honored Mr. [redacted] request to list the following statement."
> >
> > This statement is inappropriate for inclusion in the Parent and/or Student Input section for the following reasons:
> >
> > 1. IDEA Compliance: Under the Individuals with Disabilities Education Act (IDEA), the parent's input is required to be documented verbatim and without modification in the IEP. The district is not permitted to add prefaces, disclaimers, or comments about the parent's perspective in this section. My input was to be included exactly as I provided it, without alteration or any additional commentary.
> >
> > 2. FERPA Compliance: The Family Educational Rights and Privacy Act (FERPA) mandates that student records be maintained accurately and in a manner that reflects the actual input from the parent. The district's addition of a statement expressing disagreement with my perspective violates this requirement by presenting a misleading version of my input and altering the nature of the input I provided.
> >
> > 3. Accuracy and Integrity of the Record: It is essential that the Parent and/or Student Input section accurately reflects only the parent's words. The district's inclusion of a prefatory statement in this section not only misrepresents my input but also undermines the integrity of the document itself and must be corrected to reflect my input verbatim.
> >
> > Therefore, I respectfully request that the district immediately remove the prefatory statement and ensure that my exact, unaltered input is entered into the Parent and/or Student Input section, as required by law.
> >
> > I trust that this matter will be addressed without delay, as the inclusion of the prefatory statement in the Parent and/or Student Input section is not only inappropriate but also a violation of procedure. Please confirm in writing that this correction will be made, and provide me with a revised copy of [redacted] IEP as soon as

possible.

Robert.

On Fri, Mar 7, 2025 at 8:01 AM, Jennifer Stewart <jstewart@milforded.org> wrote:

Good Morning,

The document will be uploaded by March 13th.

Have a good weekend.

Jen

On Thu, Mar 6, 2025, 5:42 PM Robert <[redacted]verizon.net> wrote:

Ms Stewart,

And when will we be able to view the uploaded letter from [redacted] psychologist on the CT-SEDS website?

Robert and Karen

On Thu, Mar 6, 2025 at 5:10 PM, Jennifer Stewart <jstewart@milforded.org> wrote:

Mr. [redacted]

You will receive the IEP on Thursday March 13, 2025.

Jen

On Thu, Mar 6, 2025 at 5:06 PM Robert <[redacted]verizon.net> wrote:

Ms Stewart,

Please confirm a time frame on when both will be completed.

Robert and Karen

On Thu, Mar 6, 2025 at 5:01 PM, Jennifer Stewart <jstewart@milforded.org> wrote:

Hi Mr. [redacted]

I am in receipt of your email.

Jen

On Thu, Mar 6, 2025 at 4:54 PM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

Following our discussion during today's PPT meeting, we would like to request the following:

1. Please handwrite the attached notes directly into the parent input section of [redacted] current IEP.
2. Additionally, we ask that you upload the attached letter from [redacted] psychologist, who recommends Woodhouse Academy as very good choice for [redacted] placement, to the CT-SEDS website.

For your reference, I have also left copies of both documents with Ms. Kirby to provide to you before I left.

Kindly confirm receipt of this request via email.

Robert and Karen

--

JEN STEWART
Director of Pupil Personnel
Milford Public Schools
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

JEN STEWART
Director of Pupil Personnel
Milford Public Schools
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

**JEN STEWART**
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

# Re: [EXT MAIL] Request for Clarification on Transition Planning Notice

From: Robert ([redacted]verizon.net)

To: jstewart@milforded.org

Cc: [redacted]yahoo.com; acutaia@milforded.org; arizzo@milforded.org; ttruscello@milforded.org; jdavis@milforded.org; dkoosa@milforded.org; ldougherty@milforded.org; kkristan@milforded.org; nmacklin@milforded.org; dstuart@milforded.org

Date: Tuesday, April 8, 2025 at 11:24 AM EDT

Ms. Stewart,

The critical questions outlined in previous communications remain unanswered, and responses continue to deflect or dismiss the issues raised without providing clarity. Transparency and accountability in [redacted] educational planning are essential, and continued avoidance of these questions is unacceptable.

The handling of transition planning in this process raises significant procedural concerns that have yet to be properly addressed. It is critical to understand the reasoning behind decisions that directly impact the ability to make informed educational choices. The following outstanding questions require clear and direct answers:

On what exact date was the revised meeting invitation, including transition planning, sent prior to January 16? How was it delivered?

If transition planning was not anticipated, how was the decision made in real time that agency representatives were not appropriate to attend?

Why wasn't transition planning flagged as an agenda item in advance, especially given the outplacement request on December 10th?

Why was transition planning language retroactively added to the PPT notice after the IEP was finalized instead of being included beforehand?

The retroactive addition of transition planning language suggests a failure to provide adequate notice, undermining the ability to meaningfully participate in [redacted] educational planning. This issue cannot be framed as merely an oversight—it has direct consequences for procedural integrity. A clear and complete response addressing each of these concerns is expected without further delay.

Robert.

> On Fri, Apr 4, 2025 at 10:54 AM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Mr. [redacted] and Ms [redacted]
> >
> > The January 16, 2025, meeting was held for the annual review and to address a parent request. During the discussion, the team focused on [redacted] transition to sixth grade, recommending that he attend Harborside and establishing goals and objectives to support this move. These transition-related goals and objectives were incorporated into his finalized IEP.

However, since transition planning was discussed during the meeting, it was marked off on the meeting invite that day. Ideally, the team should have included transition planning on the PPT invite beforehand, rather than checking it off the day of the meeting.

Regards,

Jen

On Thu, Apr 3, 2025 at 11:24 AM Robert <[redacted]verizon.net> wrote:

> Ms. Stewart,
>
> We are following up on the below email sent on March 12, as we have yet to receive a response or clarification on the outlined questions.
>
> As these questions are critical and require your immediate attention, we urge you to respond promptly and address each point in full. Continued lack of response raises concerns about transparency and accountability, and it is essential that we receive a comprehensive reply.
>
> Please provide answers to all outlined questions.
>
> Robert and Karen
>
> On Wed, Mar 12, 2025 at 7:50 PM, Robert <[redacted]verizon.net> wrote:
>
>> Ms. Stewart,
>>
>> I must point out that none of the specific questions I raised have been addressed directly. I require clarity on the following points:
>>
>> 1. **Transition Planning Invitation:** During our March 6, 2025, meeting, you stated that a new invitation with transition planning was sent prior to the January 16 meeting. However, we did not receive any such invitation before the meeting. Why was this not addressed directly in your response?
>> 2. **Timing and Delivery of Invitation:** You mentioned that this new invitation was sent, but we received no communication reflecting transition planning until after the IEP was finalized on January 24, 2025. Can you clarify the exact date this invitation was sent and how it was delivered to us before the January 16 meeting?
>>
>> These are straightforward questions requiring clear, direct answers, which were not provided previously.
>>
>> Additionally, I would like to clarify that the meeting on January 16, 2025, was not simply for an "annual review and parent request," as you have stated. It was specifically requested in relation to our concerns about [redacted] outplacement and the need for appropriate educational support. To further emphasize this point, we sent a letter to the district on December 10, 2024, explicitly requesting an outplacement meeting. The district was well aware that this meeting was centered on the outplacement request, not merely a general parent request. Misrepresenting the purpose

of the meeting in your response and the PPT notice raises serious concerns about the district's transparency and integrity.

Moreover, the additional language added to the PPT notice on January 24th states that agency representatives were not appropriate to attend to assist in transition planning. This raises a fundamental question: if the district claims to have had no prior knowledge that transition planning would be discussed during the meeting, how could it have determined, in real time, that agency representatives were not appropriate to attend? This contradiction is both troubling and indicative of a lack of transparency in the district's planning process.

While it is understood that agency representatives are not always required for transition planning, any decision to exclude their participation must be accompanied by documented reasons, such as the lack of parental consent or the agency not being responsible for transition services. In this instance, no rationale was provided, leaving the decision baseless and unsubstantiated.

The district's failure to communicate this critical information before the meeting not only denied us the opportunity to make informed decisions but also compromised the integrity of the process itself. Parents have the right to meaningful participation in educational planning for their child, and the district's actions undermined our ability to advocate effectively for [redacted] needs.

Furthermore, by withholding this information, the district denied us the opportunity to make an informed decision, compromised our ability to prepare effectively for the meeting, and deprived us of the chance to discuss, as parents, whether agency representatives would have been appropriate and beneficial to [redacted] transition planning. This lack of transparency not only hinders collaborative decision-making but also raises concerns about whether the district is fulfilling its responsibility to provide meaningful parental involvement as required by law.

Parents are considered equal partners in the Planning and Placement Team (PPT) process, which includes transition planning. As parents, we hold the right to decide who we wish to attend PPT meetings on our behalf, including agency representatives who can provide additional support and expertise. By failing to notify us about the potential inclusion of transition planning in advance of the January 16 meeting, the district effectively undermined our ability to exercise these rights and make informed decisions about [redacted] educational planning.

Additionally, during the March 6, 2025, meeting, it was explicitly stated that requesting outplacement was inherently tied to transition planning. Ms. Stewart stated, "Requesting outplacement would be a transition, so that brought up the conversation about transition." When I inquired, "So you talked about it at the meeting, why wasn't this on the original notice to inform us prior?" Ms. Stewart responded, "Because we were just talking about 5th grade and the annual review. 6th grade got brought up, that's why it was added." Ms. Rizzo then added, "Initially, it was a PPT to talk about 5th grade, but we got close to your annual review time, which then made us talk about it."

However, when I followed up with, "So you knew you were going to talk about transition planning at that meeting?" the team responded in unison, "No, we did not. We did not." This direct contradiction raises significant concerns about the accuracy and transparency of the district's planning process. If transition planning was recognized as an inherent part of the outplacement request and actively discussed during the meeting, why was this not anticipated and clearly flagged in advance?

Furthermore, if the meeting was, as stated, intended for [redacted] annual review, it would be logical to expect that transition planning, particularly the transition from 5th

to 6th grade, would naturally be part of that process. Annual reviews are designed to assess progress and plan for the upcoming year, and a grade-level transition is an integral component of such discussions. For the district to claim they were unaware transition planning would arise at this meeting is inconsistent with both the purpose of an annual review and the district's responsibilities to ensure comprehensive educational planning.

Finally, the transition planning language was retroactively added to the PPT notice after the meeting, once the IEP had already been finalized. This raises additional questions about the integrity of the district's process. Transition planning is a critical element of the IEP and should have been addressed as part of the meeting agenda beforehand, not altered afterward.

To address these concerns, I request direct and unambiguous answers to the following:

1. On what exact date was the new invitation, with transition planning language, sent to us prior to the January 16 meeting?
2. How was this invitation delivered to us?
3. How did the district determine that agency representatives were not appropriate to attend if transition planning was not previously planned or anticipated to be discussed?
4. Why wasn't transition planning flagged as an agenda item in advance, particularly given the outplacement request and the nature of the meeting?
5. Why wasn't the transition planning language addressed or mentioned prior to the finalization of the IEP if it was deemed critical to [redacted] educational planning?

Your continued avoidance of these questions and lack of clarity is unacceptable. Please understand that we are fully documenting the district's actions and omissions regarding this matter. These omissions have compromised our ability to make informed decisions and engage meaningfully as participants in [redacted] educational planning. We expect a prompt, clear, and accurate response without further deflection or evasion.

Robert and Karen

On Monday, March 10, 2025 at 05:21:27 PM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Mr. [redacted]

The meeting on January 16, 2025, was held for an annual review and parent request. During the meeting, the team discussed [redacted] transition to sixth grade and recommended he attend Harborside, along with setting goals and objectives to support his transition. The finalized IEP includes these transition-related goals and objectives. Since transition was discussed at the meeting it was marked off on the meeting invite the day of the PPT.

Regards,

Jen

On Sat, Mar 8, 2025 at 2:42 PM Robert <[redacted]verizon.net> wrote:

> Ms. Stewart,

During the PPT meeting on Thursday, March 6, I asked: *"Given the district's omission, does it acknowledge that this directly compromised our ability to prepare for the meeting effectively?"*

Your response was: *"No, it does not because we didn't have a meeting in December. We didn't have it till the end of January, which you were given a new invite with the transition planning."*

I need to point out a major inconsistency in your statement. The meeting actually took place on January 16, 2025—not "the end of January," as you claimed. This discrepancy raises serious concerns about the accuracy of your response and makes me question the transparency you often claim.

I'm asking for clarification on the following:

1. **Exact Date**: On what exact date are you claiming this new invitation with the transition planning language included was provided to us before the January 16 meeting?
2. **Method of Delivery**: How was this invitation delivered to us?

To be absolutely clear, we never received any new invitation with transition planning reflected on it prior to the January 16 meeting. The document with this language was only created after [redacted] IEP was finalized on January 24, 2025.

You say the district is transparent with us, but this situation demonstrates the opposite. How is this being transparent?

I expect a clear and immediate response.

Robert

--

JEN STEWART
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

JEN STEWART
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

# Re: [EXT MAIL] FERPA Request

From: Robert ([redacted]verizon.net)

To: jstewart@milforded.org

Cc: arizzo@milforded.org; acutaia@milforded.org; [redacted]yahoo.com; ldougherty@milforded.org; ttruscello@milforded.org; jdavis@milforded.org; kkristan@milforded.org; nmacklin@milforded.org; dstuart@milforded.org; dkoosa@milforded.org

Date: Tuesday, April 8, 2025 at 12:30 PM EDT

Ms. Stewart,

Despite your recent response below, you have once again dismissed and deflected several key questions, and the discrepancies in the records provided continue to raise significant concerns regarding the accuracy and transparency of the documentation. Transparency and accountability are paramount.

**1. Inconsistent Staff Access to Log Entries**

You mentioned that the school staff and secretary who provided the records do not have permission to view all log entries. However, this explanation does not align with the evidence received. Specifically, you claim staff members and the secretary have provided log entries for us including those from January 6, January 14, March 19, and April 4. Meanwhile, you are the one who provided the log entries to us.

- **Why were certain log entries provided on some occasions, but others, such as the September 4, 2024 entry, were missing?**
- **If staff members and the secretary are said to lack access to certain records, how is it that they were able to provide other entries without any issues?**

**2. New Entries Added in the April 4 Log**

The April 4 log you provided includes new entries from dates such as March 8, 2024; February 29, 2024; May 26, 2022; April 7, 2022; and February 24, 2020—entries that were entirely absent from the logs provided on January 6, January 14, and March 19.

- **Why were these specific entries missing in the earlier records and only added in the April 4 log?**
- **If these incidents were known and documented previously, why were they omitted until now?**

The fact that these entries appeared in the April 4 log and were absent in previous records raises serious concerns about the accuracy and completeness of the information provided.

**3. Clarification on Pronouns and Data Collection in Incident Logs**

We had to repeatedly request clarification before you confirmed that the pronouns "he" and "the student" refer to [redacted] **Why was this information not made clear from the start?** Historically, the logs have included his name, so this shift to vague language is both concerning and unacceptable.

Why was this change made? You have made serious accusations regarding our child, and presenting these records in such an unclear and misleading manner only compounds the situation. According to [redacted] he is being blamed for things he did not do and denies the district's accusations.

**4. Contradictory Statements Regarding Record Submission and Missing Documentation**

On January 8, 2025, you stated, “All records in our possession have been sent to you.” However, this statement has proven to be false, as additional documentation has consistently surfaced each time we pointed out missing information.

- **How is it possible that the Data Collection – Incidents Log, which contains incidents not included in the previous logs, was only provided on March 19th?**
- **Why were incidents mentioned in the April 4 log absent from the previous records on January 6, January 14, and March 19?**
- **Why is there a shift in how information is presented, including the use of only pronouns in the Data Collection – Incidents Log?**

**5. Incidents Involving [redacted] and Missing Information**

In the incidents mentioned in the logs, [redacted] is being accused of behaviors he denies. Specifically, [redacted] was allegedly involved in an incident where he grabbed the back of a classmate’s head and pushed it down, as well as putting his hands on a classmate’s legs while coming down the slide. [redacted] has categorically denied these accusations.

- **If these incidents truly happened, why were these alleged incidents, which are claimed to have occurred between November and December of 2024, not reported to us previously?**
- **If these incidents truly happened, why weren’t they shared at the January 16th meeting or during the parent-teacher conference with Ms. Stuart?**

Furthermore, [redacted] teacher, Ms. Stuart, claims that [redacted] acted as though he was going to hit a student with his Chromebook and allegedly attempted to push another student off the playscape. [redacted] has again denied these actions. We are concerned that these incidents are being fabricated or exaggerated, which is causing harm to his reputation.

- **Why were these accusations never disclosed to us until now?**
- **Why were the reflection sheets, which were mentioned in the logs, never provided to us at any point?**

We expect these matters to be addressed immediately and thoroughly, with clear, complete answers to ALL our questions. The continued lack of transparency and ongoing inconsistencies in the documentation are entirely unacceptable, and we trust that you will treat this with the urgency it deserves.

Robert.

> On Friday, April 4, 2025 at 06:12:51 PM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> Mr. [redacted]
>
> The staff are referring to your son using either 'he' or 'the student' as pronouns.

Jen

On Fri, Apr 4, 2025 at 4:28 PM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

In response to your below email regarding the missing Power-school log entry from September 4, 2024, and the explanation provided about staff access limitations. After thoroughly reviewing the records and the information shared, there are several critical discrepancies and concerns that need to be addressed.

**Contradictions Regarding Staff Access:**

The statement that "the school staff and secretary who provided the records for you do not have permission to see all log entries" does not align with the evidence provided. Specifically:

The log entries you provided to us from January 6, January 14, March 19, and now the April 4th were allegedly provided by different staff members and the secretary. However, during the meeting, it was stated that Ms. Dougherty provided the log entries to you from January 6 and January 14, which were then emailed to us by you. No mention of a secretary was made.

The April 4 log entry you just attached and are now providing includes additional incidences that were not present in any of the previous log entries. Specifically, these newly added incidences include entries from March 8, 2024; February 29, 2024; May 26, 2022; April 7, 2022; and February 24, 2020. The inclusion of these incidences raises significant questions about why they were missing from earlier versions of the logs provided on January 6, January 14, and March 19.

Given these points, we must ask: Does the secretary and the staff members involved lack access to view these particular entries? If so, how is it possible that some of these individuals were able to provide log entries on other occasions? This explanation does not add up and raises serious concerns about the accuracy and transparency of the process.

**Inconsistencies in Records and Data Collection -Incidents:**

Your previous statement mentioned that "staff may use terms like 'he' or 'the student' instead of a student's name in these records." However, this response seems to misrepresent our initial concern. We were not referring to the PowerSchool log entries but to **the DATA COLLECTION-INCIDENTS log**. **Please see attached DATA COLLECTION-INCIDENTS Log** These incidences, dated between September 16, 2024, and December 12, 2024, use terms such as "the student" “student” and "he" without identifying the individual involved.

Additionally, we note with concern that this specific **DATA COLLECTION-INCIDENTS log** was quietly inserted into your March 19th email to us. Despite bringing this issue to your attention, along with questions about who "he" “the student” and "student" refers to in the data collection records, you have yet to address this or provide clarification on this particular log entry in its entirety.

To ensure transparency and accountability, we request the following specific clarifications regarding the **DATA COLLECTION –INCIDENTS log.**

**"Who is specifically referred to as 'he,' 'the student,' or 'student' in the records? What is the name of the individual engaging in these behaviors in each of these incidents?**

Transparency and accountability are paramount. Please provide us answers to all of our questions

and concerns ASAP.

Robert and Karen

On Friday, April 4, 2025 at 10:54:09 AM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Hello Mr. [redacted] and Ms [redacted]

The school team identified the reason why the log entry from September 4, 2024, was missing. Access to viewing and downloading PowerSchool entries varies among staff members. The school staff and secretary who provided the records for you do not have permission to see all log entries. The district is working to resolve this issue promptly.

I have attached all available PowerSchool log entries for your review. Please note that staff may use terms like "he" or "the student" instead of a student's name in these records.

Regards,
Jen

On Thu, Apr 3, 2025 at 8:36 PM Robert <[redacted]verizon.net> wrote:

> Ms. Stewart,
>
> Your continued deflection and dismissal of our questions and concerns are deeply troubling. Transparency and accountability are fundamental, and as parents of [redacted] we are entitled to clear, direct answers to the questions we have raised.
>
> We request that you provide detailed and transparent answers to all of our concerns without further delay. Specifically, we expect an explanation for why the 9/4/24 incident was omitted from the January 14, 2025, and March 19, 2025 logs, despite its inclusion in the January 6, 2024 record. Additionally, we require clarification regarding the origin of the Data Collection-Incidents log, as well as the vague terms "He" and "Student," which remain unidentified in the entries.
>
> These issues cannot be ignored. Please provide a thorough and timely response ASAP, as we will be documenting this communication for our records.
>
> Robert and Karen
>
> On Thu, Apr 3, 2025 at 6:48 PM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Mr. [redacted] and Ms. [redacted]

The district has provided you with all of your son's educational records and is currently in the process of collecting emails in response to your FOIA request.

Regards,

Jen

On Thu, Apr 3, 2025 at 11:46 AM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

We are following up on our below email sent on March 23rd, as we have yet to receive a response. The questions outlined below remain unanswered, and we require direct answers to all points, along with a full explanation addressing the concerns we raised.

Continued lack of response raises serious concerns about transparency and accountability. We expect a clear and comprehensive reply without further delay. If there is a reason for the delay, we expect a direct and honest explanation.

Please provide answers to all outlined questions, along with the necessary clarification regarding the concerns we raised.

Robert and Karen

On Sun, Mar 23, 2025 at 8:59 PM, Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

We are following up on the FERPA request submitted on **March 10, 2025**, and your response on **March 19, 2025**. After reviewing the documents you **quietly attached** to the email, several serious issues have emerged that require immediate attention and resolution. These discrepancies undermine the integrity of the records and the communication process, and we are requesting a clear and transparent explanation of these matters."

### 1. Omission of the 9/4/24 Incident

**At the March 6, 2025**, PPT meeting, I specifically asked about the **9/4/24** incident involving our son, [redacted] where he was observed throwing woodchips and using profanity. However, when asked why it was omitted and deleted from the incident log I was sent on **January 14th**, my concern and question were completely deflected, and I received no transparent response. This incident was clearly documented in the **January 6, 2024 log**, yet it has been repeatedly omitted from both the **January 14, 2025** and **March 19, 2025** PDF documents you provided as attachments.

As I have previously informed the team on **September 30, 2024**, it was clearly pointed out to everyone that our son, [redacted] has been coming home **crying hysterically**, repeatedly telling us that he is **being blamed for things he did not do**. This situation is deeply troubling, and the ongoing omissions from the

incident logs only add to his distress. It is unacceptable for a child to be subjected to this kind of emotional turmoil, and for us, as parents, to be left in the dark about critical incidents involving our son. How can we trust what the district reports to us when they have **exaggerated and misrepresented** [redacted] behavior, **retracted or omitted** key records, and failed to acknowledge the emotional toll this is taking on him? How can we trust that [redacted] voice is being heard when he's being blamed for things he didn't do, and **the district is not accurately reflecting** his experiences or addressing the harm this is causing?

For your reference, I am attaching the **January 6, 2024 Columbia Suicide Severity Rating Scale**, (you provided us) which includes the 9/4/24 incident, yet this same entry appears to have been omitted in the subsequent records. Given that the district explicitly acknowledged in an **April 11, 2024 communication** that parents are contacted for behaviors, including inappropriate language, the omission of this incident raises serious questions about how the district is documenting and communicating student behavior.

Furthermore, this omission directly contradicts the **May 4, 2023** letter from the district, in which they acknowledged the need to improve communication with us. Given that acknowledgment, it's becoming increasingly difficult to trust the district's commitment to that promise when critical incidents, such as the one on 9/4/24, are not consistently recorded or communicated according to district policy

We need a **full explanation** of why this specific entry from **9/4/24**—which states:

"Dougherty, Lauri - Social Worker - Discussed with [redacted] throwing wood chips yesterday and his use of profanity today. Reviewed recess expectations. This was a verbal warning for [redacted] Parents will be contacted if this behavior occurs again."

Was **completely omitted** from the **January 14, 2025** and **March 19, 2025 logs** despite being recorded in the **January 6, 2024 log**.

## 2. Unacknowledged Data Collection-Incidents Log

In your response on **March 19, 2025**, I was surprised to see the inclusion of a **Data Collection-Incidents log**, which had not been previously mentioned or referenced. This log contains **13 incidents** from **9/16/24 to 12/12/24**, and its sudden appearance raises significant concerns about transparency and accuracy.

- **Lack of Acknowledgment:** The log was quietly included without any reference in the body of your email. If this log was genuinely part of my FERPA request, it should have been explicitly referenced and explained. Instead, it was included without any context or explanation, making it unclear why it was part of the response.
- **Lack of Transparency:** The log refers to incidents involving the terms "He" and "Student" without identifying which student the incidents relate to. This lack of clarity makes it impossible for us to determine which student these incidents pertain to. Given the importance of accuracy and

transparency in this matter, we respectfully request that you clarify who the "He" or "Student" refers to. Understanding which student these incidents relate to is essential for evaluating the accuracy and completeness of the records.

### Request for Action

The ongoing issues with omissions, unclear communication, and the lack of transparency have raised significant concerns about the integrity of the records we have received. We respectfully request the following steps to address these issues:

**1. Clarification of the 9/4/24 Incident**
please provide a detailed explanation for why the 9/4/24 incident involving our son, [redacted] was completely omitted from the January 14, 2025 and March 19, 2025 logs that you sent us, despite being clearly documented in the January 6, 2024 log you originally sent us. This omission raises serious concerns regarding the accuracy, completeness, and consistency of the records provided, as well as the district's adherence to its own communication policies.

**2. Clarification on the Data Collection-Incidents Log**
Please confirm when the Data Collection-Incidents log was created and explain why it was not referenced in your response to my FERPA request. Additionally, it was attached without acknowledgment or explanation, which is concerning. Furthermore, the log refers to incidents involving "He" and "Student," without identifying which student the incidents pertain to. This lack of clarity makes it impossible to assess the accuracy of the records. We request that you clearly identify which student is involved in these incidents for proper context.

The district's failure to provide accurate and complete records, along with ongoing issues with transparency and communication, has made it increasingly difficult for us to trust the information provided. As parents, we are entitled to access full, accurate, and timely records regarding our child's education, and it is essential that these concerns are addressed without delay. We expect a prompt response.

Robert and Karen

On Thursday, March 20, 2025 at 09:29:08 AM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Dear Mr. [redacted] and Ms. [redacted]

Any notes shared with other staff members have been included in your FERPA request. All email correspondence will be provided to you electronically.

Best,

Jen

On Wed, Mar 19, 2025 at 5:03 PM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

Regarding the meeting notes, I understand that certain notes are being classified as sole possession records and are not considered educational records under FERPA. However, I respectfully request clarification on whether any of these notes were shared with other staff members or incorporated into my son [redacted] official educational records. If any of these notes were shared or included in documents such as [redacted] IEP, PPT meeting records, or other formal educational planning documents, I would ask that those specific records be included in the disclosure, as they would no longer be considered sole possession records under FERPA.

Additionally, I would like to request that all records, including emails and meeting notes, be provided to me in electronic format (e.g., PDF, email attachments). This will streamline the process and help avoid the cost associated with printing paper copies. As the records are already in digital form, I trust this will be a more efficient and cost-effective way to receive them.

Thank you

Robert.

On Wednesday, March 19, 2025 at 04:24:04 PM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Dear Mr. [redacted] and Ms. [redacted]

With respect to your March 10, 2025 email, the District is in the process of collecting and producing all records from your last request (September 5, 2024) to the present, in accordance with the Family Educational Rights and Privacy Act (“FERPA”). Please note the following:

1. As part of your request, you have made multiple requests for “emails” and “meeting notes”.
    a. Emails are not considered education records under FERPA. However, the District will proactively search and produce all emails pertaining to your son under the Freedom of Information Act (“FOIA”), dating back to your last FOIA request in 2024. You will be charged $0.50 per page for these records.

    b. Further, “meeting notes” that are personal staff notes are “sole possession records” and are not education records. Sole possession records are therefore not disclosable pursuant to FERPA. All notes that were shared between staff members will be produced.

2. All emails and education records will be redacted as necessary to prevent the disclosure of other students'/families' FERPA-protected information and the disclosure of attorney-client privileged correspondence.

Regards,
Jen

On Mon, Mar 10, 2025 at 6:44 PM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

I am writing to formally request access to records under the Family Educational Rights and Privacy Act (FERPA) for my son, [redacted] (Robert [redacted] who is a student at JFK Elementary School in the Milford School District. As a parent, I am exercising my right to obtain copies of my child's educational records, as guaranteed under FERPA.

This request is directed to all staff members involved with [redacted] educational planning, including but not limited to the team responsible for his IEP, PPT meetings, and any related documentation or communications.

Specifically, I am requesting any and all records, documents, and communications—both electronic and physical—pertaining to the following topics, regardless of the specific terminology used:

1. **Planning and Scheduling for the January 16, 2025, PPT Meeting:**
   - Any and all internal and external communications, including emails, memos, meeting notes, and other records, involving school district personnel related to the planning, scheduling, and preparation of the January 16 PPT meeting.
   - Any communications regarding the meeting agenda, topics to be discussed, or decisions to be made, including drafts or final versions of meeting notices and supporting documents.
2. **Outplacement Request Submitted on December 12, 2024:**
   - All records, notes, internal communications, emails, or documentation referencing my formal outplacement request for [redacted] submitted on December 12, 2024.
   - Any correspondence, discussions, or internal meeting notes related to the receipt, review, or consideration of this outplacement request by district personnel.
3. **Transition Planning:**
   - Any and all communications, records, or documentation related to transition planning for my son [redacted] including but not limited to:
     - Discussions about transition planning prior to, during, or after the January 16 PPT meeting.
     - Communications regarding why transition planning was omitted from the December 17

notice for the January 16 meeting.
    - Any communications or notes explaining the district's decision to add transition planning retroactively after the January 16 meeting.

4. **Creation and Modification of Notices and Documentation (Including the January 24, 2025, Notice):**
    - All records, notes, and communications related to the drafting, revision, or finalization of the January 24, 2025, PPT notice, including the decision to add language about transition planning.
    - Any communications or documentation justifying the inclusion of retroactive language in the January 24 notice or explaining the purpose of the updated notice.
5. **General Communications Pertaining to My Son's IEP and Educational Planning:**
    - Any and all communications, documents, meeting notes, or records related to [redacted] IEP, outplacement request, transition planning, or educational programming between December 1, 2024, and the present.
    - This includes any references to [redacted] or [redacted] myself (Robert [redacted] or his mother, Karen [redacted]

**To Ensure Comprehensive Coverage:** For efficiency, I am requesting that all communications and records include:

- My son's name, [redacted] or [redacted].
- References to terms such as "outplacement," "transition planning," "January 16 PPT," or "January 24 notice."
- Any discussions, decisions, or considerations related to the above topics, regardless of the specific terminology used.

If any records are redacted or withheld, please provide a written explanation, including the specific FERPA exemption(s) that justify the decision to withhold information.

I request that you respond to this request within the time-frame allowed by law.

I look forward to your prompt response.

Robert [redacted]

--

[redacted] MAIL] Objection to Proposed Placement and May 6 PPT Meeting for [redacted]

From: Jennifer Stewart (jstewart@milforded.org)
To: [redacted] verizon.net
Cc: arizzo@milforded.org; ttruscello@milforded.org; [redacted] yahoo.com
Date: Monday, May 5, 2025 at 11:20 AM EDT

Good Afternoon,

I hope you're doing well. I wanted to check in and see whether you both will be attending the PPT tomorrow. If you're unable to make it, please share an alternate date that works for you between May 7th and May 22nd—ideally by the end of this week.

Just a reminder: [redacted] Extended School Year (ESY) services have not yet been planned.

Regards,

Jen

> On Tue, Apr 29, 2025 at 5:15 PM Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Please see revised email below. I stated Eastshore,but I should have written Westshore.
> >
> > Thank you for your email. During [redacted] annual review, the PPT did not discuss whether or not [redacted] was eligible for Extended School Year services. We need to have a PPT meeting in order to determine whether [redacted] requires ESY services during the month of July. In addition, we commonly have transition PPT meetings for students transitioning between schools, and [redacted] school team is going to change next year, regardless of where he attends school. At this PPT meeting, a recommendation will need be made by the PPT regarding what are the appropriate services and environment that [redacted] requires for his sixth grade year. Since [redacted] current school team previously suggested exploring Harborside, we will invite members from Harborside to attend the PPT meeting. In addition, we are going to invite members from West Shore, so that everyone can discuss and determine what would be the most appropriate setting for [redacted] to receive his services. The final recommendation for [redacted] school for sixth grade will be made at this PPT meeting. We are prepared to proceed with this meeting and hope you will

please attend so that you can share your perspective and participate in the decision making process. If you would like to proceed with an alternate date between May 7th and May 22nd please let me know when you are available by the end of this week, and we will try to accommodate your scheduling request. Otherwise, we will plan to proceed with the PPT meeting on May 6th.

Regards,
Jen

On Tue, Apr 29, 2025 at 4:50 PM Jennifer Stewart <jstewart@milforded.org> wrote:

> Thank you for your email. During [redacted] annual review, the PPT did not discuss whether or not [redacted] was eligible for Extended School Year services. We need to have a PPT meeting in order to determine whether [redacted] requires ESY services during the month of July. In addition, we commonly have transition PPT meetings for students transitioning between schools, and [redacted] school team is going to change next year, regardless of where he attends school. At this PPT meeting, a recommendation will need be made by the PPT regarding what are the appropriate services and environment that [redacted] requires for his sixth grade year. Since [redacted] current school team previously suggested exploring Harborside, we will invite members from Harborside to attend the PPT meeting. In addition, we are going to invite members from East Shore, so that everyone can discuss and determine what would be the most appropriate setting for [redacted] to receive his services. The final recommendation for [redacted] school for sixth grade will be made at this PPT meeting. We are prepared to proceed with this meeting and hope you will please attend so that you can share your perspective and participate in the decision making process. If you would like to proceed with an alternate date between May 7th and May 22nd please let me know when you are available by the end of this week, and we will try to accommodate your scheduling request. Otherwise, we will plan to proceed with the PPT meeting on May 6th.
>
> Regards,
> Jen
>
> On Mon, Apr 28, 2025 at 5:18 PM Robert <[redacted]verizon.net> wrote:
>
>> Ms. Stewart,
>>
>> We are writing to formally notify you that we do not consent to the proposed placement at Harborside Middle School for [redacted] Therefore, there is no basis for a PPT meeting scheduled for May 6 regarding a placement we have not agreed to.
>>
>> We have already completed [redacted] annual review, and no further PPT meeting is necessary. Any attempt to move forward with a placement we have not agreed to is not appropriate.
>>
>> Since there is no agreement regarding Harborside, [redacted] must be placed at his home middle school pending any further resolution.
>>
>> Please update your records to reflect that we do not agree to the proposed placement at Harborside.

Sincerely,

Robert [redacted] and Karen [redacted]
Parents of [redacted] [redacted]

--

**JEN STEWART**
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

**JEN STEWART**
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

**JEN STEWART**
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

## Re: [EXT MAIL] Re: PPT Date

From: Robert ([redacted]verizon.net)

To: jstewart@milforded.org

Cc: [redacted]yahoo.com; arizzo@milforded.org; nmacklin@milforded.org; acutaia@milforded.org

Date: Friday, May 16, 2025 at 02:25 PM EDT

---

Ms. Stewart,

Your response is disingenuous and fails to address the core issue.

The IEP currently states “No” for ESY services, despite your own admission that the team never discussed [redacted] eligibility. Documenting a decision without any discussion or parental input is a clear procedural violation under IDEA.

Whether or not it is “not uncommon” to reconvene in the spring is irrelevant when a determination has already been made and documented in violation of required procedures.

There will be no meeting. We are not in agreement with [redacted] remaining in the Milford school district, and we made that explicitly clear at the annual review. At that same meeting, we also informed the district that we believe [redacted] has been subjected to discrimination.

All remaining concerns, including ESY and placement, will be addressed through due process.

Robert

> On Fri, May 16, 2025 at 2:09 PM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Good Afternoon, It is not uncommon that the school team and parents convenue another PPT after the annual review to discuss ESY services and transition services. The school team did say on the record at the annual review meeting a meeting would be held in the spring. The school team is planning to do that. Jen
> >
> > JEN STEWART
> > *Director of Pupil Personnel*
> > *Milford Public Schools*
> > 203-783-3410
> > jstewart@milforded.org
> > 70 West River Street, Milford, CT 06460
> >
> > On Fri, May 16, 2025, 6:32 AM Robert <[redacted]verizon.net> wrote:
> >
> > > Ms. Stewart,
> > >
> > > We do not see a need for further discussion regarding this matter. We intend to **address all concerns through due process**, as we are not in agreement with the district’s handling of [redacted] education.

Additionally, the IEP **clearly states "No" for ESY services**. If this determination was made **without proper discussion**, it **should not have been documented without parental input**—yet, that is exactly what happened.

As you previously stated:

*"During [redacted] annual review, the PPT did not discuss whether or not [redacted] was eligible for Extended School Year services. We need to have a PPT meeting in order to determine whether [redacted] requires ESY services during the month of July."*

*"Just a reminder: [redacted] Extended School Year (ESY) services have not yet been planned."*

As you previously **tried to justify the meeting**, you stated that ESY was never discussed, despite the **IEP already reflecting a decision**.

Additionally, as previously stated in **our email on December 10, 2024, as well as at [redacted] annual review**, we have been requesting **outplacement** due to the district's failure to provide [redacted] with a **free and appropriate public education (FAPE)** and for violating parental rights.

Given that **the annual review took place over four months ago**, and the IEP **already reflects a decision**, any concerns regarding ESY—as well as all other unresolved matters—will be addressed appropriately **through due process**, not through retroactive meetings to fix procedural failures.

Regards,

Robert.

On Wed, May 14, 2025 at 11:42 AM, Jennifer Stewart <jstewart@milforded.org> wrote:

Good Afternoon,

As discussed during [redacted] Annual Review PPT meeting, the School Team recommended reconvening later in the 2024–2025 school year to talk about his transition to middle school. This includes identifying the services and accommodations he may need, as well as reviewing the different program options available.

At this point, no final decision has been made regarding where [redacted] will attend middle school next year. However, the District needs to move forward with the PPT meeting to ensure we can plan appropriately for his sixth-grade year.

To support this process, the District has invited representatives from both [redacted] home middle school and the Harborside program to provide information about their offerings. This will allow the PPT to make an informed decision about what setting will best meet [redacted] needs.

Parents are essential members of the PPT. The District strongly encourages your attendance and values your input and concerns as

part of the decision-making process.

Regards,

Jen

On Wed, May 14, 2025 at 8:07 AM Robert <[redacted]verizon.net> wrote:

> Ms. Stewart,
>
> As previously stated, we do not consent to the proposed placement at Harborside Middle School, and therefore, we will not be attending a PPT meeting regarding this matter. Our position is final, and no further discussion is necessary.
>
> For your reference, please find below the letter we originally sent on April 28, 2025, outlining our position:
>
> Ms. Stewart,
>
> We are writing to formally notify you that we do not consent to the proposed placement at Harborside Middle School for [redacted] Therefore, there is no basis for a PPT meeting scheduled for May 6 regarding a placement we have not agreed to.
>
> We have already completed [redacted] annual review, and no further PPT meeting is necessary. Any attempt to move forward with a placement we have not agreed to is not appropriate.
>
> Since there is no agreement regarding Harborside, [redacted] must be placed at his home middle school pending any further resolution.
>
> Please update your records to reflect that we do not agree to the proposed placement at Harborside.
>
> Sincerely,
>
> Robert [redacted] and Karen [redacted]
> Parents of [redacted]
>
> Please update your records accordingly.
>
> On Thu, May 8, 2025 at 11:00 AM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Hello,
> >
> > I'm following up on a previous email regarding the PPT meeting. Since we didn't receive any alternate dates, the

originally scheduled meeting on May 6th has passed. Attached is a new notice for a PPT now scheduled for May 21st at 2:00 PM.

Jen

--

JEN STEWART
Director of Pupil Personnel
Milford Public Schools
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

JEN STEWART
Director of Pupil Personnel
Milford Public Schools
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

Re: [EXT MAIL] Urgent: Required Updates to [redacted] IEP - Parent Input

From: Robert ([redacted]verizon.net)
To: jstewart@milforded.org
Cc: acutaia@milforded.org; arizzo@milforded.org; [redacted]yahoo.com
Date: Wednesday, June 4, 2025 at 09:49 AM EDT

Ms. Stewart,

Your response stating "The email will be added to the file" is insufficient and does not address our explicit request.

To be unequivocally clear: we are requiring that the **full content of the parent input statements** provided in our letter dated May 29, 2025, be **integrated directly into the "Parent and/or Student Input" section of** [redacted] **current IEP**, without edits.

As detailed in our previous communication, this is necessary to:

- **Accurately reflect our position regarding the May 21, 2025 PPT meeting**, correcting the misrepresentation of our absence and providing the essential context of our non-participation.
- **Ensure all prior parent input statements reflecting ongoing and unresolved concerns are properly included in the current IEP**, as required by IDEA for meaningful parental participation and transparency. We did not consent to the removal of these critical historical concerns from the IEP.

The IEP is a living document that must accurately reflect all team input, including parental concerns, especially when those concerns are ongoing and directly impact the provision of a Free Appropriate Public Education (FAPE). Simply filing an email separately does not fulfill this legal obligation or the purpose of the "Parent and/or Student Input" section of the IEP.

We reiterate our requirement for:

- The **full integration of the specified parent input statements into the "Parent and/or Student Input" section of** [redacted] **current IEP.**
- **Confirmation in writing, along with a copy of the fully updated IEP, within 7 business days of the date of our original letter (May 29, 2025), which is Monday, June 9, 2025.**

As previously stated, these updates are essential as we will be filing for due

process and including this IEP as evidence. Your failure to comply with this specific and legally mandated request for accurate IEP documentation will be considered a further procedural violation.

Sincerely,

Robert [redacted] Karen [redacted]

Parents of [redacted]

On Wednesday, June 4, 2025 at 09:24:32 AM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Mr. [redacted] and Ms. [redacted]

The email will be added to the file.

Thank you.

On Thu, May 29, 2025 at 9:22 AM Robert <[redacted]verizon.net> wrote:

Ms. Stewart,

Please update the "Parent and/or Student Input" section of [redacted] IEP to accurately reflect both our current and previously submitted statements. The following statement should be added in full and without edits to reflect our position regarding the PPT meeting held on May 21, 2025:

**Parent Statement Regarding May 21, 2025 PPT:**

**We did not attend the PPT meeting held on May 21, 2025, because we had previously and repeatedly notified the district that we did not consent to the proposed placement at Harborside Middle School and would not be participating in further PPT meetings regarding that placement. In our communications on April 28, May 14, and May 16, we clearly stated our objections and our intent to address all unresolved concerns, including ESY and placement, through due process.**

**Despite this, the district proceeded with the meeting and, inappropriately, recorded in the 'Parent and/or Student Input' section of the IEP that the parents 'did not attend the PPT.' This occurred despite our prior email to the district requesting them to update their records accordingly to reflect our full reasons for not attending. This is a misrepresentation that omits critical context and inaccurately reflects our level of involvement.**

**Furthermore, the IEP originating from the January 16, 2025 Annual PPT had stated 'No' for Extended School Year (ESY) services, even though the district themselves acknowledged on April 29, 2025, that 'the PPT did not discuss whether or not [redacted] was eligible for Extended School Year services' during his annual review. At the May 21, 2025 meeting, the district proceeded to recommend ESY services and attempted to retroactively apply this change. This retroactive alteration of the IEP to include ESY, following a prior period where ESY was not discussed or included, indicates a fundamental failure in the IEP team process to collaboratively determine eligibility and constitutes a clear procedural violation under IDEA. This also suggests an attempt to unilaterally amend the IEP to cure a prior denial of services.**

**We maintain that these actions—including the misrepresentation of our absence, the lack of meaningful parental participation, and the predetermination of services—have impeded our ability to participate in [redacted] educational planning and will be addressed through due process.**

We previously submitted parent input statements for earlier IEPs which reflect ongoing concerns that remain

unresolved regarding [redacted] educational needs and programming. We did not request or consent to the removal of these concerns from the current IEP.

The IEP team is legally obligated to meaningfully consider all relevant parent input, especially concerning unresolved and ongoing issues. Therefore, the current IEP must accurately reflect these ongoing concerns. Please ensure all prior parent input reflecting these unresolved concerns is properly integrated and included in the current IEP, or that these critical points are comprehensively addressed within its relevant sections.

For your immediate reference and to ensure accuracy, the full text of our previously submitted parent input, detailing these ongoing and unresolved concerns, is provided below:

**Previously Submitted Parent Input Statement (for integration into current IEP):**

**We have serious concerns about the district's handling of [redacted] education, emotional well-being, and placement, based on documented communications, interactions with district staff, and [redacted] own reports of mistreatment. The ongoing lack of transparency, honesty, and meaningful communication has further eroded our trust in the district's ability to meet his needs. Despite repeated requests, the district has failed to proactively address [redacted] academic and emotional challenges. Supports that previously helped him have been removed, and necessary interventions were not implemented. [redacted] has reported distressing treatment, contributing to repeated self-harm comments. The district's responses have been reactive rather than proactive, which is unacceptable.**

**In May 2024, the district attempted to change [redacted] placement to a program that had previously been deemed inappropriate. When questioned, it was dismissed as a "misunderstanding and miscommunication," raising concerns about their credibility. If the district really believe they could meet [redacted] needs, they would have not attempted this placement change. In June 2024, despite acknowledging [redacted] academic difficulties, no additional academic support was recommended for his Extended School Year (ESY) program. The district has also claimed that they reached out to us about [redacted] increased behaviors and academic struggles, stating we declined meetings. However, despite repeated requests, the district has failed to provide any documentation to support these claims, which raises serious concerns about their accountability and transparency.**

**At the January 16, 2025, PPT meeting, the district failed to provide a meaningful discussion of our outplacement request, despite prior assurances. The decision to keep [redacted] in district appeared predetermined, and our requests for separate meetings were denied. Additionally, there have been discrepancies in the disciplinary log and revisions to meeting notices, raising concerns about the integrity and transparency of district documentation.**

**We continue to struggle with obtaining necessary documentation. Despite repeated requests, the district has failed to provide supporting records or has presented contradictory information, further eroding our confidence in their transparency and commitment to [redacted] needs.**

**Given the district's continual pattern of failing to appropriately support [redacted] and the ongoing lack of transparency, we do not believe that remaining in Milford Public Schools is in his best interest. The services added to his IEP were only implemented after we requested outplacement, further demonstrating that the district's actions have been reactive rather than proactive in addressing [redacted] needs.**

These updates need to be made as soon as possible, as we will be filing for due process and including this IEP as evidence. We require confirmation in writing, along with a copy of the fully updated IEP, within 7 business days of the date of this letter. We expect the IEP to reflect an accurate and complete record of parental input.

Sincerely,

Robert [redacted]
Karen [redacted]

--

JEN STEWART
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

# Re: [EXT MAIL] Urgent: Expected Pickup of [redacted] Yearbook Today, June 6, 2025 - Immediate Resolution Required

From: Robert ([redacted]verizon.net)

To: arizzo@milforded.org; [redacted]yahoo.com; dstuart@milforded.org; ttruscello@milforded.org

Cc: acutaia@milforded.org; jstewart@milforded.org

Date: Sunday, June 8, 2025 at 10:18 AM EDT

Principal Rizzo,

This email serves to acknowledge that despite my explicit request in my email dated **June 6, 2025, at 10:48 AM,** for [redacted] yearbook to be released to me **that afternoon (Friday, June 6)**, and your assurance that it would be sent home with [redacted] I understand Ms. [redacted] subsequently picked it up.

Sincerely,

Robert [redacted]

> On Fri, Jun 6, 2025 at 10:48 AM, Robert <[redacted]verizon.net> wrote:
>
> > Principal Rizzo,
> >
> > I am writing in response to your emails sent this morning, which regrettably confirm the school's direct and inappropriate involvement in withholding [redacted] yearbook. Your repeated attempts to deflect responsibility and misrepresent the facts are unsatisfactory and do not excuse the school's actions or address the serious issues I have raised.
> >
> > Let me be unequivocally clear:
> >
> > - **Premeditated Interference Confirmed by Your Own Evidence:** Your attached email from Ms. [redacted] to Ms. Stuart, dated May 27th, 2025, unequivocally demonstrates that the school **knowingly and proactively acted upon an inappropriate, unilateral request from one parent to withhold my son's personal property.** Ms. [redacted] explicitly requested that Ms. Stuart "ask [redacted] to keep his [yearbook] at school for me to pick up." This proves the school's decision to withhold [redacted] yearbook was premeditated, occurring a full week before distribution, and directly contradicts your assertion that the school was merely "put in the middle" by "opposing requests." The school actively chose to insert itself into a parental matter.
> >
> > - [redacted] **Yearbook Confiscated Against His Will, Not "Encouraged to Keep":** You state that Ms. Stuart "encouraged [redacted] and other students to keep his yearbook at school for signing." This is a blatant misrepresentation of what occurred. [redacted] explicitly advised me that **Ms. Stuart took his yearbook from him against his will, stating it would be going home with his mother.** This was not a voluntary decision by [redacted] he was actively denied his property. Furthermore, when I personally asked you yesterday about [redacted] taking the yearbook home, **you explicitly refused to release it to me.**
> >
> > - **Unequivocal Discriminatory Treatment – "Not the Only One" Debunked:** Your attached photo, reportedly taken this morning, and your claim that "[redacted] was not the only child that did not take home his yearbook," do not negate or justify what transpired yesterday. **I personally observed all other fifth-grade students leaving the school yesterday with their yearbooks in hand.** Any yearbooks seen in mailboxes this morning could have been brought to school today by students for signing, or left voluntarily by *their* choice, which is fundamentally different from [redacted] having his taken from him. [redacted] was the *only* student in his class whose yearbook was **taken against his**

**will and denied to him yesterday, based on a pre-planned instruction from the other parent.**

- **School's Hypocrisy and Responsibility in Parental Disputes:** You assert that "Which home the yearbook goes home to is not the decision of the school" and that "It is not the desire of the school to prevent either parent access," urging Ms. [redacted] and I to "communicate with one another directly." This is demonstrably false. The school *made* that decision on May 27th by agreeing to Ms. [redacted] request, and again on June 5th when Ms. Stuart took [redacted] yearbook and stated it was going home with his mother, acting on the earlier, explicit instruction. **If the school truly believes it should not get involved in parental matters, why did it agree to Ms. [redacted] unilateral request to withhold the yearbook in the first place? Why did it not practice what it preaches and advise Ms. [redacted] that it could not comply with such a request due to its policy of neutrality?** The school's premeditated interference, rather than any lack of parental communication, **created** this situation. As I have repeatedly told you during my visits, I expect the school not to involve itself in matters concerning my son's mother and me.

- **Missed Opportunity and Emotional Distress:** The school's actions prevented [redacted] from taking his yearbook home yesterday, a day that should have been special. When he realized he was the only one without it, he was very upset that he couldn't bring it home and share it with me on **what was supposed to be a special day.** Even if there were signing activities today, the yearbook could have easily been brought back to school this morning. The school's decision to withhold it yesterday, and then refuse to release it to me, caused [redacted] significant distress and deprived us of a special moment.

- **My Parental Rights (Joint Legal Custody):** As a parent with **joint legal custody**, I have every right to access my son's personal property. The school has no legal authority to withhold his yearbook from him or from me, or to dictate its delivery based on unilateral and inappropriate instructions from another parent.

The issue is not that there is only "one yearbook"; the issue is that the school improperly withheld that one yearbook from [redacted] interfered with my parental rights, and caused unnecessary distress to my child through discriminatory actions rooted in a pre-planned and inappropriate intervention.

Therefore, my demand remains unchanged. I expect [redacted] yearbook to be released to me **this afternoon, as agreed.** The school's continued detention of his personal property, based on unsubstantiated excuses and inappropriate parental interference, is unacceptable.

Sincerely,

Robert [redacted]

On Fri, Jun 6, 2025 at 9:18 AM, Amy Rizzo <arizzo@milforded.org> wrote:

> Hello Mr. [redacted]
>
> Following your visit to school this morning, I would like to clarify for you some information.
>
> Attached you will see an email that was sent by [redacted] mom to the classroom teacher on May 28th requesting that the yearbook be kept at school for her to pick up. Mrs. Stuart encouraged [redacted] and other students to keep his yearbook at school yesterday so that he would have it for today's yearbook signing. As his parents we ask that you please communicate with one another directly about the yearbook so that [redacted] has access to it.
>
> You will also see an attached photo that Mrs. Stuart took before school this morning. In the photo you will see that several students in Mrs. Stuart's class also kept their yearbooks in their student mailboxes overnight for today's signing. [redacted] was not "the only one" as you asserted to me this morning.
>
> From the school's point of view, the yearbook belongs to [redacted] and we want [redacted] to be able to engage in the yearbook activities with his peers. Which home the yearbook goes home to is not the decision of the school and I again ask that you and Ms. [redacted] communicate with one another

today about how the yearbook will be shared. It is not the desire of the school to prevent either parent access to sharing the yearbook with [redacted]

Thank you.

Amy




On Fri, Jun 6, 2025 at 8:25 AM Amy Rizzo <arizzo@milforded.org> wrote:

> Hello again, Mr. [redacted]
> You have sent several emails to school staff last night and this morning about the same issue regarding [redacted] yearbook. I am copying my previous response below.
>
> Please let us know what you and [redacted] mom decide on how the yearbook will go home. The yearbook is [redacted] yearbook given to him by the PTO and any disagreement between you and Ms. [redacted] regarding which house it goes home to is not a school matter. I ask that as his parents you work out those arrangements outside of school.
>
> Thank you.
>
> Please see my previous response below:
>
> Hi Mr [redacted]
> It's my understanding that Mrs Stuart had [redacted] keep it in the class so that he will be able to get

classmates signatures today during signing. Some other classmates left theirs as well so that they wouldn't forget to bring it back to school today for signing. [redacted] was not the only child that did not take home his yearbook.

[redacted] mom has also contacted the school about sending home the yearbook with her. These opposing requests put the school personnel in the middle. Like all students, [redacted] has been provided one yearbook, purchased by the PTO, so as his parents you and Ms [redacted] will have to communicate with one another directly about this matter outside of school. Please let us know what your mutual decision is so that we can ensure that [redacted] has his yearbook.

Thank you,

Amy

On Fri, Jun 6, 2025 at 8:11 AM Robert <[redacted]verizon.net> wrote:

> Principal Rizzo,
>
> I am writing to formally notify you that I will be at the school today, June 6, 2025, to personally pick up my son, [redacted] fifth-grade yearbook. I expect his yearbook to be released to me immediately upon my arrival this morning.
>
> I must also express my profound disappointment and serious concern regarding the unacceptable events that transpired yesterday, June 5, 2025:
>
> My son, [redacted] was the only student in his class who was denied his yearbook and prevented from taking it home. He advised me that Ms.Stewart took it from him and said it's going home with the mother.
>
> His yearbook was taken directly from him by a teacher, despite your prior assurance to him that he would receive it.
>
> This action has caused [redacted] significant emotional distress. He was very upset and confused about why he couldn't bring it home like his friends, and why his teacher would take it from him. These yearbooks represent precious memories he should be able to share freely with both parents.
>
> This unilateral decision to withhold his yearbook and dictate its delivery to another party is entirely unjustified and an unacceptable interference with my parental rights as a joint legal custodian.
>
> As a parent with joint legal custody, I have every right to obtain my son's personal property. I will not accept any excuses regarding signing or instructions from another parent as reasons to withhold his yearbook. All other students received their yearbooks yesterday and took them home to gather signatures independently. My son deserves the same treatment.
>
> I expect this matter to be resolved immediately and without further incident upon my arrival. The school's actions yesterday were discriminatory and caused unnecessary distress to my child.
>
> Sincerely,
>
> Robert [redacted]

--
Amy E. Rizzo
Principal and Lead Learner
John F. Kennedy Elementary School
Milford, CT 06460
@JFKPrincipalRiz

Do the best you can until you know better. Then when you know better, do better.

- Maya Angelou

--

Amy E. Rizzo
Principal and Lead Learner
John F. Kennedy Elementary School
Milford, CT 06460
@JFKPrincipalRiz

Do the best you can until you know better. Then when you know better, do better.

- Maya Angelou

# Re: [EXT MAIL] Regarding Your Voicemail - [redacted]

From: Robert ([redacted]@verizon.net)

To: jnielsen@milforded.org

Cc: arizzo@milforded.org; acutaia@milforded.org; jstewart@milforded.org

Date: Monday, June 9, 2025 at 05:29 PM EDT

Mr. Nielsen,

As I indicated below in my earlier reply today, I am now following up with a formal response to your message.

This email serves to formally document critical instances of unprofessional conduct by District personnel, including direct manipulation of my son by Principal Amy Rizzo, and false accusations made against me by both Principal Rizzo and you. These actions are not isolated but part of a deliberate and ongoing pattern of retaliation and unprofessional conduct by District personnel. This conduct directly contributes to the hostile and intimidating environment created by the District and forms part of a pattern of retaliation following my protected advocacy for my son, [redacted]

On June 5, 2025, following the fifth-grade event during dismissal — while I was exercising my parenting time and taking [redacted] home — [redacted] came out of the building visibly upset and informed me he did not have his yearbook because his classroom teacher had taken it from him, although he wanted it. I then personally asked Principal Rizzo for [redacted] yearbook. She explicitly refused to release it to me. During this interaction, with [redacted] present, Principal Rizzo then directly and inappropriately involved him by turning to my son and asking, "[redacted] don't you want to have it signed by everybody?" This was a deliberate attempt to manipulate [redacted] undermine my role as his parent, and pressure him into complying with a plan the school had already coordinated with the other parent. There was no justification for this. It was done solely to avoid giving me my son's personal property — a yearbook which every other child in his class had taken home. It is unacceptable for school personnel to involve a child in this manner. [redacted] was caught off guard and distressed in what should have been a celebratory moment.

The following morning, June 6, 2025, at approximately 8:35 a.m., I was at the school for the sole purpose of dropping [redacted] off. I did not enter the building. I asked Principal Rizzo for the yearbook — as I had indicated I would in writing prior. Principal Rizzo was outside. Rather than addressing the request professionally, she approached me in a way that was physically invasive, continuing to walk toward me and forcing me to back away to maintain personal space. I requested that she not insert herself into matters involving me and [redacted] mother, which are outside the purview of her role. When I described [redacted] clear upset over being denied his yearbook, Principal Rizzo falsely and without cause accused me of "changing the truth." I was relaying [redacted] direct experience. The accusation was completely unprofessional and seemed intended to discredit me. Principal Rizzo has a history of making similar comments aimed at discrediting me, including accusing me of "piecing together pieces of a narrative that aren't true" and other attempts to gaslight me during prior interactions. During this conversation, I also informed her that I would be filing for due process.

In fact, the only reason I received your email was because I reached out to you first regarding the matter. This sequence of events further highlights the retaliatory and reactionary nature of your communication. Your email falsely implies that I caused some form of disruptive behavior, which is untrue. No such disruption occurred, and none has been documented by the principal or any staff. To be clear: If there was any behavior that could be viewed as disruptive or inappropriate, it was on the part of Principal Rizzo, who unprofessionally escalated an already sensitive matter, violated boundaries, and inappropriately involved my child in an issue he should never have been part of.

Your message stated the following:

"For future matters, I recommend you start with an email and wait for a response. If you feel the matter needs additional attention that requires a visit to the school, please request an appointment to meet with school officials. If it is an urgent matter, please contact the school via phone. Failure to follow district expectations in the future may result in access restrictions for you to school property."

Let me be very clear: As a parent with joint legal custody, I have every right to raise concerns, visit my child's school, and interact with staff in accordance with applicable law. There is no legal or district policy requiring me to schedule an appointment to meet with school officials unless such a requirement is part of a clearly established and consistently enforced protocol applied to all parents. No such policy has been communicated or cited, and your arbitrary attempt to impose such a condition on me — immediately after I raised valid concerns — is both retaliatory and discriminatory. You do not have the legal authority to dictate or restrict access on the basis of a false or undocumented claim, particularly where no disruption occurred. Your language is inappropriate and appears designed to intimidate me from engaging in lawful, protected parental advocacy.

I remind you that, under federal laws including FERPA and IDEA, I have a protected right to access my child's educational environment and participate in matters affecting his education without discrimination or retaliation

This inappropriate and retaliatory behavior is currently being documented and addressed as part of formal steps now being prepared.

Sincerely,

Robert [redacted]

On Mon, Jun 9, 2025 at 10:58 AM, Robert <[redacted]verizon.net> wrote:

> Dear Mr. Nielsen,
>
> I am in receipt of your email. I find your message to be extremely inappropriate, particularly given that no concerns about my conduct were raised by any school administrator at the time of my visit.
>
> I will be responding more formally after taking the necessary steps to document and address the serious impropriety of your message.
>
> Sincerely,
>
> Robert [redacted]
>
> On Mon, Jun 9, 2025 at 8:55 AM, Jeffrey Nielsen <jnielsen@milforded.org> wrote:
>
> > Mr. [redacted]
> >
> > Thank you for getting back to me. The purpose of my call was to discuss your behavior on school grounds on June 5, 2025. We understand and appreciate your concerns for your child, but we cannot have disruptions on school property. Please refrain from this in the future. For future matters, I recommend you start with an email and wait for a response. If you feel the matter needs additional attention that requires a visit to the school, please request an appointment to meet with school officials. If it is an urgent matter, please contact the school via phone. Failure to follow district expectations in the future may result in access restrictions for you to school property.
> >
> > Thank you in advance for your understanding and cooperation.
> >
> > Jeff
> >
> > On Sun, Jun 8, 2025 at 4:23 PM Robert <[redacted]verizon.net> wrote:

Dear Mr. Nielsen,

This email is in reference to the voicemail you left me on **Friday, June 6, 2025, at 1:46 PM**.

If you'd like to discuss matters concerning my son, [redacted] I request that all communication be conducted via **email only**, to ensure a clear and documented record.

Please respond to this email if you wish to proceed with an email-based discussion.

Sincerely,

Robert [redacted]

--

*Jeffrey Nielsen*

*Director, School Safety & Security*

*Milford Public Schools*

*70 West River Street*

*Milford, CT 06460*

*Office 203-301-5678*

*Fax 203-783-3474*

**Week of:** 5/8-5/12

| | Classroom: | Resource: | Speech: | Counseling |
|---|---|---|---|---|
| Weekly Highlight: | enjoyed playing with new friends at recess! :) | finished SBAC woohoo! * | Worked on reasoning questions about a problem situation at a movie theater - needed some cues but benefited from visual | Able to respond to redirection in small group |
| Behavior Scale: See scale below | 2 | 2 | 4 some unexpected laughing | 3 ; unexpected body movemen[ts] |
| Something we worked on: | social skills / conflict resolution | money | see above | social skills - problem solving |

Will be ou[t]

| | Monday | Tuesday | Wednesday | Thursday | Friday |
|---|---|---|---|---|---|
| AM ticket total: | # 20 | # 14 | # 17 | # 16 | # X |
| PM ticket total: | # 9 | # 10 | # 6 | # 15 | # X |

Behavior Scale:
1: Excessive interruptions
2: Some interruptions
3: Several interruptions
4: Minimal interruptions
5: No interruptions
Ex.: Unexpected vocalizations, body movements

Ticket Scale:
*Tier 1: 27+ tickets:* extra recess for the whole class
*Tier 2: 20-27 tickets:* extra recess time with a friend, play a game on the Chromebook with a friend, play with Mrs. Aspinwall's puppets with a friend, play with large finger puppets with a friend
*Tier 3: 15-19 tickets:* time to play with magnet tiles, free time in the classroom
*Tier 4: 10-14 tickets:* coloring with markers, crayons, colored pencils, play doh, anything from levels below
*Tier 5: 5-9 tickets:* drawing with pencil only, anything from levels below
*Tier 6: 0-4 tickets:* read a book

P-50 1 of 5

**Week of:** 5/12-5/18

| | Classroom: | Resource: | Speech: | Counseling: |
|---|---|---|---|---|
| Weekly Highlight: | earned a helpful hawk! | writing complete sentences with our created notes on his own | Initiated conversation w/out being prompted | Great initiation of a conversation with a peer and also changed topics well. |
| Behavior Scale: See scale below | 1 | 3 | 4 | 2 |
| Something we worked on: | replacing negative thoughts/self-talk w/ objective positive thoughts/self talk | not calling out as frequently | - think it vs say it video<br>- inferencing How do you know question | Practiced solving social problems and taking the perspective of others. |

| | Friday | Monday | Tuesday | Wednesday | Thursday |
|---|---|---|---|---|---|
| AM ticket total: | # 7 | # 4 | # 13 | # 6 | # ___ Miss Plvrad app during his first break |
| PM ticket total: | # 6 | # 2 | # 5 | # 3* early dismissal | # 13 |

Behavior Scale:
1: Excessive interruptions
2: Some interruptions
3: Several interruptions
4: Minimal interruptions
5: No interruptions
Ex.: Unexpected vocalizations, body movements

Ticket Scale:
*Tier 1: 27+ tickets:* extra recess for the whole class
*Tier 2: 20-27 tickets:* extra recess time with a friend, play a game on the Chromebook with a friend, play with Mrs Aspinwall's puppets with a friend, play with large finger puppets with a friend
*Tier 3: 15-19 tickets:* time to play with magnet tiles, free time in the classroom
*Tier 4: 10-14 tickets:* coloring with markers, crayons, colored pencils, play doh, anything from levels below
*Tier 5: 5-9 tickets:* drawing with pencil only, anything from levels below
*Tier 6: 0-4 tickets:* read a book

P-50 2 of 5

**Week of:** 5/19- 5/25

| | Classroom: | Resource: | Speech: | Counseling |
|---|---|---|---|---|
| Weekly Highlight: | 2 of [redacted] classmates complimented his behavior | Calling out less often remembering to raise his hand | Recognized expected vs unexpected behavior of students in video | During individual counseling, [redacted] engaged and cooperative in social mapping |
| Behavior Scale: See scale below | 2 | 2 | 2 | 2 |
| Something we worked on: | positive self-talk; "big" vs. "small" problems | - repeated addition | - problem solving<br>- compromising<br>- critical thinking (why? How do you know?)<br>- expected vs unexpected behavior | - able to respond to redirection with two reminders<br>- social situation problem solving |

| | Friday | Monday | Tuesday | Wednesday | Thursday |
|---|---|---|---|---|---|
| AM ticket total: | # 19 | # field trip | # 14 | # 18 | # 11 |
| PM ticket total: | # 2 | # 9 | # 23 | # 5 | # 8 |

Behavior Scale:
5: Excessive interruptions
4: Several interruptions
3: Some interruptions
2: Minimal interruptions
1: No interruptions
Ex.: Unexpected vocalizations, body movements

Ticket Scale
*Tier 1: 27+ tickets:* extra recess for the whole class
*Tier 2: 20-27 tickets:* extra recess time with a friend, play a game on the Chromebook with a friend, play with Mrs. Aspinwall's puppets with a friend, play with large finger puppets with a friend
*Tier 3: 15-19 tickets:* time to play with magnet tiles, free time in the classroom
*Tier 4: 10-14 tickets:* coloring with markers, crayons, colored pencils, play doh, anything from levels below
*Tier 5: 5-9 tickets:* drawing with pencil only, anything from levels below
*Tier 6: 0-4 tickets:* read a book

P-50 3 of 5

**Week of:** 5/26-6/1

| | Classroom: | Resource: | Speech: | Counseling |
|---|---|---|---|---|
| Weekly Highlight: | several students complimented [redacted] during read-aloud | [redacted] did a great job raising his hand this week | asked his peer questions about his birthday without prompts | Davis & Daugherty [redacted]y did a great job. He was able to identify solutions to social problems. He was easily redirected. |
| Behavior Scale: See scale below | 2 | 2 | 1 | 2 |
| Something we worked on: | dealing with frustration with challenging tasks | creative writing | -matching facial expressions to feelings<br>-making + explaining inferences | Social Problem solving |

| | Friday | Monday | Tuesday | Wednesday | Thursday |
|---|---|---|---|---|---|
| AM ticket total: | # 16 | # Memorial day | # 13 | # 18 | # 12 |
| PM ticket total: | # field day | # Memorial day | # 10 | # 11 | # 12 |

Behavior Scale:
5: Excessive interruptions
4: Several interruptions
3: Some interruptions
2: Minimal interruptions
1: No interruptions
Ex.: Unexpected vocalizations, body movements

Ticket Scale:
*Tier 1: 27+ tickets:* extra recess for the whole class
*Tier 2: 20-27 tickets:* extra recess time with a friend, play a game on the Chromebook with a friend, play with Mrs. Aspinwall's puppets with a friend, play with large finger puppets with a friend
*Tier 3: 15-19 tickets:* time to play with magnet tiles, free time in the classroom
*Tier 4: 10-14 tickets:* coloring with markers, crayons, colored pencils, play doh, anything from levels below
*Tier 5: 5-9 tickets:* drawing with pencil only, anything from levels below
*Tier 6: 0-4 tickets:* read a book

Week of: 6/2-6/8

| | Classroom: | Resource: | Speech: | Counseling |
|---|---|---|---|---|
| Weekly Highlight: | [redacted] was much more cheerful and a more active participant in group discussions this week! :) | following directions | - able to identify expected hallway behaviors | Davis & Dougherty [redacted] was able to ignore a student with distracting behavior and remain on topic |
| Behavior Scale: See scale below | 2 | 2 | 2 | 2 |
| Something we worked on: | patient handraising :) | adding coins | - problem id/solution<br>- answering "why" questions<br>- making inferences from picture scenes<br>- expected vs unexpected behaviors | problem-solving/solutions |

| | Friday | Monday | Tuesday | Wednesday | Thursday |
|---|---|---|---|---|---|
| AM ticket total: | # 10 | # 19 | # 20 | # 16 | # 14 |
| PM ticket total: | # 8 | # 19 | # 8 | # 10 | # 20 |

Behavior Scale:
5: Excessive interruptions
4: Several interruptions
3: Some interruptions
2: Minimal interruptions
1: No interruptions
Ex.: Unexpected vocalizations, body movements

Ticket Scale:
*Tier 1: 27+ tickets:* extra recess for the whole class
*Tier 2: 20-27 tickets:* extra recess time with a friend, play a game on the Chromebook with a friend, play with Mrs. Aspinwall's puppets with a friend, play with large finger puppets with a friend
*Tier 3: 15-19 tickets:* time to play with magnet tiles, free time in the classroom
*Tier 4: 10-14 tickets:* coloring with markers, crayons, colored pencils, play doh, anything from levels below
*Tier 5: 5-9 tickets:* drawing with pencil only, anything from levels below
*Tier 6: 0-4 tickets:* read a book

# Milford School District
## Consent to Conduct an Initial Evaluation/ Reevaluation

Date Sent: 01/26/2023

Dear Karen [redacted] Robert [redacted]

A planning and placement team (PPT) meeting regarding your child, [redacted] (Student's Name) [redacted] (DOB) was held on 01/26/2023 (meeting date)

The team determined that an evaluation should be conducted for the following reason:

To comply with Federal and State regulations which require that each child receiving special education and related services must be reevaluated at least every three years to determine eligibility for special education and related services unless the parent and district agree that a reevaluation is unnecessary.

## Procedural Safeguards

☑ A copy of the Procedural Safeguards in Special Education is enclosed

Chris Brown 203-783-3410

**Please Note:**

A. Parents have the right to refuse consent and, if given, it may be revoked at any time.
B. Parents have the right to review and obtain copies of all of the records used as a basis for the evaluation.
C. Parents have the right to be fully informed of all evaluation results and to receive a copy of the evaluation report(s).

**Evaluation Procedures**

☑ The tests/evaluation procedures listed below were recommended
☐ The PPT has determined that no additional tests/evaluations are needed to determine continuing eligibility for special education and related services (and no parent consent is required) because the existing evaluative information/data is sufficient to determine the student's continued eligibility and needs.
☐ The district and the parent agree that a reevalution is unnecessary.

Parents, please be aware that you have the right to request an assessment to determine continuing eligibility for special education services and that the school district is not required to conduct such an assessment unless requested by parents.

**Assessment Plan**

| Assessment Area | Test/Evaluation Procedure | Evaluator |
|---|---|---|
| Communication (Speech/Language) | Receptive/Expressive/Pragmatic | Speech Language Pathologist |
| Adaptive Behavior | Individually Administered Assessment | School Psychologist |
| Intellectual/Cognitive Functioning | Cognitive/Processing | School Psychologist |
| Academic | Individually Administered Assessment | Special Education Teacher |
| Behavioral/Social/Emotional | Social/Behavior/Autism Specific | School Psychologist |

**Special Accommodations**

**Consent to Conduct an Initial Evaluation/ Reevaluation** **Student Name:** [redacted]
**DOB:** [redacted]

Special adaptations or accommodations are to be considered when indicated by the student's language, cultural background or physical status. Adaptations/accommodations required for this evaluation are:

☑ No adaptations/accommodations required

**The District is Asking for your Consent to Conduct:**

☑ A three-year reevaluation of the student

**Parent or Adult Student Approval**

☑ I give my consent for the Milford School District Public Schools to conduct the evaluations described above. I understand that this consent may be revoked at any time.
☐ I do not give my consent for the Milford School District Public Schools to conduct the evaluations described above.

[redacted] 02/02/2023

Parent/Guardian or Adult Student Signature Date

Date received by school district:

* Failure of the parent to respond to a request from the Board for consent to conduct a reevaluation within 10 school days from the date of the notice to the parent shall be construed as parental refusal of consent. (RCSA Section 10-76d-8(b))

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 12/17/2024

**Parent/Guardian/Student:** Karen [redacted] Robert [redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted] Robert [redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] [redacted]
(Student's name) (DOB)

**Date:** 01/16/2025

**Time:** 2 :00 PM

**Location:** J. F. Kennedy School/ Virtual PPT

**The purpose of this meeting is to:**

Conduct an Annual Review

Parent Request

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: BCBA | Courtney Carrano |
| Other: Director of Pupil Personnel Service | Jennifer Stewart |
| Other: Instructional Supervisor Special Education | Nadine Macklin |
| Other: Teacher Leader | Darlene Koosa |
| Other: Nurse | Jacqueline Campbell |
| Occupational Therapist | Reyna Rhodes |
| Special Education Teacher | Kate Falzarano |
| Other: District Counsel | Herbie Rosen |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

**Procedural Safeguards**

☑ A copy of the Procedural Safeguards in Special Education is enclosed.

**Parent Notice**

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 12/17/2024

**Parent/Guardian/Student:** Kare[redacted] Robert[redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted] Robert [redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] [redacted]

(Student's name) (DOB)

**Date:** 01/16/2025 **Time:** 2 :00 PM **Location:** J. F. Kennedy School/ Virtual PPT

**The purpose of this meeting is to:**

Conduct an Annual Review

Parent Request;

The team will develop, review, or revise transition goals and objectives (transition planning)

Agency representative(s) not appropriate to be invited to attend to assist in transition planning

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Student | [redacted] |
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: BCBA | Courtney Carrano |
| Other: Director of Pupil Personnel Service | Jennifer Stewart |
| Other: Instructional Supervisor Special Education | Nadine Macklin |
| Other: Teacher Leader | Darlene Koosa |
| Other: Nurse | Jacqueline Campbell |
| Occupational Therapist | Reyna Rhodes |
| Special Education Teacher | Kate Falzarano |
| Other: District Counsel | Herbie Rosen |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

**Procedural Safeguards**

☑ A copy of the Procedural Safeguards in Special Education is enclosed.

**Parent Notice**

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

# Individualized Education Program
## Milford School District

| | |
|---|---|
| **Student Name:** [redacted] | **Meeting Date:** 01/16/2025 |
| [redacted] | **Case Manager:** Tara Truscello |
| **Date of Birth:** [redacted] | **Parent/Guardian Name:** Karen [redacted] Robert [redacted] |
| **Current Grade:** 5 | **Primary Disability:** [redacted] |
| **Current Enrolled School:** J. F. Kennedy School (0841911) | **School Next Year:** |
| **Most Recent Evaluation Date:** 02/08/2024 | **Next Reevaluation Date:** 02/08/2027 |
| **Most Recent Annual Review Date:** 01/16/2025 | **Next Annual Review Date:** 01/15/2026 |

**Reason for Meeting:**

Conduct an Annual Review

Transition Planning - The team will develop, review, or revise transition goals and objectives (transition planning)
Parent Request

## PLANNING AND PLACEMENT TEAM (PPT) MEMBERS PRESENT

| Name | Role |
|---|---|
| Robert [redacted] | Father |
| Karen [redacted] | Mother |
| Donna Stuart | Student's General Education Teacher |
| Tara Truscello | Special Education Teacher or Provider |
| Amy Rizzo | Administrator or Designee |
| Jennifer Davis | School Psychologist |
| Karen Kristan | Speech and Language Pathologist |
| Lauri Dougherty | Social Worker |
| Courtney Carrano | Other: BCBA |
| Jennifer Stewart | Other: Director of Pupil Personnel Service |
| Nadine Macklin | Other: Instructional Supervisor Special Education |
| Jacqueline Campbell | Other: Nurse |
| Reyna Rhodes | Occupational Therapist |
| Kate Falzarano | Special Education Teacher |

| Name | Role |
|---|---|
| Herbie Rosen | Other: District Counsel |
| Renee Wright | Family Peer Support Specialist |

## Planning and Placement Team Recommendations

The PPT recommends the following:

Ms. [redacted] an Mr. [redacted] have requested out-of-district placement for [redacted] The MPS school team has refused the request.

Services:

5 x 45 ELA in the resource room
5x30 Math in the resource room
3x30 Daily Living in the resource room
4x30 Social Skills in the resource/related service room
1x30 Group Couseling in the related service room
1x15 Individual Cousleing in the related service room
2x30 push-in group Counseling in the general education classroom
3x30 Speech and Language in the related service room
320 min per week- Academic/Behavior Para in the resource room
150 min per week- Academic/Behavior Para in the general education setting
320 min per week- Behavior Para general education setting

Accommodations:

Orally Read Tests/Directions, Text to Speech (accessibility on the Chromebook), Repeat/Review Directions, Visuals to support directions, Limited Multiple Choice, Math Manipulatives, Access to a multiplication chart, Preferential Seating, Extra time text/quizzes/assignments, Desktop list of tasks, One paper/section at a time, Post Routines, Acknowledge positive work frequently Cue Expected Behavior, Positive Reinforcement, Set/Post Class Rules, Check Work in Progress, Have student restate information, Shortened Tasks, Highlight Margins for writing, Putty for a fidget when needed for behavioral regulation.

State Testing:

CTAA

IEP Implementation Date: February 7, 2025

## Special Considerations

**Does the student exhibit behaviors that impede learning for self or others?**

☐ No ☑ Yes

IEP goal(s) and objectives will be developed to address the behavior.

A behavioral intervention plan based on a functional behavior assessment has been developed.

---

**Is the student deaf or hard of hearing?**

☑ No ☐ Yes

---

**Is the student blind or visually impaired?**

☑ No ☐ Yes

---

**Does the student have limited English proficiency (Student qualifies as an EL)?**

☑ No ☐ Yes

---

**Does the student require accessible educational materials (AEM)?**

☑ No ☐ Yes

---

**Does the student require an Augmentative and/or Alternative mode of Communication?**

☑ No ☐ Yes

## Present Levels of Academic Achievement and Annual Goal(s) and Objectives

### ACADEMIC, PRE-ACADEMIC, COGNITIVE ACHIEVEMENT

**Parent and/or Student Input**

Ms [redacted] and Mr [redacted] eel that [redacted] is struggling academically this year. They don't feel that he has made growth, and he continues to struggle. He has requested an out-of-district placement for the 25-26 school year.

### GOAL AREA: Reading

**Present Level of Performance**

[redacted] was unable to achieve mastery of his reading goals due to the amount of adult prompting. Listening comprehension (when listening to news clips, commercials, and short stories) is an area of weakness due to attention and the ability to verbalize his thoughts when asked a comprehension question. Additionally, it is difficult for [redacted] o write his ideas down after he states them due to his attention. He will frequently forget his idea before he has the time to write it down. He can answer questions relating to pictures and short sentences but it is difficult for him to make connections and state the main purpose of what he is listening to without more explicit comprehension instruction. Therefore, [redacted] is currently learning how to comprehend by utilizing a "visualization" strategy. With this approach, it allows [redacted] to learn new vocabulary words through discussions with an adult. Additionally, it allows [redacted] to learn keywords (i.e.: size, color, where, what, when) which will help him comprehend at the paragraph level in the future. Lastly, [redacted] enjoys Mercy Watson and has just began reading this in the classroom.

**Strengths**

Decoding, fluency, sight word identification, and basic vocabulary. [redacted] can have a conversation relating to a topic and state "what" a book or read-aloud is based on.

**Concerns/Needs**

Comprehending at the sentence level, sequencing sentences, and retelling.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in comprehension due to the diagnosis of Autism impacts [redacted] ability to access the general education curriculum.

| **Annual Goal 17** | **Evaluation Method** |
|---|---|
| Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a paragraph that is broken down into individual sentences (up to 4 total), [redacted] will be able to read, or listen to each sentence, verbalize his images, and answer one question (i.e.: what do you think the boy did next or based on the information, where do you think the boy is?) with no more than 3 teacher prompts to cue understanding and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph broken down into individual sentences, [redacted] will be able to read, listen to each sentence, verbalize his images, and state a summary using colored tiles. He will be able to do so by successfully stating at least 2 out of the 4 key elements from the story with 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences [redacted] will be able to read or listen to each sentence, verbalize his images, and state the main idea of the 4 sentence paragraph (i.e.: what was the paragraph mostly about or what was the main idea of the paragraph?). He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences, [redacted] will be able to read or listen to each sentence, verbalize his images, and draw a sketch relating to the paragraph that he read. He will be able to do so with no more than 2 teacher prompts or reminders about what the text stated and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.5 Craft and Structure: Analyze the structure of texts, including how specific sentences, paragraphs, and larger portions of the text (e.g., a section, chapter, scene, or stanza) relate to each other and the whole. | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| **Related Services necessary to achieve this goal (if any)** | |

| **Annual Goal 19** | **Evaluation Method** |
|---|---|
| Given a brochure [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to first state verbally "what" the brochure's topic is, with no more than 3 teacher prompts and 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to navigate the brochure with no more than 2 prompts per question (i.e.: show me where I can find the times I can access the water sports facility or what is Florida known for?), in 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, or activity such as hiking or jet skiing), [redacted] will be able to answer at least 2 questions relating to the brochure (i.e.: what is Florida known for? Or is Florida warm or hot?), with 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| CCSS.ELA-LITERACY.CCRA.R.10 Range of Reading and Level of Text Complexity: Read and comprehend complex literary and informational texts independently and proficiently. | |
| **Related Services necessary to achieve this goal (if any)** | |

## GOAL AREA: Mathematics

**Present Level of Performance**

[redacted] mastered 2 out of 7 objectives. He shows the ability to add with regrouping, add and subtract without regrouping, can name a penny and dime and can identify the value of a penny consistently.

**Strengths**

Addition and subtraction of multi-digit numbers without regrouping. Addition with regrouping including decimals representing money.

**Concerns/Needs**

Identification of money names and worth, addition and subtraction with and without regrouping of money denominations, rounding up to the nearest dollar, and applying math skills to beginning budget understanding.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in basic math skills due to the diagnosis of Autism impacts [redacted] ability to access the general education curriculum.

| **Annual Goal 15** | **Evaluation Method** |
|---|---|
| Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given 10 images of real coins and dollar bills and multiple-choice answers [redacted] will identify the correct name and value of the coin or dollar with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given 5 addition and/or subtraction problems that list of up to 4 quantities of money ($23.54) [redacted] will use a calculator to add and/or subtract the problems with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 10 quantities of money (i.e. $21.32) and a hundred chart or number line and multiple choice answers [redacted] will identify the next dollar amount with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant, bills) that require the addition of multiple amounts of money [redacted] will use a calculator to find the sum with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situation (i.e. shopping, restaurant) that requires the addition of multiple amounts of money [redacted] will find the sum using a calculator and decide which amount of money, from a set of multiple choice answers, he would give a cashier to pay for his items with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant) that he has solved the total sum for and has identified the quantity of money needed to pay [redacted] will use a calculator to find the difference and see how much change he would get back with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.Math.Content.5.NBT.A.1-4 Understand the place value system. | |
| CCSS.Math.Content.5.NBT.B.5-7 Perform operations with multi-digit whole numbers and with decimals to hundredths. | |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

WISC-V: Full Scale IQ 65, Verbal Comprehension 73, Visual Spatial 72, Fluid Reasoning 67, Working Memory 72, Processing Speed 66. CAS-2: Full Scale 60, Planning 71, Attention 61, Simultaneous 74, Successive 70.

# Present Levels of Functional Performance and Annual Goal(s) and Objectives

## FUNCTIONAL PERFORMANCE

**Parent and/or Student Input**

Ms. Michelson and Mr. Kornberg do not feel that [redacted] behaviors are properly addressed during the school day and have requested an out-of-district placement for the 25-26 school year.

## GOAL AREA: Communication

**Present Level of Performance**

[redacted] demonstrates difficulty staying focused on presented language tasks and has required redirection and multiple repetitions, cues and/or prompts to retain details from orally-presented directions and stories. He benefits from multiple choice options when asked to answer thinking questions about problem situations. [redacted] often needs reminders to listen carefully when others are speaking in order to understand their thoughts, feelings and perspectives. At times [redacted] can demonstrate stuttering behaviors, especially when initiating speaking.

**Strengths**

[redacted] likes to share his ideas and demonstrates background knowledge for topics of interest.

**Concerns/Needs**

[redacted] demonstrates weaknesses in listening comprehension and social-pragmatic skills.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in listening comprehension and social-pragmatic skills due to the diagnosis of Autism impacts [redacted] ability to access the general education curriculum.

| **Annual Goal 4** | **Evaluation Method** |
|---|---|
| Given structured tasks, [redacted] will increase listening comprehension skills , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and no more than two repetitions [redacted] will retell orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and no more than two repetitions [redacted] will follow orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options [redacted] will respond to comprehension questions about key details/events/characters from a presented story with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given given no more than two repetitions during a structured task [redacted] will paraphrase what a peer or adult has said with 80 % accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |

| **Annual Goal 14** | **Evaluation Method** |
|---|---|
| Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and multiple choice options as needed [redacted] will state the perspective or point of view of two different individuals in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will identify an appropriate solution for a problem faced by an individual in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will predict what an individual in a story/situation will do next with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will explain why an individual in a story or situation says or does something with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |

## GOAL AREA: Social/Emotional

**Present Level of Performance**

In the small group, [redacted] has demonstrated growth in identifying feelings in pictures and identifying 'expected' and unexpected' behavior in others. He is motivated to interact with his peers. [redacted] has difficulty understanding the perspectives of others. He continues to become silly at times when it is not appropriate to do so.

**Strengths**

[redacted] is able to solve hypothetical social problems with adult prompting.

**Concerns/Needs**

[redacted] has difficulty understanding the perspective of others and knowing when it is an appropriate time to be silly.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in social interactions and relationships due to the diagnosis of Autism impacts [redacted]s ability to access the general education curriculum.

| Annual Goal 5 | Evaluation Method |
|---|---|
| Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given small group/individual instruction, [redacted] will identify 3 strategies to react to people who are having a strong emotion in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given hypothetical social situations, [redacted] will will identify the feelings being felt by the people in the situation in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given a hypothetical social scenario, [redacted] will [redacted] will practice taking the perspective of each of the people in the scenario in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given examples of his own behavior, [redacted] will will identify if the behavior was expected or unexpected in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Individual | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Executive Functioning

**Present Level of Performance**

[redacted] requires full adult support in order to plan, initiate, and complete tasks.

**Strengths**

[redacted] can get and put away materials when prompted by an adult.

**Concerns/Needs**

[redacted] has difficulty with independently completing and planning for multi-step tasks.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in organization and planning due to the diagnosis of Autism impacts [redacted]s ability to access the general education curriculum.

| **Annual Goal 16** | **Evaluation Method** |
|---|---|
| Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task presented to him with two steps and a "first, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with two steps and a "first, then" visual and provided and a blank check-list [redacted] will fill in the check-list with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a blank checklist [redacted] will fill in the checklist with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Activities of Daily Living

**Present Level of Performance**

[redacted] was able to identify 18/23 safety signs correctly. He has technically mastered this goal. He can explain each sign and its purpose. [redacted] can fill out a calendar, write when something will occur, and record his daily events. However, it is heavily prompted by an adult at this time.

**Strengths**

[redacted] can complete daily living tasks (i.e.: lunch and bathroom) on his own.

**Concerns/Needs**

[redacted] would benefit from learning how to understand a recipe, determine if he has enough money, and look up the items required to make the recipe. He would also benefit from learning how to read a brochure that outlines a state or activity.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in daily living skills due to the diagnosis of Autism impacts [redacted]s ability to access the general education curriculum.

| **Annual Goal 18** | **Evaluation Method** |
|---|---|
| Given a recipe, [redacted] will will improve his daily living skills by interpreting the recipe , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a recipe (i.e.: the box or a printed copy or handout of the recipe), [redacted] will be able to state the ingredients required. He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given the ingredients required (i.e.: [redacted] has verbally stated what is required for the recipe or the teacher has scribed the ingredients), [redacted] will be able to access a website (i.e.: Stop and Shop or Shop Rite) on the Chrome book to see what items are in stock. He will be able to do so by first typing the item into the search bar with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given Given a website (Stop and Shop or Shop Rite), [redacted] will be able to determine if an item is in stock that is required for a recipe. He will be able to do so by checking off "yes" or "no" next to the ingredient that an adult previously wrote down with 4 out of 5 opportunities and no more than 3 teacher prompts by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that was previously written down, [redacted] will be able to write the dollar amount that the item costs. He will be able to do so with no more than 3 prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that has previously been written down with the cost and 5 hypothetical values, [redacted] will be given 5 dollar amounts to determine whether he has enough to purchase the ingredients required to make the recipe (i.e.: if you were given $20.00 would you have enough to buy what you need?) with the use of a calculator to add and subtract. He will be able to do so with 80% accuracy. by 02/06/2026 | Consistent with grade-level report cards |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

NEPSY-II: Attention & Executive Functioning - all areas below or well below expected level, Social Perception - all areas below or well below expected level. CARS-2: Mild-to-Moderate Symptoms of Autism Spectrum Disorder. Social Responsiveness Scale-2: most areas in the moderate to severe range for school and mother. Vineland-3: Teacher

Communication 69, Daily Living Skills 60, Socialization 64, Composite 65; Mother/Father Communication 76/71, Daily Living Skills 68/74, Socialization 82/79, Composite 74/74. BASC-3: several areas At-Risk/Clinically Significant. See report.

## Progress Reporting

**A report of progress toward meeting the Annual Goals and Short Term Objectives included in this IEP will be provided to the parent(s):**

Consistent with general education grade-level report cards

## Transition Planning

**Is the PPT developing postsecondary/transition goals and services for the student?**

☑ Yes ☐ No

| Transition Assessment | Date |
|---|---|
| PPT conversation | 01/16/2025 |

**Assessment Data Summary**

Parent shared at PPT that she hopes [redacted] will be an independent adult.

**Does the student require specially designed instruction to support independent living skills?**

☑ Yes ☐ No

Transition planning and services must address independent living skills

**Is the student in attendance at the meeting?**

No

**Summary of the student's preferences and interests**

[redacted] enjoys sensory-based activities (Play-Doh, coloring, etc.).

**Were any outside agencies invited to attend the PPT meeting?**

Agency representative(s) not appropriate to be invited to attend to assist in transition planning.

**Has any participating agency agreed to provide or pay for services/linkages?**

No

## Postsecondary Outcome Goal Statements

**Postsecondary Education or Training**

Upon high school graduation, [redacted] will attend a school/training program to study an area of interest.

**Employment**

Upon completion of high school, [redacted] will be employed in a field of interest.

**Independent Living Skills**

Upon completion of high school, [redacted] will have the skills necessary to live independently.

## Course of Study

**Has the student completed academic requirements?**

☐ Yes ☑ No

**Course of Study: Description of coursework and/or activities needed to assist the student in achieving postsecondary goals, from the student's current year to the anticipated exit year**

The student is enrolled in general education classes and specials(art, PE, music, library/media) that will allow him to explore his interests.

**Anticipated Exit Criteria: The student will be exited from special education upon:**

Ability to succeed in general education without specially designed instruction

## Transition Present Levels, Goals and Objectives

**Parent and/or Student Input: Transition**

Through conversation at PPT parent shared that she hoped [redacted] will be an independent adult.

**Present Level of Performance: Transition**

[redacted] is beginning to explore areas of interest that can be cultivated into long-term employment and/or independent living.

**Strengths**

[redacted] enjoys sensory-based activities.

**Concerns/Needs:**

Executive functioning skills such as managing a checklist independently, following a schedule and functional reading.

**Impact of student's disability on involvement and progress in the general education curriculum**

[redacted]s diagnosis of Autism coupled with his intellectual disability impacts his ability to make grade-level progress in the area of post-secondary planning without individualized/small-group instruction.

## TRANSITION GOAL AREA: POSTSECONDARY EDUCATION OR TRAINING

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives
Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives.
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.

| **Annual Goal 20** | **Evaluation Method** |
|---|---|
| Given direct instruction and a daily schedule, [redacted] will utilize his supports to follow his schedule , with 75% accuracy | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a schedule and faded teacher prompting [redacted] will identify where he needs to be when asked a question about his schedule with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: EMPLOYMENT

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.
Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives
Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives.

| **Annual Goal 21** | **Evaluation Method** |
|---|---|
| Given a checklist, [redacted] will indicate completion of a task with faded adult prompting , as evidenced by mastery of the following objective | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task list and faded adult prompting [redacted] will indicate completion of tasks with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: INDEPENDENT LIVING SKILLS

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives

| **Annual Goal 22** | **Evaluation Method** |
|---|---|
| Given functional reading materials(such as recipes,ingredient lists, street signs etc), [redacted] will demonstrate comprehension of the reading , as evidenced by mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given functional reading materials [redacted] will answer wh-questions about the content with 75% accuracy by 02/06/2026 | Monthly |
| Given functional reading materials [redacted] will identify what comes next in a task with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

# Transfer of Rights

At least one year prior to reaching the age of 18, students must be informed of their rights under the IDEA that will transfer at age 18.

**Will the student be 17 within one year from today's date?**

☐ Yes ☑ No

# Special Education and Related Services

## SPECIAL EDUCATION SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Academic Skills | 15 16 17 18 19 20 21 22 | 1 x per Week | 320 Minutes | Special Education Teacher | Paraprofessional | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Reading | 16 17 19 | 5 x per Week | 45 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Mathematics | 15 16 | 5 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Social Skills | 5 16 | 4 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group |
| Daily Living Skills | 16 18 | 3 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |

## RELATED SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Counseling Group | 5 16 | 4 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Counseling Group | 5 16 | 1 x per Week | 30 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | small group |
| Counseling Individual | 5 16 | 2 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 02/06/2026 | 1a | Individual |
| Counseling Individual | 5 | 1 x per Week | 15 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | Individual |
| Language/ Communication Group | 4 14 | 3 x per Week | 30 Minutes | Speech-language Pathologist | Speech-language Pathologist | 02/07/2025 | 02/06/2026 | 2c | small group |

***Instructional Site Codes:**

1a. General Education Setting 50% or more non-disabled peers
1b. General Education Setting less than 50% non-disabled peers
2a. Resource Setting

2b. Separate Setting/Program
2c. Related Service Setting
3a. Community-Based Setting 50% or more non-disabled peers
3b. Community-Based Setting less than 50% non-disabled peers

## Supplementary Aids and Services

Supplementary aids and services will be provided for the duration of the IEP unless otherwise noted.

| ACCOMMODATION | Area(s)/Locations |
|---|---|
| Orally Read Tests/Directions | All Areas |
| Text to Speech (accessibility on the Chromebook) | All Areas |
| Repeat/Review Directions | All Areas |
| Visuals to support directions | All Areas |
| Limited Multiple Choice | All Areas |
| Math Manipulatives | All Areas |
| Access to a multiplication chart | All Areas |
| Preferential Seating | All Areas |
| Extra time text/quizzes/assignments | All Areas |
| Desktop list of tasks | All Areas |
| One paper/section at a time | All Areas |
| Post Routines | All Areas |
| Acknowledge positive work frequently | All Areas |
| Cue Expected Behavior | All Areas |
| Positive Reinforcement | All Areas |
| Set/Post Class Rules | |
| Check Work in Progress | All Areas |
| Have student restate information | All Areas |
| Provide Models | All Areas |
| Shortened Tasks | All Areas |
| Highlight Margins for writing | All Areas |
| Putty for a fidget when needed for behavioral regulation | All Areas, Writing |

| MODIFICATION | Area(s)/Locations |
|---|---|
| Academic Instruction | Social Studies, Reading, Science, Writing, Math |

| ADULT SUPPORT | Area(s)/Locations |
|---|---|
| 1:1 Aide - Behavioral Support | Music, Art, PE, Library , Recess |
| 1:1 Paraeducator - Instructional/Behavioral Support | Reading , Spanish and STEM |

## Indirect Services

**Are supports required for school personnel to implement this IEP?**

☑ Yes ☐ No

**Supports required for school personnel to implement this IEP Include:**

| Service | Goal ID | Frequency | Duration | Responsible Staff | Start Date | End Date |
|---|---|---|---|---|---|---|
| BCBA Consult | 5<br>16 | 1 x per Month | 120 Minutes | BCBA | 02/07/2025 | 02/06/2026 |

## ESY Services

**Are extended school year (ESY) services required for the Student to receive FAPE?**

☐ Yes ☑ No

## Transportation

**Does the Student require special transportation as a related service?**

☐ Yes ☑ No

Regular Transportation

# Removal from the General Education Environment

## SCHOOL YEAR: 2024-25

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 181 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 02/07/2025 | 06/10/2025 | 15.08 | 16.42 | 48.65 |

## SCHOOL YEAR: 2025-26

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 231 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 08/01/2025 | 02/06/2026 | 15.08 | 16.42 | 48.65 |

**Explain the extent to which the student will not participate in general education classes and non-academic activities with non-disabled peers**

5x45 ELA, 5x30 Math, 4x30 Social Skills, 3x30 Speech and Language, 3x30 Daily Living Skills, 1x15 individual counseling, 1x30 group counseling, 5.3 hours per week of academic/behavioral instruction in the resource room.

**Justification for the removal from the general education environment**

Due to [redacted]s [redacted], he requires small group instruction to meet his academic, social-emotional, speech and language and daily living instruction needs.

**Will the student be removed from the general education environment for 60% or more of the time?**

☐ Yes ☑ No

**At the time of this IEP implementation, will the student be placed at a Private Residential Facility?**

☐ Yes ☑ No

# District and State Testing Information

## ENGLISH LANGUAGE PROFICIENCY (ELP) ASSESSMENT

**Has the student been identified as an English Learner?**

☑ No ☐ Yes

## DISTRICTWIDE ASSESSMENTS

The student will participate in Alternate District Assessment(s)

| Assessment | Participation |
|---|---|
| Phonics/Decoding Benchmarks | With designated supports/accommodations |
| Math Progress Monitoring based on IEP | With designated supports/accommodations |
| Reading Progress Monitoring based on IEP | With designated supports/accommodations |

**Designated Supports and Accommodations**

Individually assessed with an adult.

## STATEWIDE ASSESSMENTS

**What grade will the student be in during the next statewide assessment testing window?**

5th Grade

**The student will participate in the CTAA Assessment.**

**Assessment**: CTAA ELA - Grade 5

**Assessment**: CTAA Math - Grade 5

**Assessment**: CTAS - Grade 5

**Alternate assessments must be specified and a statement provided for each as to why the student cannot participate in the standard assessment and why the particular alternate assessment selected is appropriate for the student.**

[redacted] requires an alternate assessment in order to show understanding of tasks due to his [redacted]

# Resources

The following documents were provided to the parent(s) at this meeting or sent electronically with parental permission:

Procedural Safeguards in Special Education

Parental Notification of the Laws Relating to Physical Restraint and Seclusion in the Public Schools

A Parent's Guide to Special Education

IEP Manual

Building a Bridge

# Individualized Education Program
## Milford School District

**Student Name:** [redacted]

**Date of Birth:** [redacted]

**Current Grade:** 5

**Current Enrolled School:** J. F. Kennedy School (0841911)

**Most Recent Evaluation Date:** 02/08/2024

**Most Recent Annual Review Date:** 01/16/2025

**Meeting Date:** 03/06/2025

**Case Manager:** Tara Truscello

**Parent/Guardian Name:** Karen [redacted]

**Primary Disability:** [redacted]

**School Next Year:**

**Next Reevaluation Date:** 02/08/2027

**Next Annual Review Date:** 01/15/2026

**Reason for Meeting:**

Review or Revise the IEP

Transition Planning - The team will develop, review, or revise transition goals and objectives (transition planning)
Parent Request

## PLANNING AND PLACEMENT TEAM (PPT) MEMBERS PRESENT

| Name | Role |
|---|---|
| Robert [redacted] | Father |
| Karen [redacted] | Mother |
| Donna Stuart | Student's General Education Teacher |
| Tara Truscello | Special Education Teacher or Provider |
| Amy Rizzo | Administrator or Designee |
| Jennifer Davis | School Psychologist |
| Karen Kristan | Speech and Language Pathologist |
| Lauri Dougherty | Social Worker |
| Jocelyn Willsey | Other: BCBA |
| Jennifer Stewart | Other: Director of Pupil Personnel Service |
| Kate Falzarano | Special Education Teacher |

# Planning and Placement Team Recommendations

The PPT recommends the following:

Continue the IEP with the following recommendations:

Services:

5 x 45 ELA in the resource room
5x30 Math in the resource room
3x30 Daily Living in the resource room
4x30 Social Skills in the resource/related service room
1x30 Group Couseling in the related service room
1x15 Individual Counseling in the related service room
2x30 push-in group Counseling in the general education classroom
3x30 Speech and Language in the related service room
320 min per week- Academic/Behavior Para in the resource room
150 min per week- Academic/Behavior Para in the general education setting
320 min per week- Behavior Para general education setting

Accommodations:

Orally Read Tests/Directions, Text to Speech (accessibility on the Chromebook), Repeat/Review Directions, Visuals to support directions, Limited Multiple Choice, Math Manipulatives, Access to a multiplication chart, Preferential Seating, Extra time text/quizzes/assignments, Desktop list of tasks, One paper/section at a time, Post Routines, Acknowledge positive work frequently Cue Expected Behavior, Positive Reinforcement, Set/Post Class Rules, Check Work in Progress, Have student restate information, Shortened Tasks, Highlight Margins for writing, Putty for a fidget when needed for behavioral regulation.

State Testing:

CTAA

IEP Implementation Date: February 7, 2025

## Special Considerations

**Does the student exhibit behaviors that impede learning for self or others?**

☐ No ☑ Yes

IEP goal(s) and objectives will be developed to address the behavior.

A behavioral intervention plan based on a functional behavior assessment has been developed.

---

**Is the student deaf or hard of hearing?**

☑ No ☐ Yes

---

**Is the student blind or visually impaired?**

☑ No ☐ Yes

---

**Does the student have limited English proficiency (Student qualifies as an EL)?**

☑ No ☐ Yes

---

**Does the student require accessible educational materials (AEM)?**

☑ No ☐ Yes

---

**Does the student require an Augmentative and/or Alternative mode of Communication?**

☑ No ☐ Yes

# Present Levels of Academic Achievement and Annual Goal(s) and Objectives

## ACADEMIC, PRE-ACADEMIC, COGNITIVE ACHIEVEMENT

**Parent and/or Student Input**

At the March 6, 2025 PPT meeting, Mr. [redacted] requested that the following statement be entered, word for word into the Parent and/or Student Input section. While the District-based members of the PPT disagree with Mr. [redacted] perspective, they honored Mr. [redacted] request to list the following statement

January 2025-

We have serious concerns about the district's handling of [redacted] education, emotional well-being, and placement, based on documented communications, interactions with district staff, and

[redacted] own reports of mistreatment. The ongoing lack of transparency, honesty, and meaningful communication has further eroded our trust in the district's ability to meet his needs. Despite repeated requests, the district has failed to proactively address [redacted] academic and emotional challenges. Supports that previously helped him have been removed, and necessary interventions were not implemented. [redacted] has reported distressing treatment, contributing to repeated self-harm comments. The district's responses have been reactive rather than proactive, which is unacceptable.

In May 2024, the district attempted to change [redacted] placement to a program that had previously been deemed inappropriate. When questioned, it was dismissed as a "misunderstanding and miscommunication," raising concerns about their credibility. If the district really believe they could meet [redacted] needs, they would have not attempted this placement change. In June 2024, despite acknowledging [redacted] academic difficulties, no additional academic support was recommended for his Extended School Year (ESY) program. The district has also claimed that they reached out to us about [redacted] increased behaviors and academic struggles, stating we declined meetings. However, despite repeated requests, the district has failed to provide any documentation to support these claims, which raises serious concerns about their accountability and transparency.

At the January 16, 2025, PPT meeting, the district failed to provide a meaningful discussion of our outplacement request, despite prior assurances. The decision to keep [redacted] in district appeared predetermined, and our requests for separate meetings were denied. Additionally, there have been discrepancies in the disciplinary log and revisions to meeting notices, raising concerns about the integrity and transparency of district documentation.

We continue to struggle with obtaining necessary documentation. Despite repeated requests, the district has failed to provide supporting records or has presented contradictory information, further eroding our confidence in their transparency and commitment to [redacted] needs.
Given the district's continual pattern of failing to appropriately support [redacted] and the ongoing lack of transparency, we do not believe that remaining in Milford Public Schools is in his best interest. The services added to his IEP were only implemented after we requested outplacement, further demonstrating that the district's actions have been reactive rather than proactive in addressing [redacted] needs.

## GOAL AREA: Reading

**Present Level of Performance**

[redacted] was unable to achieve mastery of his reading goals due to the amount of adult prompting. Listening comprehension (when listening to news clips, commercials, and short stories) is an area of weakness due to attention and the ability to verbalize his thoughts when asked a comprehension question. Additionally, it is difficult for [redacted] to write his

ideas down after he states them due to his attention. He will frequently forget his idea before he has the time to write it down. He can answer questions relating to pictures and short sentences but it is difficult for him to make connections and state the main purpose of what he is listening to without more explicit comprehension instruction. Therefore, [redacted] is currently learning how to comprehend by utilizing a "visualization" strategy. With this approach, it allows [redacted] to learn new vocabulary words through discussions with an adult. Additionally, it allows [redacted] to learn keywords (i.e.: size, color, where, what, when) which will help him comprehend at the paragraph level in the future. Lastly, [redacted] enjoys Mercy Watson and has just began reading this in the classroom.

**Strengths**

Decoding, fluency, sight word identification, and basic vocabulary. [redacted] can have a conversation relating to a topic and state "what" a book or read-aloud is based on.

**Concerns/Needs**

Comprehending at the sentence level, sequencing sentences, and retelling.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in comprehension due to the diagnosis of Autism impacts [redacted] ability to access the general education curriculum.

| **Annual Goal 17** | **Evaluation Method** |
|---|---|
| Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a paragraph that is broken down into individual sentences (up to 4 total), [redacted] will be able to read, or listen to each sentence, verbalize his images, and answer one question (i.e.: what do you think the boy did next or based on the information, where do you think the boy is?) with no more than 3 teacher prompts to cue understanding and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph broken down into individual sentences, [redacted] will be able to read, listen to each sentence, verbalize his images, and state a summary using colored tiles. He will be able to do so by successfully stating at least 2 out of the 4 key elements from the story with 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences [redacted] will be able to read or listen to each sentence, verbalize his images, and state the main idea of the 4 sentence paragraph (i.e.: what was the paragraph mostly about or what was the main idea of the paragraph?). He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences, [redacted] will be able to read or listen to each sentence, verbalize his images, and draw a sketch relating to the paragraph that he read. He will be able to do so with no more than 2 teacher prompts or reminders about what the text stated and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal**<br>*(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.5 Craft and Structure: Analyze the structure of texts, including how specific sentences, paragraphs, and larger portions of the text (e.g., a section, chapter, scene, or stanza) relate to each other and the whole. | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| **Related Services necessary to achieve this goal (if any)** | |

| **Annual Goal 19** | **Evaluation Method** |
|---|---|
| Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to first state verbally "what" the brochure's topic is, with no more than 3 teacher prompts and 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to navigate the brochure with no more than 2 prompts per question (i.e.: show me where I can find the times I can access the water sports facility or what is Florida known for?), in 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, or activity such as hiking or jet skiing), [redacted] will be able to answer at least 2 questions relating to the brochure (i.e.: what is Florida known for? Or is Florida warm or hot?), with 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| CCSS.ELA-LITERACY.CCRA.R.10 Range of Reading and Level of Text Complexity: Read and comprehend complex literary and informational texts independently and proficiently. | |
| **Related Services necessary to achieve this goal (if any)** | |

## GOAL AREA: Mathematics

### Present Level of Performance

[redacted] mastered 2 out of 7 objectives. He shows the ability to add with regrouping, add and subtract without regrouping, can name a penny and dime and can identify the value of a penny consistently.

### Strengths

Addition and subtraction of multi-digit numbers without regrouping. Addition with regrouping including decimals representing money.

### Concerns/Needs

Identification of money names and worth, addition and subtraction with and without regrouping of money denominations, rounding up to the nearest dollar, and applying math skills to beginning budget understanding.

### Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities

Deficits in basic math skills due to the diagnosis of [redacted] impacts [redacted] ability to access the general education curriculum.

| Annual Goal 15 | Evaluation Method |
|---|---|
| Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given 10 images of real coins and dollar bills and multiple-choice answers [redacted] will identify the correct name and value of the coin or dollar with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given 5 addition and/or subtraction problems that list of up to 4 quantities of money ($23.54) [redacted] will use a calculator to add and/or subtract the problems with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 10 quantities of money (i.e. $21.32) and a hundred chart or number line and multiple choice answers [redacted] will identify the next dollar amount with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant, bills) that require the addition of multiple amounts of money [redacted] will use a calculator to find the sum with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situation (i.e. shopping, restaurant) that requires the addition of multiple amounts of money [redacted] will find the sum using a calculator and decide which amount of money, from a set of multiple choice answers, he would give a cashier to pay for his items with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant) that he has solved the total sum for and has identified the quantity of money needed to pay [redacted] will use a calculator to find the difference and see how much change he would get back with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **CT Core Standards Aligned to this Goal**<br>*(Early Learning and Development Standards)* | |
| CCSS.Math.Content.5.NBT.A.1-4 Understand the place value system. | |
| CCSS.Math.Content.5.NBT.B.5-7 Perform operations with multi-digit whole numbers and with decimals to hundredths. | |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

WISC-V: Full Scale IQ 65, Verbal Comprehension 73, Visual Spatial 72, Fluid Reasoning 67, Working Memory 72, Processing Speed 66. CAS-2: Full Scale 60, Planning 71, Attention 61, Simultaneous 74, Successive 70.

# Present Levels of Functional Performance and Annual Goal(s) and Objectives

## FUNCTIONAL PERFORMANCE

**Parent and/or Student Input**

Please refer to the statement that Mr. Kornberg submitted at the March 6, 2025 PPT Meeting.

## GOAL AREA: Communication

**Present Level of Performance**

[redacted] demonstrates difficulty staying focused on presented language tasks and has required redirection and multiple repetitions, cues and/or prompts to retain details from orally-presented directions and stories. He benefits from multiple choice options when asked to answer thinking questions about problem situations. [redacted] often needs reminders to listen carefully when others are speaking in order to understand their thoughts, feelings and perspectives. At times [redacted] can demonstrate stuttering behaviors, especially when initiating speaking.

**Strengths**

[redacted] likes to share his ideas and demonstrates background knowledge for topics of interest.

**Concerns/Needs**

[redacted] demonstrates weaknesses in listening comprehension and social-pragmatic skills.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in listening comprehension and social-pragmatic skills due to the diagnosis of [redacted] impacts [redacted]s ability to access the general education curriculum.

| Annual Goal 4 | Evaluation Method |
|---|---|
| Given structured tasks, [redacted] will increase listening comprehension skills , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and no more than two repetitions [redacted] will retell orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and no more than two repetitions [redacted] will follow orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options [redacted] will respond to comprehension questions about key details/events/characters from a presented story with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given given no more than two repetitions during a structured task [redacted] will paraphrase what a peer or adult has said with 80 % accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |

| Annual Goal 14 | Evaluation Method |
|---|---|
| Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and multiple choice options as needed [redacted] will state the perspective or point of view of two different individuals in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will identify an appropriate solution for a problem faced by an individual in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will predict what an individual in a story/situation will do next with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will explain why an individual in a story or situation says or does something with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |

## GOAL AREA: Social/Emotional

**Present Level of Performance**

In the small group, [redacted] has demonstrated growth in identifying feelings in pictures and identifying 'expected' and unexpected' behavior in others. He is motivated to interact with his peers. [redacted] has difficulty understanding the perspectives of others. He continues to become silly at times when it is not appropriate to do so.

**Strengths**

[redacted] is able to solve hypothetical social problems with adult prompting.

**Concerns/Needs**

[redacted] has difficulty understanding the perspective of others and knowing when it is an appropriate time to be silly.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in social interactions and relationships due to the diagnosis of [redacted] mpacts [redacted] s ability to access the general education curriculum.

| **Annual Goal 5** | **Evaluation Method** |
|---|---|
| Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given small group/individual instruction, [redacted] will identify 3 strategies to react to people who are having a strong emotion in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given hypothetical social situations, [redacted] will will identify the feelings being felt by the people in the situation in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given a hypothetical social scenario, [redacted] will [redacted] will practice taking the perspective of each of the people in the scenario in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given examples of his own behavior, [redacted] will will identify if the behavior was expected or unexpected in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Individual | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Executive Functioning

**Present Level of Performance**

[redacted] requires full adult support in order to plan, initiate, and complete tasks.

**Strengths**

[redacted] can get and put away materials when prompted by an adult.

**Concerns/Needs**

[redacted] has difficulty with independently completing and planning for multi-step tasks.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in organization and planning due to the diagnosis of [redacted] impacts [redacted]s ability to access the general education curriculum.

| **Annual Goal 16** | **Evaluation Method** |
|---|---|
| Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task presented to him with two steps and a "first, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with two steps and a "first, then" visual and provided and a blank check-list [redacted] will fill in the check-list with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a blank checklist [redacted] will fill in the checklist with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Activities of Daily Living

**Present Level of Performance**

[redacted] was able to identify 18/23 safety signs correctly. He has technically mastered this goal. He can explain each sign and its purpose. [redacted] can fill out a calendar, write when something will occur, and record his daily events. However, it is heavily prompted by an adult at this time.

**Strengths**

[redacted] can complete daily living tasks (i.e.: lunch and bathroom) on his own.

**Concerns/Needs**

[redacted] would benefit from learning how to understand a recipe, determine if he has enough money, and look up the items required to make the recipe. He would also benefit from learning how to read a brochure that outlines a state or activity.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in daily living skills due to the diagnosis [redacted] impacts [redacted]s ability to access the general education curriculum.

| Annual Goal 18 | Evaluation Method |
|---|---|
| Given a recipe, [redacted] will will improve his daily living skills by interpreting the recipe , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a recipe (i.e.: the box or a printed copy or handout of the recipe), [redacted] will be able to state the ingredients required. He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given the ingredients required (i.e.: [redacted] has verbally stated what is required for the recipe or the teacher has scribed the ingredients) [redacted] will be able to access a website (i.e.: Stop and Shop or Shop Rite) on the Chrome book to see what items are in stock. He will be able to do so by first typing the item into the search bar with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given Given a website (Stop and Shop or Shop Rite), [redacted] will be able to determine if an item is in stock that is required for a recipe. He will be able to do so by checking off "yes" or "no" next to the ingredient that an adult previously wrote down with 4 out of 5 opportunities and no more than 3 teacher prompts by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that was previously written down, [redacted] will be able to write the dollar amount that the item costs. He will be able to do so with no more than 3 prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that has previously been written down with the cost and 5 hypothetical values, [redacted] will be given 5 dollar amounts to determine whether he has enough to purchase the ingredients required to make the recipe (i.e.: if you were given $20.00 would you have enough to buy what you need?) with the use of a calculator to add and subtract. He will be able to do so with 80% accuracy. by 02/06/2026 | Consistent with grade-level report cards |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

NEPSY-II: Attention & Executive Functioning - all areas below or well below expected level, Social Perception - all areas below or well below expected level. CARS-2: Mild-to-Moderate Symptoms of Autism Spectrum Disorder. Social Responsiveness Scale-2: most areas in the moderate to severe range for school and mother. Vineland-3: Teacher

Communication 69, Daily Living Skills 60, Socialization 64, Composite 65; Mother/Father Communication 76/71, Daily Living Skills 68/74, Socialization 82/79, Composite 74/74. BASC-3: several areas At-Risk/Clinically Significant. See report.

## Progress Reporting

**A report of progress toward meeting the Annual Goals and Short Term Objectives included in this IEP will be provided to the parent(s):**

Consistent with general education grade-level report cards

## Transition Planning

**Is the PPT developing postsecondary/transition goals and services for the student?**

☑ Yes ☐ No

| Transition Assessment | Date |
|---|---|
| PPT conversation | 01/16/2025 |

**Assessment Data Summary**

Parent shared at PPT that she hopes [redacted]y will be an independent adult.

**History of transition assessments**

| Transition Assessment | Date |
|---|---|
| PPT conversation | 01/16/2025 |

**Does the student require specially designed instruction to support independent living skills?**

☑ Yes ☐ No

Transition planning and services must address independent living skills

**Is the student in attendance at the meeting?**

No

**Summary of the student's preferences and interests**

[redacted]y enjoys sensory-based activities (Play-Doh, coloring, etc.).

**Were any outside agencies invited to attend the PPT meeting?**

Agency representative(s) not appropriate to be invited to attend to assist in transition planning.

**Has any participating agency agreed to provide or pay for services/linkages?**

No

# Postsecondary Outcome Goal Statements

**Postsecondary Education or Training**

Upon high school graduation, [redacted] will attend a school/training program to study an area of interest.

**Employment**

Upon completion of high school, [redacted] will be employed in a field of interest.

**Independent Living Skills**

Upon completion of high school, [redacted] will have the skills necessary to live independently.

# Course of Study

**Has the student completed academic requirements?**

☐ Yes ☑ No

**Course of Study: Description of coursework and/or activities needed to assist the student in achieving postsecondary goals, from the student's current year to the anticipated exit year**

The student is enrolled in general education classes and specials(art, PE, music, library/media) that will allow him to explore his interests.

**Anticipated Exit Criteria: The student will be exited from special education upon:**

Ability to succeed in general education without specially designed instruction

# Transition Present Levels, Goals and Objectives

**Parent and/or Student Input: Transition**

Through conversation at PPT parent shared that she hoped [redacted] will be an independent adult.

**Present Level of Performance: Transition**

[redacted] is beginning to explore areas of interest that can be cultivated into long-term employment and/or independent living.

**Strengths**

[redacted] enjoys sensory-based activities.

**Concerns/Needs:**

Executive functioning skills such as managing a checklist independently, following a schedule and functional reading.

**Impact of student's disability on involvement and progress in the general education curriculum**

[redacted]s diagnosis of [redacted] coupled with his [redacted]y impacts his ability to make grade-level progress in the area of post-secondary planning without individualized/small-group instruction.

## TRANSITION GOAL AREA: POSTSECONDARY EDUCATION OR TRAINING

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives.
Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.

| **Annual Goal 20** | **Evaluation Method** |
|---|---|
| Given direct instruction and a daily schedule, [redacted] will utilize his supports to follow his schedule , with 75% accuracy | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a schedule and faded teacher prompting [redacted] will identify where he needs to be when asked a question about his schedule with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: EMPLOYMENT

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives
Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives.
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.

| **Annual Goal 21** | **Evaluation Method** |
|---|---|
| Given a checklist, [redacted] will indicate completion of a task with faded adult prompting , as evidenced by mastery of the following objective | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task list and faded adult prompting [redacted] will indicate completion of tasks with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: INDEPENDENT LIVING SKILLS

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives

| **Annual Goal 22** | **Evaluation Method** |
|---|---|
| Given functional reading materials(such as recipes,ingredient lists, street signs etc), [redacted] will demonstrate comprehension of the reading , as evidenced by mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given functional reading materials [redacted] will answer wh-questions about the content with 75% accuracy by 02/06/2026 | Monthly |
| Given functional reading materials [redacted] will identify what comes next in a task with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

# Transfer of Rights

At least one year prior to reaching the age of 18, students must be informed of their rights under the IDEA that will transfer at age 18.

**Will the student be 17 within one year from today's date?**

☐ Yes ☑ No

# Special Education and Related Services

## SPECIAL EDUCATION SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Academic Skills | 15 16 17 18 19 20 21 22 | 1 x per Week | 320 Minutes | Special Education Teacher | Paraprofessional | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Reading | 16 17 19 | 5 x per Week | 45 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Mathematics | 15 16 | 5 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Social Skills | 5 16 | 4 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group |
| Daily Living Skills | 16 18 | 3 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 02/06/2026 | 2a | small group/individual |

## RELATED SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Counseling Group | 5 16 | 4 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 02/06/2026 | 2a | small group/individual |
| Counseling Group | 5 16 | 1 x per Week | 30 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | small group |
| Counseling Individual | 5 16 | 2 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 02/06/2026 | 1a | Individual |
| Counseling Individual | 5 | 1 x per Week | 15 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | Individual |
| Language/ Communication Group | 4 14 | 3 x per Week | 30 Minutes | Speech-language Pathologist | Speech-language Pathologist | 02/07/2025 | 02/06/2026 | 2c | small group |

***Instructional Site Codes:**

1a. General Education Setting 50% or more non-disabled peers
1b. General Education Setting less than 50% non-disabled peers
2a. Resource Setting

2b. Separate Setting/Program
2c. Related Service Setting
3a. Community-Based Setting 50% or more non-disabled peers
3b. Community-Based Setting less than 50% non-disabled peers

## Supplementary Aids and Services

Supplementary aids and services will be provided for the duration of the IEP unless otherwise noted.

| ACCOMMODATION | Area(s)/Locations |
|---|---|
| Orally Read Tests/Directions | All Areas |
| Text to Speech (accessibility on the Chromebook) | All Areas |
| Repeat/Review Directions | All Areas |
| Visuals to support directions | All Areas |
| Limited Multiple Choice | All Areas |
| Math Manipulatives | All Areas |
| Access to a multiplication chart | All Areas |
| Preferential Seating | All Areas |
| Extra time text/quizzes/assignments | All Areas |
| Desktop list of tasks | All Areas |
| One paper/section at a time | All Areas |
| Post Routines | All Areas |
| Acknowledge positive work frequently | All Areas |
| Cue Expected Behavior | All Areas |
| Positive Reinforcement | All Areas |
| Set/Post Class Rules | |
| Check Work in Progress | All Areas |
| Have student restate information | All Areas |
| Provide Models | All Areas |
| Shortened Tasks | All Areas |
| Highlight Margins for writing | All Areas |
| Putty for a fidget when needed for behavioral regulation | All Areas, Writing |

| MODIFICATION | Area(s)/Locations |
|---|---|
| Academic Instruction | Social Studies, Reading, Science, Writing, Math |

| ADULT SUPPORT | Area(s)/Locations |
|---|---|
| 1:1 Aide - Behavioral Support | Music, Art, PE, Library , Recess |
| 1:1 Paraeducator - Instructional/Behavioral Support | Reading , Spanish and STEM |

## Indirect Services

**Are supports required for school personnel to implement this IEP?**

☑ Yes ☐ No

**Supports required for school personnel to implement this IEP Include:**

| Service | Goal ID | Frequency | Duration | Responsible Staff | Start Date | End Date |
|---|---|---|---|---|---|---|
| BCBA Consult | 5<br>16 | 1 x per Month | 120 Minutes | BCBA | 02/07/2025 | 02/06/2026 |

## ESY Services

**Are extended school year (ESY) services required for the Student to receive FAPE?**

☐ Yes ☑ No

## Transportation

**Does the Student require special transportation as a related service?**

☐ Yes ☑ No

Regular Transportation

# Removal from the General Education Environment

## SCHOOL YEAR: 2024-25

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 181 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 02/07/2025 | 06/11/2025 | 15.08 | 16.42 | 48.65 |

## SCHOOL YEAR: 2025-26

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 181 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 08/28/2025 | 02/06/2026 | 15.08 | 16.42 | 48.65 |

**Explain the extent to which the student will not participate in general education classes and non-academic activities with non-disabled peers**

5x45 ELA, 5x30 Math, 4x30 Social Skills, 3x30 Speech and Language, 3x30 Daily Living Skills, 1x15 individual counseling, 1x30 group counseling, 5.3 hours per week of academic/behavioral instruction in the resource room.

**Justification for the removal from the general education environment**

Due to [redacted] s [redacted] he requires small group instruction to meet his academic, social-emotional, speech and language and daily living instruction needs.

**Will the student be removed from the general education environment for 60% or more of the time?**

☐ Yes ☑ No

**At the time of this IEP implementation, will the student be placed at a Private Residential Facility?**

☐ Yes ☑ No

# District and State Testing Information

## ENGLISH LANGUAGE PROFICIENCY (ELP) ASSESSMENT

**Has the student been identified as an English Learner?**

☑ No ☐ Yes

## DISTRICTWIDE ASSESSMENTS

The student will participate in Alternate District Assessment(s)

| Assessment | Participation |
|---|---|
| Phonics/Decoding Benchmarks | With designated supports/accommodations |

**Designated Supports and Accommodations**

Individually assessed with an adult.

## STATEWIDE ASSESSMENTS

**What grade will the student be in during the next statewide assessment testing window?**

5th Grade

**The student will participate in the CTAA Assessment.**

**Assessment**: CTAA ELA - Grade 5

**Assessment**: CTAA Math - Grade 5

**Assessment**: CTAS - Grade 5

**Alternate assessments must be specified and a statement provided for each as to why the student cannot participate in the standard assessment and why the particular alternate assessment selected is appropriate for the student.**

[redacted] requires an alternate assessment in order to show understanding of tasks due to his [redacted]

# Resources

The following documents were provided to the parent(s) at this meeting or sent electronically with parental permission:

Procedural Safeguards in Special Education

Parental Notification of the Laws Relating to Physical Restraint and Seclusion in the Public Schools

A Parent's Guide to Special Education

IEP Manual

Building a Bridge

# Individualized Education Program
# Milford School District

| | |
|---|---|
| **Student Name:** [redacted] | **Meeting Date:** 05/21/2025 |
| | **Case Manager:** Tara Truscello |
| **Date of Birth:** [redacted] | **Parent/Guardian Name:** Karen [redacted] |
| **Current Grade:** 5 | **Primary Disability:** [redacted] |
| **Current Enrolled School:** J. F. Kennedy School (0841911) | **School Next Year:** |
| **Most Recent Evaluation Date:** 02/08/2024 | **Next Reevaluation Date:** 02/08/2027 |
| **Most Recent Annual Review Date:** 01/16/2025 | **Next Annual Review Date:** 01/15/2026 |

**Reason for Meeting:**

Review or Revise the IEP

Transition Planning - The team will develop, review, or revise transition goals and objectives (transition planning)

## PLANNING AND PLACEMENT TEAM (PPT) MEMBERS PRESENT

| Name | Role |
|---|---|
| Donna Stuart | Student's General Education Teacher |
| Tara Truscello | Special Education Teacher or Provider |
| Amy Rizzo | Administrator or Designee |
| Jennifer Davis | School Psychologist |
| Karen Kristan | Speech and Language Pathologist |
| Lauri Dougherty | Social Worker |
| Carrie Minar | Other: West Shore Representative |
| Nadine Macklin | Other: Instructional Supervisor Special Education Elementary |
| Sara Collette | Other: Instructional Supervisor Special Education |
| Sarah Stanley (Daily Living Middle School Program Representative) | Special Education Teacher |
| Maureen Raccio (Resource Teacher at WSMS) | Special Education Teacher |

# Planning and Placement Team Recommendations

The PPT recommends the following:

May 21, 2025

Continue the IEP with the following recommendations:

6th Grade Recommendation:

The team recommends the specialized program at Harborside for [redacted] for the 2025-2026 school year

Services:

The following services will remain until the end of the 2024-2025 school year (June 11, 2025)
5 x 45 ELA in the resource room
5x30 Math in the resource room
3x30 Daily Living in the resource room
4x30 Social Skills in the resource/related service room
1x30 Group Counseling in the related service room
1x15 Individual Counseling in the related service room
2x30 push-in group counseling in the general education classroom
3x30 Speech and Language in the related service room
320 min per week- Academic/Behavior Para in the resource room
150 min per week- Academic/Behavior Para in the general education setting
320 min per week- Behavior Para in a general education setting

2025-2026 School Year:
Specialized Program Hours: 825 minutes 3 out of a 4 day cycle for academic skills,
30 minutes 5 days a week for social skills
30 minutes 3 out of a 4 day cycle the social worker will push-in for social skills instruction
Para Professional in all general education classes, transitions, bathroom, and lunch.
1x30 Group Counseling in the related service room
1x15 Individual Counseling in the related service room
30 minutes for 5 out of an 8 day cycle

Remove:
2x30 push-in group counseling in the general education classroom- this was for Recess, which does not happen in Middle School

Accommodations:

All of the following accommodations will be continued:
Orally Read Tests/Directions, Text to Speech (accessibility on the Chromebook), Repeat/Review Directions, Visuals to support directions, Limited Multiple Choice, Math Manipulatives, Access to a multiplication chart, Preferential Seating, Extra time text/quizzes/assignments, Desktop list of tasks, One paper/section at a time, Post Routines, Acknowledge positive work frequently Cue Expected Behavior, Positive Reinforcement, Set/Post Class Rules, Check Work in Progress, Have student restate information, Shortened Tasks, Highlight Margins for writing, Putty for a fidget when needed for behavioral regulation.

State Testing:

CTAA

Transportation:
Transportation from his Milford Address to and from Harborside Middle School

ESY:
[redacted] is eligible for ESY in the specialized program, which runs from 9-12, Monday-Thursday from July 7-July 31st.

IEP Implementation Date: June 11, 2025

The team was in agreement and the meeting was adjourned.

## Special Considerations

**Does the student exhibit behaviors that impede learning for self or others?**

☐ No ☑ Yes

IEP goal(s) and objectives will be developed to address the behavior.

A behavioral intervention plan based on a functional behavior assessment has been developed.

**Is the student deaf or hard of hearing?**

☑ No ☐ Yes

**Is the student blind or visually impaired?**

☑ No ☐ Yes

**Does the student have limited English proficiency (Student qualifies as an EL)?**

☑ No ☐ Yes

**Does the student require accessible educational materials (AEM)?**

☑ No ☐ Yes

**Does the student require an Augmentative and/or Alternative mode of Communication?**

☑ No ☐ Yes

## Present Levels of Academic Achievement and Annual Goal(s) and Objectives

### ACADEMIC, PRE-ACADEMIC, COGNITIVE ACHIEVEMENT

**Parent and/or Student Input**

May 21, 2025- Ms. Michelson and Mr. Kornberg did not attend the PPT.

### GOAL AREA: Reading

**Present Level of Performance**

[redacted] was unable to achieve mastery of his reading goals due to the amount of adult prompting. Listening comprehension (when listening to news clips, commercials, and short stories) is an area of weakness due to attention and the ability to verbalize his thoughts when asked a comprehension question. Additionally, it is difficult for [redacted] to write his ideas down after he states them due to his attention. He will frequently forget his idea before he has the time to write it down. He can answer questions relating to pictures and short sentences but it is difficult for him to make connections and state the main purpose of what he is listening to without more explicit comprehension instruction. Therefore, [redacted] is currently learning how to comprehend by utilizing a "visualization" strategy. With this approach, it allows [redacted] to learn new vocabulary words through discussions with an adult. Additionally, it allows [redacted] to learn keywords (i.e.: size, color, where, what, when) which will help him comprehend at the paragraph level in the future. Lastly, [redacted] enjoys Mercy Watson and has just began reading this in the classroom.

**Strengths**

Decoding, fluency, sight word identification, and basic vocabulary. [redacted] can have a conversation relating to a topic and state "what" a book or read-aloud is based on.

**Concerns/Needs**

Comprehending at the sentence level, sequencing sentences, and retelling.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in comprehension due to the diagnosis [redacted]mpacts [redacted] ability to access the general education curriculum.

| **Annual Goal 17** | **Evaluation Method** |
|---|---|
| Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a paragraph that is broken down into individual sentences (up to 4 total), [redacted] will be able to read, or listen to each sentence, verbalize his images, and answer one question (i.e.: what do you think the boy did next or based on the information, where do you think the boy is?) with no more than 3 teacher prompts to cue understanding and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph broken down into individual sentences, [redacted] will be able to read, listen to each sentence, verbalize his images, and state a summary using colored tiles. He will be able to do so by successfully stating at least 2 out of the 4 key elements from the story with 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences [redacted] will be able to read or listen to each sentence, verbalize his images, and state the main idea of the 4 sentence paragraph (i.e.: what was the paragraph mostly about or what was the main idea of the paragraph?). He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a paragraph that is broken down into individual sentences, [redacted] will be able to read or listen to each sentence, verbalize his images, and draw a sketch relating to the paragraph that he read. He will be able to do so with no more than 2 teacher prompts or reminders about what the text stated and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.5 Craft and Structure: Analyze the structure of texts, including how specific sentences, paragraphs, and larger portions of the text (e.g., a section, chapter, scene, or stanza) relate to each other and the whole. | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| **Related Services necessary to achieve this goal (if any)** | |

| **Annual Goal 19** | **Evaluation Method** |
|---|---|
| Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to first state verbally "what" the brochure's topic is, with no more than 3 teacher prompts and 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, activity such as hiking or jet skiing), [redacted] will be able to navigate the brochure with no more than 2 prompts per question (i.e.: show me where I can find the times I can access the water sports facility or what is Florida known for?), in 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| Given a brochure (i.e.: of a state, or activity such as hiking or jet skiing), [redacted] will be able to answer at least 2 questions relating to the brochure (i.e.: what is Florida known for? Or is Florida warm or hot?), with 4 out of 5 opportunities. by 02/06/2026 | Consistent with grade-level report cards |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.ELA-LITERACY.CCRA.R.1 Key Ideas and Details: Read closely to determine what the text says explicitly and to make logical inferences from it; cite specific textual evidence when writing or speaking to support conclusions drawn from the text. | |
| CCSS.ELA-LITERACY.CCRA.R.10 Range of Reading and Level of Text Complexity: Read and comprehend complex literary and informational texts independently and proficiently. | |
| **Related Services necessary to achieve this goal (if any)** | |

## GOAL AREA: Mathematics

**Present Level of Performance**

[redacted] mastered 2 out of 7 objectives. He shows the ability to add with regrouping, add and subtract without regrouping, can name a penny and dime and can identify the value of a penny consistently.

**Strengths**

Addition and subtraction of multi-digit numbers without regrouping. Addition with regrouping including decimals representing money.

**Concerns/Needs**

Identification of money names and worth, addition and subtraction with and without regrouping of money denominations, rounding up to the nearest dollar, and applying math skills to beginning budget understanding.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in basic math skills due to the diagnosis of [redacted] impacts [redacted] ability to access the general education curriculum.

| **Annual Goal 15** | **Evaluation Method** |
|---|---|
| Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given 10 images of real coins and dollar bills and multiple-choice answers [redacted] will identify the correct name and value of the coin or dollar with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given 5 addition and/or subtraction problems that list of up to 4 quantities of money ($23.54) [redacted] will use a calculator to add and/or subtract the problems with adult support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 10 quantities of money (i.e. $21.32) and a hundred chart or number line and multiple choice answers [redacted] will identify the next dollar amount with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant, bills) that require the addition of multiple amounts of money [redacted] will use a calculator to find the sum with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situation (i.e. shopping, restaurant) that requires the addition of multiple amounts of money [redacted] will find the sum using a calculator and decide which amount of money, from a set of multiple choice answers, he would give a cashier to pay for his items with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a set of 5 real-life situations (i.e. shopping, restaurant) that he has solved the total sum for and has identified the quantity of money needed to pay [redacted] will use a calculator to find the difference and see how much change he would get back with teacher support with 80% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **CT Core Standards Aligned to this Goal** *(Early Learning and Development Standards)* | |
| CCSS.Math.Content.5.NBT.A.1-4 Understand the place value system. | |
| CCSS.Math.Content.5.NBT.B.5-7 Perform operations with multi-digit whole numbers and with decimals to hundredths. | |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

WISC-V: Full Scale IQ 65, Verbal Comprehension 73, Visual Spatial 72, Fluid Reasoning 67, Working Memory 72, Processing Speed 66. CAS-2: Full Scale 60, Planning 71, Attention 61, Simultaneous 74, Successive 70.

# Present Levels of Functional Performance and Annual Goal(s) and Objectives

## FUNCTIONAL PERFORMANCE

**Parent and/or Student Input**

## GOAL AREA: Communication

**Present Level of Performance**

[redacted] demonstrates difficulty staying focused on presented language tasks and has required redirection and multiple repetitions, cues and/or prompts to retain details from orally-presented directions and stories. He benefits from multiple choice options when asked to answer thinking questions about problem situations. [redacted] often needs reminders to listen carefully when others are speaking in order to understand their thoughts, feelings and perspectives. At times [redacted] can demonstrate stuttering behaviors, especially when initiating speaking.

**Strengths**

[redacted] ikes to share his ideas and demonstrates background knowledge for topics of interest.

**Concerns/Needs**

[redacted] demonstrates weaknesses in listening comprehension and social-pragmatic skills.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in listening comprehension and social-pragmatic skills due to the diagnosis of [redacted] impacts [redacted] s ability to access the general education curriculum.

| Annual Goal 4 | Evaluation Method |
|---|---|
| Given structured tasks, [redacted] will increase listening comprehension skills , as measured by the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and no more than two repetitions [redacted] will retell orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and no more than two repetitions [redacted] will follow orally-presented directions containing two steps and temporal or conditional concepts with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options [redacted] will respond to comprehension questions about key details/events/characters from a presented story with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given given no more than two repetitions during a structured task [redacted] will paraphrase what a peer or adult has said with 80 % accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |
| Language/Communication Group | |

| **Annual Goal 14** | **Evaluation Method** |
|---|---|
| Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a visual and multiple choice options as needed [redacted] will state the perspective or point of view of two different individuals in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will identify an appropriate solution for a problem faced by an individual in a presented story/situation with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will predict what an individual in a story/situation will do next with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| Given a visual and multiple choice options as needed [redacted] will explain why an individual in a story or situation says or does something with 80% accuracy in 4/5 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Language/Communication Group | |
| Language/Communication Group | |

## GOAL AREA: Social/Emotional

### Present Level of Performance

In the small group, [redacted] has demonstrated growth in identifying feelings in pictures and identifying 'expected' and unexpected' behavior in others. He is motivated to interact with his peers. [redacted] has difficulty understanding the perspectives of others. He continues to become silly at times when it is not appropriate to do so.

### Strengths

[redacted] is able to solve hypothetical social problems with adult prompting.

### Concerns/Needs

[redacted] has difficulty understanding the perspective of others and knowing when it is an appropriate time to be silly.

### Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities

Deficits in social interactions and relationships due to the diagnosis of [redacted] impacts [redacted]s ability to access the general education curriculum.

| Annual Goal 5 | Evaluation Method |
|---|---|
| Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given small group/individual instruction, [redacted] will identify 3 strategies to react to people who are having a strong emotion in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given hypothetical social situations, [redacted] will will identify the feelings being felt by the people in the situation in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given a hypothetical social scenario, [redacted] will [redacted] will practice taking the perspective of each of the people in the scenario in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| Given examples of his own behavior [redacted] will will identify if the behavior was expected or unexpected in 3/5 trials by 02/06/2026 | Consistent with grade-level report cards. |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Individual | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Executive Functioning

**Present Level of Performance**

[redacted] requires full adult support in order to plan, initiate, and complete tasks.

**Strengths**

[redacted] can get and put away materials when prompted by an adult.

**Concerns/Needs**

[redacted] has difficulty with independently completing and planning for multi-step tasks.

**Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities**

Deficits in organization and planning due to the diagnosis of [redacted] impacts [redacted] s ability to access the general education curriculum.

| Annual Goal 16 | Evaluation Method |
|---|---|
| Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives. | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task presented to him with two steps and a "first, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with two steps and a "first, then" visual and provided and a blank check-list [redacted] will fill in the check-list with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a filled-out checklist [redacted] will follow the expectations and complete his task with adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| Given a task presented to him with three steps and a "first, next, then" visual and a blank checklist [redacted] will fill in the checklist with full adult support with 90% accuracy across 10 opportunities by 02/06/2026 | Bi-Weekly |
| **Related Services necessary to achieve this goal (if any)** | |
| Counseling Group | |
| Counseling Group | |
| Counseling Individual | |

## GOAL AREA: Activities of Daily Living

### Present Level of Performance

[redacted] was able to identify 18/23 safety signs correctly. He has technically mastered this goal. He can explain each sign and its purpose. [redacted] can fill out a calendar, write when something will occur, and record his daily events. However, it is heavily prompted by an adult at this time.

### Strengths

[redacted] can complete daily living tasks (i.e.: lunch and bathroom) on his own.

### Concerns/Needs

[redacted] would benefit from learning how to understand a recipe, determine if he has enough money, and look up the items required to make the recipe. He would also benefit from learning how to read a brochure that outlines a state or activity.

### Impact of student's disability on involvement and progress in the general education curriculum or appropriate preschool activities

Deficits in daily living skills due to the diagnosis o[redacted]npacts [redacted]s ability to access the general education curriculum.

| **Annual Goal 18** | **Evaluation Method** |
|---|---|
| Given a recipe, [redacted] will will improve his daily living skills by interpreting the recipe , as measured by the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a recipe (i.e.: the box or a printed copy or handout of the recipe), [redacted] will be able to state the ingredients required. He will be able to do so with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given the ingredients required (i.e.: [redacted] has verbally stated what is required for the recipe or the teacher has scribed the ingredients), [redacted] will be able to access a website (i.e.: Stop and Shop or Shop Rite) on the Chrome book to see what items are in stock. He will be able to do so by first typing the item into the search bar with no more than 3 teacher prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given Given a website (Stop and Shop or Shop Rite), [redacted] will be able to determine if an item is in stock that is required for a recipe. He will be able to do so by checking off "yes" or "no" next to the ingredient that an adult previously wrote down with 4 out of 5 opportunities and no more than 3 teacher prompts by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that was previously written down, [redacted] will be able to write the dollar amount that the item costs. He will be able to do so with no more than 3 prompts and 4 out of 5 opportunities by 02/06/2026 | Consistent with grade-level report cards |
| Given a recipe that has previously been written down with the cost and 5 hypothetical values, [redacted] will be given 5 dollar amounts to determine whether he has enough to purchase the ingredients required to make the recipe (i.e.: if you were given $20.00 would you have enough to buy what you need?) with the use of a calculator to add and subtract. He will be able to do so with 80% accuracy. by 02/06/2026 | Consistent with grade-level report cards |
| **Related Services necessary to achieve this goal (if any)** | |

**Additional Data/Assessment Information (not included in Present Level(s) of Performance)**

NEPSY-II: Attention & Executive Functioning - all areas below or well below expected level, Social Perception - all areas below or well below expected level. CARS-2: Mild-to-Moderate Symptoms of Autism Spectrum Disorder. Social Responsiveness Scale-2: most areas in the moderate to severe range for school and mother. Vineland-3: Teacher Communication 69, Daily Living Skills 60, Socialization 64, Composite 65; Mother/Father Communication 76/71, Daily Living Skills 68/74, Socialization 82/79, Composite 74/74. BASC-3: several areas At-Risk/Clinically Significant. See report.

# Progress Reporting

**A report of progress toward meeting the Annual Goals and Short Term Objectives included in this IEP will be provided to the parent(s):**

Consistent with general education grade-level report cards

# Transition Planning

**Is the PPT developing postsecondary/transition goals and services for the student?**

☑ Yes ☐ No

| Transition Assessment | Date |
|---|---|
| PPT conversation | 01/16/2025 |

**Assessment Data Summary**

Parent shared at PPT that she hopes [redacted] will be an independent adult.

**History of transition assessments**

| Transition Assessment | Date |
|---|---|
| PPT conversation | 01/16/2025 |

**Does the student require specially designed instruction to support independent living skills?**

☑ Yes ☐ No

Transition planning and services must address independent living skills

**Is the student in attendance at the meeting?**

No

**Summary of the student's preferences and interests**

[redacted] enjoys sensory-based activities (Play-Doh, coloring, etc.).

**Were any outside agencies invited to attend the PPT meeting?**

Agency representative(s) not appropriate to be invited to attend to assist in transition planning.

**Has any participating agency agreed to provide or pay for services/linkages?**

No

# Postsecondary Outcome Goal Statements

**Postsecondary Education or Training**

Upon high school graduation, [redacted] will attend a school/training program to study an area of interest.

**Employment**

Upon completion of high school [redacted] will be employed in a field of interest.

**Independent Living Skills**

Upon completion of high school, [redacted] will have the skills necessary to live independently.

## Course of Study

**Has the student completed academic requirements?**

☐ Yes ☑ No

**Course of Study: Description of coursework and/or activities needed to assist the student in achieving postsecondary goals, from the student's current year to the anticipated exit year**

The student is enrolled in general education classes and specials(art, PE, music, library/media) that will allow him to explore his interests.

**Anticipated Exit Criteria: The student will be exited from special education upon:**

Ability to succeed in general education without specially designed instruction

## Transition Present Levels, Goals and Objectives

**Parent and/or Student Input: Transition**

Through conversation at PPT parent shared that she hoped [redacted] will be an independent adult.

**Present Level of Performance: Transition**

[redacted] is beginning to explore areas of interest that can be cultivated into long-term employment and/or independent living.

**Strengths**

[redacted] enjoys sensory-based activities.

**Concerns/Needs:**

Executive functioning skills such as managing a checklist independently, following a schedule and functional reading.

**Impact of student's disability on involvement and progress in the general education curriculum**

[redacted] diagnosis of Autism coupled with his intellectual disability impacts his ability to make grade-level progress in the area of post-secondary planning without individualized/small-group instruction.

### TRANSITION GOAL AREA: POSTSECONDARY EDUCATION OR TRAINING

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given a task presented to him using a "first, then" visual, [redacted] will create a checklist of what he needs and his expectation , with teacher support through mastery of the following objectives.
Given a text at the sentence level, [redacted] will improve his comprehension skills , as measured by the following objectives
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.

| **Annual Goal 20** | **Evaluation Method** |
|---|---|
| Given direct instruction and a daily schedule, [redacted] will utilize his supports to follow his schedule , with 75% accuracy | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a schedule and faded teacher prompting [redacted] will identify where he needs to be when asked a question about his schedule with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: EMPLOYMENT

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given structured activity, [redacted] will utilize strategies to increase social awareness and problem solving skills , as measured by the following objectives
Given explicit instruction in money identification, money value, rounding up to the nearest dollar and access to a calculator, [redacted] will solve real-life money problems with adult support , through mastery of the following objectives.
Given a brochure, [redacted] will improve his daily living skills by reading and interpreting the brochure , as measured by the following objectives.

| **Annual Goal 21** | **Evaluation Method** |
|---|---|
| Given a checklist, [redacted] will indicate completion of a task with faded adult prompting , as evidenced by mastery of the following objective | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given a task list and faded adult prompting [redacted] will indicate completion of tasks with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

## TRANSITION GOAL AREA: INDEPENDENT LIVING SKILLS

**The Postsecondary Education/Training Annual Goal is supported by the following Annual Goal:**
Given small group/individual instruction, [redacted] will improve his perspective taking and social skills , with 100% mastery of the following objectives

| Annual Goal 22 | Evaluation Method |
|---|---|
| Given functional reading materials(such as recipes,ingredient lists, street signs etc),[redacted]will demonstrate comprehension of the reading , as evidenced by mastery of the following objectives | Progress toward meeting the annual goal will be measured by achievement on short-term objectives. |
| **Short-term Objectives/Benchmarks** | **Progress Monitoring Schedule** |
| Given functional reading materials[redacted]will answer wh-questions about the content with 75% accuracy by 02/06/2026 | Monthly |
| Given functional reading materials[redacted]will identify what comes next in a task with 75% accuracy by 02/06/2026 | Monthly |
| **Standards Aligned to this Goal** | |
| None | |
| **Related Services necessary to achieve this goal (if any)** | |
| None | |

# Transfer of Rights

At least one year prior to reaching the age of 18, students must be informed of their rights under the IDEA that will transfer at age 18.

**Will the student be 17 within one year from today's date?**

☐ Yes ☑ No

# Special Education and Related Services

## SPECIAL EDUCATION SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Reading | 16 17 19 | 5 x per Week | 45 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 08/27/2025 | 2a | small group/individual |
| Mathematics | 15 16 | 5 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 08/27/2025 | 2a | small group/individual |
| Social Skills | 5 16 | 4 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 08/27/2025 | 2a | small group |
| Daily Living Skills | 16 18 | 3 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher | 02/07/2025 | 08/27/2025 | 2a | small group/individual |
| Academic Skills | 15 16 17 18 19 20 21 22 | 1 x per Week | 320 Minutes | Special Education Teacher | Paraprofessional | 02/07/2025 | 08/27/2025 | 2a | small group/individual |
| Academic Skills | 5 15 16 17 18 19 20 21 22 | 1 x per 4-Day Cycle | 825 Minutes | Special Education Teacher | Special Education Teacher | 08/28/2025 | 02/06/2026 | 2b | group |
| Social Skills | 5 16 | 5 x per Week | 30 Minutes | Special Education Teacher | Special Education Teacher/SEL Staff | 08/28/2025 | 02/06/2026 | 2b | group |

## RELATED SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Language/ Communication Group | 4 14 | 5 x per 8-Day Cycle | 30 Minutes | Speech-language Pathologist | Speech-language Pathologist | 08/28/2025 | 02/06/2026 | 2c | small group |
| Language/ Communication Group | 4 14 | 3 x per Week | 30 Minutes | Speech-language Pathologist | Speech-language Pathologist | 02/07/2025 | 08/27/2025 | 2c | small group |

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Counseling Group | 5<br>16 | 4 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 08/27/2025 | 2a | small group/individual |
| Counseling Individual | 5<br>16 | 2 x per Week | 30 Minutes | School Social Worker | School Social Worker | 02/07/2025 | 08/27/2025 | 1a | Individual |
| Counseling Group | 5<br>16 | 1 x per Week | 30 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | small group |
| Counseling Individual | 5 | 1 x per Week | 15 Minutes | School Psychologist | School Psychologist | 02/07/2025 | 02/06/2026 | 2c | Individual |

***Instructional Site Codes:**

1a. General Education Setting 50% or more non-disabled peers
1b. General Education Setting less than 50% non-disabled peers
2a. Resource Setting
2b. Separate Setting/Program
2c. Related Service Setting
3a. Community-Based Setting 50% or more non-disabled peers
3b. Community-Based Setting less than 50% non-disabled peers

## Supplementary Aids and Services

Supplementary aids and services will be provided for the duration of the IEP unless otherwise noted.

| ACCOMMODATION | Area(s)/Locations |
|---|---|
| Orally Read Tests/Directions | All Areas |
| Text to Speech (accessibility on the Chromebook) | All Areas |
| Repeat/Review Directions | All Areas |
| Visuals to support directions | All Areas |
| Limited Multiple Choice | All Areas |
| Math Manipulatives | All Areas |
| Access to a multiplication chart | All Areas |
| Preferential Seating | All Areas |
| Extra time text/quizzes/assignments | All Areas |
| Desktop list of tasks | All Areas |
| One paper/section at a time | All Areas |
| Post Routines | All Areas |
| Acknowledge positive work frequently | All Areas |
| Cue Expected Behavior | All Areas |
| Positive Reinforcement | All Areas |
| Set/Post Class Rules | All Areas |
| Check Work in Progress | All Areas |
| Have student restate information | All Areas |
| Provide Models | All Areas |
| Shortened Tasks | All Areas |
| Highlight Margins for writing | All Areas |
| Putty for a fidget when needed for behavioral regulation | All Areas, Writing |
| Paraprofessional for general education classrooms, transitions, bathrooms and lunch starting on 6/12/2025 | general education classrooms, transitions, bathrooms and lunch |

| MODIFICATION | Area(s)/Locations |
|---|---|

| MODIFICATION | Area(s)/Locations |
|---|---|
| Academic Instruction | Social Studies, Reading, Science, Writing, Math |

| ADULT SUPPORT | Area(s)/Locations |
|---|---|
| 1:1 Aide - Behavioral Support | Music, Art, PE, Library , Recess |
| 1:1 Paraeducator - Instructional/Behavioral Support | Reading , Spanish and STEM ending on 6/11/25 |

# Indirect Services

**Are supports required for school personnel to implement this IEP?**

☑ Yes ☐ No

**Supports required for school personnel to implement this IEP Include:**

| Service | Goal ID | Frequency | Duration | Responsible Staff | Start Date | End Date |
|---|---|---|---|---|---|---|
| BCBA Consult | 5<br>16 | 1 x per Month | 120 Minutes | BCBA | 02/07/2025 | 02/06/2026 |

# ESY Services

**Are extended school year (ESY) services required for the Student to receive FAPE?**

☑ Yes ☐ No

## ESY SPECIAL EDUCATION SERVICES

| Service | Goal ID | Frequency | Duration | Responsible Staff | Service Implementer | Start Date | End Date | Site | Instructional Service Delivery |
|---|---|---|---|---|---|---|---|---|---|
| Daily Living Skills | 5<br>16<br>18 | 4 x per Week | 180 Minutes | Special Education Teacher | Special Education Teacher | 07/07/2025 | 07/31/2025 | 2b | group |

## Transportation

**Does the Student require special transportation as a related service?**

☑ Yes ☐ No

Special Transportation will be provided with the following:

**Supports**

Pick up/ Drop off at Milford Home Address

## Removal from the General Education Environment

### SCHOOL YEAR: 2024-25

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 181 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 02/07/2025 | 06/11/2025 | 15.08 | 16.42 | 48.65 |

### SCHOOL YEAR: 2025-26

| Length of School Year | Length of School Day | Total School Hours/Week |
|---|---|---|
| 181 | 6.75 | 33.75 |

| Start Date | End Date | Special Education Hours/Week | Non-Disabled Peer Hours/Week | Percentage of Time with Non-Disabled Peers |
|---|---|---|---|---|
| 08/28/2025 | 02/06/2026 | 19.68 | 11.75 | 34.81 |

**Explain the extent to which the student will not participate in general education classes and non-academic activities with non-disabled peers**

24-25 School Year- 5x45 ELA, 5x30 Math, 4x30 Social Skills, 3x30 Speech and Language, 3x30 Daily Living Skills, 1x15 individual counseling, 1x30 group counseling, 5.3 hours per week of academic/behavioral instruction in the resource room.

25-26 School Year- 1 x 15 individual counseling, 1 x 30 group counseling, 2 x 30 Speech and Language, 825 minutes 1 time out of a 4-day cycle in the self-contained Classroom, 5 times a week for 30 minutes social skills instruction in the

self-contained classroom.

**Justification for the removal from the general education environment**

Due to [redacted]s [redacted] he requires small group instruction to meet his academic, social-emotional, speech and language and daily living instruction needs.

**Will the student be removed from the general education environment for 60% or more of the time?**

☑ Yes ☐ No

The LRE Checklist is required.

**At the time of this IEP implementation, will the student be placed at a Private Residential Facility?**

☐ Yes ☑ No

# District and State Testing Information

## ENGLISH LANGUAGE PROFICIENCY (ELP) ASSESSMENT

**Has the student been identified as an English Learner?**

☑ No ☐ Yes

## DISTRICTWIDE ASSESSMENTS

The student will participate in Alternate District Assessment(s)

| Assessment | Participation |
| --- | --- |
| Phonics/Decoding Benchmarks | With designated supports/accommodations |

**Designated Supports and Accommodations**

Individually assessed with an adult.

## STATEWIDE ASSESSMENTS

**What grade will the student be in during the next statewide assessment testing window?**

5th Grade

**The student will participate in the CTAA Assessment.**

**Assessment:** CTAA ELA - Grade 5

**Assessment:** CTAA Math - Grade 5

**Assessment:** CTAS - Grade 5

**Alternate assessments must be specified and a statement provided for each as to why the student cannot participate in the standard assessment and why the particular alternate assessment selected is appropriate for the student.**

[redacted] requires an alternate assessment in order to show understanding of tasks due to his [redacted]

## Resources

The following documents were provided to the parent(s) at this meeting or sent electronically with parental permission:

Procedural Safeguards in Special Education

Parental Notification of the Laws Relating to Physical Restraint and Seclusion in the Public Schools

A Parent's Guide to Special Education

IEP Manual

Building a Bridge

[redacted]

9/30/2024

## COLUMBIA-SUICIDE SEVERITY RATING SCALE

*Screen Version - Recent*

| | Past month | |
|---|---|---|
| **Ask questions that are bolded and <u>underlined</u>.** | **YES** | **NO** |
| **Ask Questions 1 and 2** | | |
| **1) *<u>Have you wished you were dead or wished you could go to sleep and not wake up?</u>*** | | ✓ |
| **2) *<u>Have you actually had any thoughts of killing yourself?</u>*** | | ✓ |
| **If YES to 2, ask questions 3, 4, 5, and 6. If NO to 2, go directly to question 6.** | | |
| **3) *<u>Have you been thinking about how you might do this?</u>*** E.g. "*I thought about taking an overdose but I never made a specific plan as to when where or how I would actually do it....and I would never go through with it.*" | | |
| **4) *<u>Have you had these thoughts and had some intention of acting on them?</u>*** As opposed to "*I have the thoughts but I definitely will not do anything about them.*" | | |
| **5) *<u>Have you started to work out or worked out the details of how to kill yourself? Did you intend to carry out this plan?</u>*** | | |

| | YES | NO |
|---|---|---|
| **6) *<u>Have you ever done anything, started to do anything, or prepared to do anything to end your life?</u>*** Examples: Collected pills, obtained a gun, gave away valuables, wrote a will or suicide note, took out pills but didn't swallow any, held a gun but changed your mind or it was grabbed from your hand, went to the roof but didn't jump; or actually took pills, tried to shoot yourself, cut yourself, tried to hang yourself, etc. | | ✓ |
| **If YES, ask: *<u>Was this within the past three months?</u>*** | | |

- Low Risk
- Moderate Risk
- High Risk

*For inquiries and training information contact: Kelly Posner, Ph.D.*
*New York State Psychiatric Institute, 1051 Riverside Drive, New York, New York, 10032; posnerk@nyspi.columbia.edu*

© 2008 The Research Foundation for Mental Hygiene, Inc.

John F Kennedy Elementary School **24-25 Year**

[redacted]

# Log Entries

[redacted] 5 [redacted] JFK [redacted]

Edit Discipline Alert

| Date | Description |
|---|---|
| 09/30/2024 | Dougherty, Lauri - **Social Worker** - Called each parent to notify them that [redacted] made a self harm comment "I want to kill himself" when he was asked to stop playing tag. The Columbia-Suicide Severity Checklist was done. [redacted] said he does not have any plan or intent. He stated he made the comment because he was frustrated that he could not play tag.<br>He will be supervised by staff until he is picked up in the afterschool program. |
| 09/26/2024 | Dougherty, Lauri - **Social Worker** - [redacted] called each parent to let them know he put his hands on a 3rd grade student in the boys bathroom and then splashed water on him. |
| 09/25/2024 | Koosa, Darlene - **emailed home** - Sent email home to inform parents of incidents in PE and resource room |
| 09/19/2024 | Koosa, Darlene - **recess incident** - While playing tag, [redacted] ran away from [redacted] because he didn't want to play anymore. [redacted] ran after [redacted] and [redacted] said stop. [redacted]y grabbed both of [redacted] hands and threw him to the ground. [redacted] called and left a message for both parents regarding the incident. Mrs. Koosa will send a follow up email to both parents. [redacted] apologized to [redacted] |
| 09/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] called each parent to let them know he hit two girls at recess yesterday. |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a phone message for his mom letting her know that before he entered the school building he was playing with decorations at the front door (kicked the pumpkin). Then when he entered the school building he threw his: backpack;shoes and water bottle down the hallway where other students were walking.<br>Mom called back and spoke directly to [redacted]. |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a message regarding his behavior this morning when dad dropped him off early today. |
| 09/05/2024 | Koosa, Darlene - **bathroom** - [redacted] and other students were yelling in the bathroom. A paraeducator gave a direction to come out of the bathroom. The others left and [redacted] did not. He continued to yell. After another direction, he came out. I talked to him about using an indoor voice in the bathroom and safety - he needs to be able to hear and follow directions from an adult. Emailed Mom and Dad. |
| 09/04/2024 | Dougherty, Lauri - **Social Worker** - Discussed with [redacted] throwing wood chips yesterday and his use of profanity today . Reviewed recess expectations. This was a verbal warning for [redacted] Parents will be contacted if this behavior occurs again. |
| 05/30/2024 | Koosa, Darlene - **Inappropriate comment** - During a field day rotation, [redacted] grabbed his private area and said "This is what you want." out loud. Female classmates were very upset when they heard him say this. The teacher reported the incident to me. I spoke to [redacted] He said he did not know what the words meant but he heard someone else say them at the dance in February. We discussed how those comments made other people feel that they are inappropriate for school. |
| 05/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] made a 'low risk' suicidal comment. The Columbia Risk Assessment was completed. I did not tell mom over the phone that [redacted] made a suicidal ideation comment.<br>I requested she park her car and come into the building at dismissal so that we could meet with [redacted] together. |
| 02/12/2024 | Koosa, Darlene - **bathroom incident** - Sent parents an email informing them that there was a bathroom incident today that I need to speak with both of them about. It was reported that [redacted] exposed himself to another student, grabbing his private part and saying inappropriate words. [redacted] will use the bathroom in the nurse's office going forward. |
| 10/19/2023 | Dougherty, Lauri - **Social Worker** - School ended at 1:15pm due to Parent/Teacher conferences. [redacted] was to be a car pick up, but noone showed up. [redacted] was very upset, he was crying and repeating 'this is horrific, I'll never see him again.Called each parent but it went to voicemail for both numbers. Dad called at 1:35pm to say that he was on his way. |

District Office 24-25 Year

[redacted]

# Log Entries

[redacted] [redacted] 5 [redacted] JFK [redacted]

Edit Discipline Alert

| Date | Description |
|---|---|
| 09/30/2024 | Dougherty, Lauri - **Social Worker** - Called each parent to notify them that [redacted] made a self harm comment "I want to kill himself" when he was asked to stop playing tag. The Columbia-Suicide Severity Checklist was done. [redacted] said he does not have any plan or intent. He stated he made the comment because he was frustrated that he could not play tag.<br>He will be supervised by staff until he is picked up in the afterschool program. |
| 09/26/2024 | Dougherty, Lauri - **Social Worker** - [redacted] called each parent to let them know he put his hands on a 3rd grade student in the boys bathroom and then splashed water on him. |
| 09/25/2024 | Koosa, Darlene - **emailed home** - Sent email home to inform parents of incidents in PE and resource room |
| 09/19/2024 | Koosa, Darlene - **recess incident** - While playing tag, [redacted] ran away from [redacted] because he didn't want to play anymore. [redacted] ran after [redacted] and [redacted] said stop. [redacted] grabbed both of [redacted] hands and threw him to the ground. [redacted] called and left a message for both parents regarding the incident. Mrs. Koosa will send a follow up email to both parents. [redacted] apologized to [redacted]. |
| 09/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] called each parent to let them know he hit two girls at recess yesterday. |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a phone message for his mom letting her know that before he entered the school building he was playing with decorations at the front door (kicked the pumpkin). Then when he entered the school building he threw his: backpack;shoes and water bottle down the hallway where other students were walking.<br><br>Mom called back and spoke directly to [redacted]. |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a message regarding his behavior this morning when dad dropped him off early today. |
| 09/05/2024 | Koosa, Darlene - **bathroom** - [redacted] and other students were yelling in the bathroom. A paraeducator gave a direction to come out of the bathroom. The others left and [redacted] did not. He continued to yell. After another direction, he came out. I talked to him about using an indoor voice in the bathroom and safety - he needs to be able to hear and follow directions from an adult. Emailed Mom and Dad. |
| 05/30/2024 | Koosa, Darlene - **inappropriate comment** - During a field day rotation, [redacted] grabbed his private area and said "This is what you want." out loud. Female classmates were very upset when they heard him say this. The teacher reported the incident to me. I spoke to [redacted]. He said he did not know what the words meant but he heard someone else say them at the dance in February. We discussed how those comments made other people feel that they are inappropriate for school. |
| 05/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] made a 'low risk' suicidal comment. The Columbia Risk Assessment was completed. I did not tell mom over the phone that [redacted] made a suicidal ideation comment.<br>I requested she park her car and come into the building at dismissal so that we could meet with [redacted] together. |
| 02/12/2024 | Koosa, Darlene - **bathroom incident** - Sent parents an email informing them that there was a bathroom incident today that I need to speak with both of them about. It was reported that [redacted] exposed himself to another student, grabbing his private part and saying inappropriate words. [redacted] will use the bathroom in the nurse's office going forward. |
| 10/19/2023 | Dougherty, Lauri - **Social Worker** - School ended at 1:15pm due to Parent/Teacher conferences. [redacted] was to be a car pick up, but noone showed up. [redacted] was very upset, he was crying and repeating 'this is horrific, I'll never see him again.Called each parent but it went to voicemail for both numbers. Dad called at 1:35pm to say that he was on his way. |
| 04/17/2023 | Fuller, Christina - - Issued a code of conduct. [redacted] called a classmate boogers repeatedly. He also told a different classmate he wanted to kiss him. Classmates felt very uncomfortable. |
| 04/04/2023 | Fuller, Christina - - [redacted] was issued a code of conduct for slapping a classmate at recess because he didn't want to be "it" for tag. |

| | |
|---|---|
| 03/14/2023 | Fuller, Christina - - Email received. Parents will not fill out bullying paperwork. Conducted restorative circle with [redacted] and other student. Safety plan is no longer active. |
| 03/09/2023 | Fuller, Christina - - Offered bullying paperwork regarding incident [redacted] was involved in. Held google meet with both parents. |
| 02/15/2023 | Fuller, Christina - - [redacted] says inappropriate words at times. Two classmates heard him say, "I'm going to kill some people." this morning. He did not mean it, he was trying to make his friends laugh. Contacted both parents. |
| 06/08/2022 | Fuller, Christina - - [redacted] spit on a classmate because he did not like that the classmate asked him about his math game. Called home and talked to [redacted] about how he should have handled the situation. |
| 06/08/2022 | Fuller, Christina - - Spoke with [redacted] about keeping his hands to himself. He received a reflection form from Mrs. Giambra. We talked about it and called home. |
| 05/26/2022 | Dougherty, Lauri - **Social Worker** - Spoke with both parents about yesterday's behaviors because the 'Reflection Sheet was not signed by either parent. His behaviors were: speaking loudly during silent reading even after being redirected; pushed another student at recess because he did not want to play with the student anymore. |
| 01/13/2022 | Fuller, Christina - - Contacted parents regarding [redacted] saying a curse word that his teacher heard loud and clear. |
| 01/26/2021 | Fuller, Christina - - Contacted parents regarding [redacted] using inappropriate language during snack time. Paraeducator in the room was sitting next to him and heard him. He was not talking to any classmates at the time. |
| 03/24/2020 | Philpott, Cass - **Chromebook Request** - Mr. [redacted] called requesting a second chromebook for use at his house. I returned his call and left a message [redacted] the district issues one chromebook per student. |
| 08/30/2017 | George, Richard - **came in late 12:41 #1** - grandmother brought him in late stated bus wasn't there |
| 04/05/2017 | Groumousas, Christina - - [redacted] hit a classmate, the para and his teacher today because he had a melt down when the teacher asked him to sit on the rug. I called both parents to let them know we will do a pre-referral for a behaviorist so we can get familiar with coping strategies for [redacted] |

**John F Kennedy Elementary School** **24-25 Year**

[redacted]

# Log Entries

[redacted] 5 [redacted] JFK [redacted]

Edit Discipline Alert

| Date | Description |
|---|---|
| 04/03/2025 | JFK Team - - Dear Ms.[redacted]and Mr. [redacted]<br><br>We wanted to inform you that [redacted] has refused staff redirection which has led to him not following directions and being unsafe. At recess, he was unsafe with throwing woodchips, swinging sticks, and he attempted to climb a tree. During learning, he was holding scissors by the sharp end and banging them on the table under his hand repeatedly while refusing to complete a task.<br><br>We hope to work together to best support [redacted]<br><br>If you have any additional questions, please provide us times to give you a call.<br><br>-JFK Team |
| 09/30/2024 | Dougherty, Lauri - **Social Worker** - Called each parent to notify them that [redacted] made a self harm comment "I want to kill himself' when he was asked to stop playing tag. The Columbia-Suicide Severity Checklist was done. [redacted] said he does not have any plan or intent. He stated he made the comment because he was frustrated that he could not play tag.<br>He will be supervised by staff until he is picked up in the afterschool program. |
| 09/26/2024 | Dougherty, Lauri - **Social Worker** - [redacted]y called each parent to let them know he put his hands on a 3rd grade student in the boys bathroom and then splashed water on him. |
| 09/25/2024 | Koosa, Darlene - **emailed home** - Sent email home to inform parents of incidents in PE and resource room |
| 09/19/2024 | Koosa, Darlene - **recess incident** - While playing tag, [redacted] ran away from [redacted] because he didn't want to play anymore. [redacted] ran after [redacted] and [redacted] said stop. [redacted] grabbed both of [redacted]s hands and threw him to the ground. [redacted] called and left a message for both parents regarding the incident. Mrs. Koosa will send a follow up email to both parents. [redacted] apologized to [redacted] |
| 09/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] called each parent to let them know he hit two girls at recess yesterday. |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a phone message for his mom letting her know that before he entered the school building he was playing with decorations at the front door (kicked the pumpkin). Then when he entered the school building he threw his: backpack;shoes and water bottle down the hallway where other students were walking.<br><br>Mom called back and spoke directly to [redacted] |
| 09/16/2024 | Dougherty, Lauri - **Social Worker** - [redacted] left a message regarding his behavior this morning when dad dropped him off early today. |
| 09/05/2024 | Koosa, Darlene - **bathroom** - [redacted] and other students were yelling in the bathroom. A paraeducator gave a direction to come out of the bathroom. The others left and [redacted] did not. He continued to yell. After another direction, he came out. I talked to him about using an indoor voice in the bathroom and safety - he needs to be able to hear and follow directions from an adult. Emailed Mom and Dad. |
| 09/04/2024 | Dougherty, Lauri - **Social Worker** - Discussed with [redacted] throwing wood chips yesterday and his use of profanity today . Reviewed recess expectations. This was a verbal warning for [redacted] Parents will be contacted if this behavior occurs again. |
| 05/30/2024 | Koosa, Darlene - **inappropriate comment** - During a field day rotation, [redacted] grabbed his private area and said "This is what you want." out loud. Female classmates were very upset when they heard him say this. The teacher reported the incident to me. I spoke to [redacted] He said he did not know what the words meant but he |

| | |
|---|---|
| | heard someone else say them at the dance in February. We discussed how those comments made other people feel that they are inappropriate for school. |
| 05/17/2024 | Dougherty, Lauri - **Social Worker** - [redacted] made a 'low risk' suicidal comment. The Columbia Risk Assessment was completed. I did not tell mom over the phone that [redacted] made a suicidal ideation comment. I requested she park her car and come into the building at dismissal so that we could meet with [redacted] together. |
| 03/08/2024 | Rizzo, Amy - - [redacted] threw a wooden block at a classmate today. He was frustrated that it was time to clean up. Mrs. Rizzo spoke with [redacted] about classroom safety. He apologized to the student and expressed care for her well being. Mrs. Rizzo informed mom of the incident at dismissal. |
| 02/29/2024 | Koosa, Darlene - **recess incident** - At recess [redacted] was playing tag. He got angry that others were faster than him. He grabbed a student by the jacket and threw them to the ground. He then put his knee on the other student's back. Teachers intervened. [redacted] apologized to the other student and Mom was informed of the incident. He will serve an indoor recess with the special education teacher tomorrow. |
| 02/12/2024 | Koosa, Darlene - **bathroom incident** - Sent parents an email informing them that there was a bathroom incident today that I need to speak with both of them about. It was reported that [redacted] exposed himself to another student, grabbing his private part and saying inappropriate words. [redacted] will use the bathroom in the nurse's office going forward. |
| 10/19/2023 | Dougherty, Lauri - **Social Worker** - School ended at 1:15pm due to Parent/Teacher conferences. [redacted] was to be a car pick up, but noone showed up. [redacted] was very upset, he was crying and repeating 'this is horrific, I'll never see him again.Called each parent but it went to voicemail for both numbers. Dad called at 1:35pm to say that he was on his way. |
| 04/17/2023 | Fuller, Christina - - Issued a code of conduct. [redacted] called a classmate boogers repeatedly. He also told a different classmate he wanted to kiss him. Classmates felt very uncomfortable. |
| 04/04/2023 | Fuller, Christina - - [redacted] was issued a code of conduct for slapping a classmate at recess because he didn't want to be "it" for tag. |
| 03/14/2023 | Fuller, Christina - - Email received. Parents will not fill out bullying paperwork. Conducted restorative circle with [redacted] and other student. Safety plan is no longer active. |
| 03/09/2023 | Fuller, Christina - - Offered bullying paperwork regarding incident [redacted] was involved in. Held google meet with both parents. |
| 02/15/2023 | Fuller, Christina - - [redacted] says inappropriate words at times. Two classmates heard him say, "I'm going to kill some people." this morning. He did not mean it, he was trying to make his friends laugh. Contacted both parents. |
| 06/08/2022 | Fuller, Christina - - [redacted] spit on a classmate because he did not like that the classmate asked him about his math game. Called home and talked to [redacted] about how he should have handled the situation. |
| 06/08/2022 | Fuller, Christina - - Spoke with [redacted] about keeping his hands to himself. He received a reflection form from Mrs. Giambra. We talked about it and called home. |
| 05/26/2022 | Dougherty, Lauri - **Social Worker** - Spoke with both parents about yesterday's behaviors because the 'Reflection Sheet was not signed by either parent. His behaviors were: speaking loudly during silent reading even after being redirected; pushed another student at recess because he did not want to play with the student anymore. |
| 05/26/2022 | Davis, Jennifer - - Spoke to mom about a reflection sheet he received today for pushing a student because he wanted to turn the light off. She said she would speak to dad about it today. |
| 04/07/2022 | Davis, Jennifer - - Provided parent training on autism with Mr. [redacted] |
| 01/13/2022 | Fuller, Christina - - Contacted parents regarding [redacted] saying a curse word that his teacher heard loud and clear. |
| 01/26/2021 | Fuller, Christina - - Contacted parents regarding [redacted] using inappropriate language during snack time. Paraeducator in the room was sitting next to him and heard him. He was not talking to any classmates at the time. |
| 03/24/2020 | Philpott, Cass - **Chromebook Request** - Mr. [redacted] called requesting a second chromebook for use at his house. I returned his call and left a message stating that the district issues one chromebook per student. |
| 02/24/2020 | Apicella, Joseph - - Meeting with Father. He expressed concerns about communication between him and classroom teachers. After meeting met with staff to ensure that they communicated with both mom and dad. |
| 08/30/2017 | George, Richard - **came in late 12:41 #1** - grandmother brought him in late stated bus wasn't there |
| 04/05/2017 | Groumousas, Christina - - [redacted] hit a classmate, the para and his teacher today because he had a melt down when the teacher asked him to sit on the rug. I called both parents to let them know we will do a pre-referral for a behaviorist so we can get familiar with coping strategies for [redacted] |

MILFORD PUBLIC SCHOOLS
70 West River Street
Milford, CT 06460

# DATA COLLECTION- INCIDENTS

| | | | |
|---|---|---|---|
| **Student** | | **Grade** | |
| **Special Education Teacher** | Tara Truscello | **School** | JFK |
| **School Social Worker** | Lauri Dougherty | **School Psychologist** | Jennifer Davis |
| **District BCBA** | Courtney Carrano | | |

| Date | Time | Location | Incident | Outcome |
|---|---|---|---|---|
| 9/16/24 | 8:20 | Hallway | He threw his backpack at students passing by, threw his water bottle down the hall, took off, and threw his shoe. | He was removed from class. The student called home and had to tell his parents what had happened. |
| 9/16/24 | 1:45 | Recess | The student grabbed the back of a classmate's head and pushed it down. Then went and put his hands on a classmate's legs who was coming down the slide. | The student sat out of recess and the following day had to have an alternate recess. The student called home again to explain what had happened. |
| 9/17/24 | 9:00 | Music | Rubbing the back of another student even after being asked to stop and keep his hands to himself. | No consequence- just redirected by the adult |
| 9/19/24 | 1:50 | Recess | Students were playing tag. This student reported that he was upset that the other student didn't want to play tag. He went over and grabbed both of his arms and shoved him down to the ground. | Student called parents and explained what happened, an email went home from Ms. Koosa to alert the parents to listen to their messages. School team will meet to discuss any further outcome. |
| 9/25/24 | 9:00 | PE | Student was unsafe with scooter. Pushed a classmate in the back with the scooter. Did not listen to redirection from para. Continued to be unsafe and bump into other students. Ran away from para and substitute PE teacher as they were trying to support. | Conversation with Mrs. Koosa and para. Discussed following directions from adults and not running away. Talked about safety with PE equipment. Focus on trying to turn the day around. |
| 9/25/24 | 10:50 | Math/RR | The student was making faces and mimicking the teacher | Taken to the office to complete work independently. |
| 11/7/24 | 1:55 | Recess | After being told not to dig a hole, where other students could fall in and get hurt, he dumped the dirt on the teacher's shoes. | Took a time out on the bench, and completed a reflection sheet in the resource room upon entering the building. |

| | | | | |
|---|---|---|---|---|
| 11/22/24 | 1:50 | Indoor recess | Ms. Stuart reported that student was over by the AC putting legos up after indoor recess, he put his hands on and shoved a peer out of the way. | Had to complete a reflection sheet about his behavior. |
| 12/2/24 | 2:00 | Recess | After being reminded several times by several teachers to not throw woodchips, he threw 2 handfuls of woodchips and one got in the eye of a classmate who then had to go to the nurse. | Ms. Stuart asked [redacted] to sit on the bench and reflect on the consequences of not listening to the adults. He also completed a reflection sheet upon entering the building. |
| 12/03/24 | 2PM | Recess | Student was throwing sand in the middle of a kickball game (he was not playing in the game but on the field). He took off his coat after being told not to ( 38 degrees and he was wearing a short sleeved shirt). He tried climbing the back fence which he has done in the past and been warned about it being very unsafe behavior. | Student was redirected by Ms. Quinn to put on his coat. He was sent to the bench by Mrs. Stuart for being disrespectful to Ms. Quinn. Student was brought inside to do a 'Behavior Reflection' sheet for the unsafe behavior of climbing the fence and having thrown the sand. |
| 12/10/24 | 2PM | Recess | Ms. Stuart reported Student was standing on a swing and redirected him twice from this unsafe behavior. Student got down and then immediately got back on smiling at Ms.Stuart. He was sent to the bench to sit and reflect. Student left the bench and began running away from Ms. Stuart into the field. | Student filled out a 'Behavior Reflection' form. |
| | | | | |
| 12/12/24 | 8:45 | Classroom in line going to Media | Student acted like he was going to hit a student with his Chromebook. Student was very nervous about what happened. | Ms. Stuart took his Chromebook away for a consequence. |
| 12/12/24 | 2:00 | Recess | Student acted like he was going to push the same student from this morning's incident off of the rock wall on the playscape. | Ms. Stuart had Student take a break on the bench. She spoke to him about repeatedly showing mean behavior towards the same person, and how that is unacceptable always, but also not acceptable when targeting the same person. Ms Stuart is making arrangements in the classroom to keep these students apart, the other student is feeling very uncomfortable. |
| | | | | |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Subject** Pending Action Notification - Milford School District
**To:** [null <[redacted]verizon.net>]
**From** noreply@ctseds.com <noreply@ctseds.com>
**Date:** Mon, Mar 31, 2025 at 2:42 PM

Dear Robert [redacted]

You have documents to review for a Student in Milford School District

Please click the following link to log in to Milford School District's portal: CT-SEDS Connect

Thank you,

Milford School District

CTSEDS

Please do not respond to this email as it is from an automated email account that is not monitored. If you have questions or concerns, please reach out to Milford School District.

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 03/31/2025

**Parent/Guardian/Student:** Karen [redacted] Rober[redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted], Rober[redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] [redacted]

(Student's name) (DOB)

**Date:** 04/10/2025 **Time:** 2 :00 PM **Location:** J. F. Kennedy School

**The purpose of this meeting is to:**

Review or Revise the IEP

The team will develop, review, or revise transition goals and objectives (transition planning)

Agency representative(s) not appropriate to be invited to attend to assist in transition planning

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Student | [redacted] |
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: BCBA | Jocelyn Willsey |
| Other: Director of Pupil Personnel Service | Jennifer Stewart |
| Other: Instructional Supervisor Special Education | Nadine Macklin |
| Special Education Teacher | Kate Falzarano |
| Other: Instructional Supervisor Special Education Middle School | Sara Collette |
| Special Education Teacher | Sarah Stanley |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

**Procedural Safeguards**

☑ A copy of the Procedural Safeguards in Special Education was provided to you previously this school year. If you would like another copy of the Procedural Safeguards please contact

Jennifer Stewart 203-783-3410

**Parent Notice**

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

**Subject** Pending Action Notification - Milford School District
**To:** [null <[redacted]verizon.net>]
**From** noreply@ctseds.com <noreply@ctseds.com>
**Date:** Mon, Mar 31, 2025 at 2:51 PM

Dear Robert [redacted]

You have documents to review for a Student in Milford School District

Please click the following link to log in to Milford School District's portal: CT-SEDS Connect

Thank you,

Milford School District

CTSEDS

Please do not respond to this email as it is from an automated email account that is not monitored. If you have questions or concerns, please reach out to Milford School District.

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 03/31/2025

**Parent/Guardian/Student:** Karen [redacted] Robert [redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted], Rober[redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] [redacted]

(Student's name) (DOB)

**Date:** 04/10/2025 **Time:** 2 :00 PM **Location:** J. F. Kennedy School

**The purpose of this meeting is to:**

Review or Revise the IEP

The team will develop, review, or revise transition goals and objectives (transition planning)

Agency representative(s) not appropriate to be invited to attend to assist in transition planning

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: BCBA | Jocelyn Willsey |
| Other: Director of Pupil Personnel Service | Jennifer Stewart |
| Other: Instructional Supervisor Special Education | Sara Collette |
| Special Education Teacher | Kate Falzarano |
| Special Education Teacher | Sarah Stanley (Harborside Representative) |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

**Procedural Safeguards**

☑ A copy of the Procedural Safeguards in Special Education was provided to you previously this school year. If you would like another copy of the Procedural Safeguards please contact

Jennifer Stewart 203-783-3410

**Parent Notice**

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 04/28/2025

**Parent/Guardian/Student:** Karen [redacted] Robert [redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted] Robert [redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] (Student's name) [redacted] (DOB)

**Date:** 05/06/2025 **Time:** 1 :30 PM **Location:** J. F. Kennedy School

**The purpose of this meeting is to:**

Review or Revise the IEP

The team will develop, review, or revise transition goals and objectives (transition planning)

Agency representative(s) not appropriate to be invited to attend to assist in transition planning

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: BCBA | Jocelyn Willsey |
| Other: Instructional Supervisor Special Education Elementary | Nadine Macklin |
| Other: Instructional Supervisor Special Education | Sara Collette |
| Special Education Teacher | Kate Falzarano |
| Special Education Teacher | Sarah Stanley (Daily Living Middle School Program Representative) |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

**Procedural Safeguards**

☑ A copy of the Procedural Safeguards in Special Education was provided to you previously this school year. If you would like another copy of the Procedural Safeguards please contact

Jennifer Stewart 203-783-3410

**Parent Notice**

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

# Milford School District
# Notice of Planning and Placement Team Meeting

**Scheduling Date:** 05/08/2025

**Parent/Guardian/Student:** Karen [redacted] Robe[redacted]

[redacted]

**Mailing Address:** [redacted]

Dear Karen [redacted] Robert [redacted]

Please be advised that a Planning and Placement Team (PPT) meeting will be convened on behalf of:

[redacted] [redacted]

(Student's name) (DOB)

**Date:** 05/21/2025 **Time:** 2 :00 PM **Location:** J. F. Kennedy School

**The purpose of this meeting is to:**

Review or Revise the IEP

The team will develop, review, or revise transition goals and objectives (transition planning)

Agency representative(s) not appropriate to be invited to attend to assist in transition planning

**The following individuals have been invited to attend:**

| Title | Name |
|---|---|
| Mother | Karen [redacted] |
| Father | Robert [redacted] |
| Administrator | Amy Rizzo |
| Student's General Education Teacher | Donna Stuart |
| Special Education Teacher | Tara Truscello |
| School Psychologist | Jennifer Davis |
| Speech and Language Pathologist | Karen Kristan |
| Social Worker | Lauri Dougherty |
| Other: West Shore Representative | Carrie Minar |
| Other: Instructional Supervisor Special Education Elementary | Nadine Macklin |
| Other: Instructional Supervisor Special Education | Sara Collette |
| Special Education Teacher | Kate Falzarano |
| Special Education Teacher | Sarah Stanley (Daily Living Middle School Program Representative) |
| Special Education Teacher | Maureen Raccio (Resource Teacher at WSMS) |

A parent/guardian has the right to be present at and participate in all portions of the meeting at which an educational program is being developed, reviewed, or revised and shall be given at least five days' prior notice of any planning and placement team meeting. Parent participation in this process is important. Please make every effort to attend this meeting. You may bring other individuals/advisors to the meeting, including those who have knowledge or special expertise regarding your child.

A parent/guardian also has the right to have (1) the paraeducator assigned to their child, if any, (2) the child's birth-to-three service coordinator, if any, and (3) a language interpreter, including a registered interpreter for persons who are deaf, hard of hearing, or deafblind if there is an apparent need or upon request, be present at the meeting. A parent/guardian is asked to provide reasonable notice to the District if they wish to have any of these individuals attend. The parent/guardian also has the right to have each recommendation made in a child's birth-to-three individualized transition plan, if any, addressed by the planning and placement team during a meeting at which an educational program for the child is developed.

If you have any questions or wish to reschedule the meeting please contact me at:

203-783-3568 ttruscello@milforded.org

Sincerely,

Tara Truscello, Special Education Teacher

(Name and Title)

### Procedural Safeguards

☑ A copy of the Procedural Safeguards in Special Education was provided to you previously this school year. If you would like another copy of the Procedural Safeguards please contact

Jennifer Stewart 203-783-3410

### Parent Notice

☑ A copy of this notice has been sent to the parent(s). (This is required if rights under IDEA have been transferred to the student at age 18. When rights transfer, meeting notices must be sent to the student with a copy to the parents.)

Dear Sir or Madam,

I am submitting a State Complaint against Milford Public Schools for violations of the Individuals with Disabilities Education Act (IDEA), specifically:

1. Failure to process jointly signed Independent Educational Evaluation (IEE) request in accordance with IDEA.
2. Failure to properly involve both parents in the decision-making process.

**Background & Violations of IDEA:**

1. **Failure to Process an IEE Request in Compliance with IDEA:**

On January 28, 2025, a formal request for an Independent Educational Evaluation (IEE) at public expense was submitted by both parents, due to concerns about the adequacy of the district's evaluations. This request was submitted to Jennifer Stewart, the Director of Pupil Personnel at Milford Public Schools **(See Exhibit A)**

Under 34 C.F.R. § 300.502(b) (2), when a parent requests an IEE because they disagree with the district's evaluation, the district must either:

- Provide the IEE at public expense, or
- File for due process to defend its evaluation.

As of today, Milford Public Schools has done neither, which constitutes a violation of IDEA.

**Failure to Take Required Action and Ensure Meaningful Parental Involvement**

The district responded to our IEE request within 10 days but did not take the required action as outlined by IDEA. The district was obligated to either provide the IEE at public expense or file for due process to defend its evaluation. By failing to take either step, the district violated IDEA's regulations. Additionally, the district's failure to involve both parents in the process violates IDEA's requirement for meaningful parental participation.

On February 7, 2025, Milford Public Schools, through Jennifer Stewart, Director of Pupil Personnel, responded to our joint IEE request but addressed only Ms. [redacted] asking her to confirm if she was requesting the evaluation. This email deliberately overlooked the fact that the request had been signed by both parents and failed to recognize my equal right to participate in the decision-making process. By excluding me from the conversation, the district violated IDEA's requirement for meaningful parental involvement in educational decisions. **(See Exhibit A)**

**2. Failure to Properly Involve Both Parents in the Decision-Making Process:**

On February 7, 2025, Milford Public Schools, through Jennifer Stewart, Director of Pupil

Personnel, falsely claimed that, according to their records, Ms. [redacted] has the authority to make sole educational decisions. **(See Exhibit A)** This assertion is factually incorrect.

For the past eight years, both parents have consistently been involved in decisions regarding [redacted] education, in accordance with IDEA's guarantee of equal parental participation. The district's recent assertion that Ms. [redacted] has the authority to make sole educational decisions marks a sudden and unjustified departure from this established practice and violates IDEA's provisions.

**Requested Remedies:**

1. **Processing of the IEE Request:**
   I respectfully request that Milford Public Schools provide a list of qualified evaluators and fully fund the Independent Educational Evaluation (IEE) at public expense. If the request is denied, I ask that the district file for due process within the legally required timeframe.
2. **Affirmation of Parental Rights:**
   I respectfully request that Milford Public Schools acknowledge my equal right to participate in all educational decisions for my child, [redacted] and that all communications regarding [redacted] education be addressed to both parents.
3. **Accountability for Noncompliance:**
   I respectfully request that Milford Public Schools be held accountable for failing to process the jointly signed IEE request in accordance with IDEA's requirements and for failing to properly involve both parents in the decision-making process.

**Conclusion:**

I respectfully request that this State Complaint be reviewed in accordance with IDEA's State Complaint procedures. Additionally, I request that Milford Public Schools be held accountable for noncompliance with IDEA by failing to process the IEE request in accordance with IDEA's requirements and for failing to recognize my parental rights to participate equally in all educational decisions for my child. I further request that appropriate remedies be provided to ensure compliance with IDEA.

Thank you for your attention to this matter. I look forward to your prompt resolution.

Sincerely,

Robert [redacted]

Exhibit A

Re: [EXT MAIL] Request for Independent Educational Evaluation (IEE) at Public Expense

From: Jennifer Stewart (jstewart@milforded.org)
To: [redacted]verizon.net; [redacted]yahoo.com
Cc: acutaia@milforded.org; arizzo@milforded.org
Date: Friday, February 7, 2025 at 05:29 PM EST

Good Evening, Ms. [redacted]

I wanted to follow up regarding the request for an Independent Educational Evaluation (IEE). According to our records, you have the authority to make sole educational decisions. Could you please confirm if you're requesting this evaluation?

Once I hear from you, I'll provide a list of potential evaluators to move forward.

Thank you, and I look forward to your response.

Best regards,
Jen

> On Tue, Jan 28, 2025 at 11:35 PM Robert <[redacted]verizon.net> wrote:
>
> > Ms. Stewart,
> >
> > We are writing to formally request an Independent Educational Evaluation (IEE) at public expense for our son, [redacted] This request is based on significant concerns regarding the adequacy of past evaluations and their ongoing impact on [redacted] educational progress. We believe that the initial and past evaluations have not fully addressed [redacted] needs, which have contributed to persistent issues, including inadequate support and emotional well-being concerns.
> >
> > Specifically, we believe that the district's evaluation did not fully and accurately assess [redacted] needs, leading to the decision to deny our request for outplacement. [redacted] has experienced significant emotional and educational challenges, and we feel that an independent evaluation by an unbiased, qualified professional is necessary to provide an accurate assessment of his needs and the appropriate educational placement.
> >
> > We would recommend a **psychoeducational evaluation** to provide a comprehensive assessment of [redacted] cognitive, academic, emotional, and behavioral needs. This will help ensure that the district fully understands [redacted] unique challenges and can make an informed decision about the support and services he requires.

Exhibit A

As per the Individuals with Disabilities Education Act (IDEA), we are entitled to request an IEE at public expense. We will select a qualified evaluator and provide the district with the details once we have made our choice. We request that the district covers the full cost of this independent evaluation.

Please respond to this request within a reasonable time frame, as specified by IDEA regulations. We kindly request confirmation of receipt of this request and the necessary steps to proceed.

Thank you for your attention to this matter.

Robert and Karen

--

JEN STEWART
Director of Pupil Personnel
Milford Public Schools
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

# March 31st email

From: Karen [redacted] ([redacted]yahoo.com)
To: jstewart@milforded.org
Cc: [redacted]verizon.net
Date: Wednesday, April 16, 2025 at 02:12 PM EDT

Ms. Stewart,

There are a few things I need to address to you.

First, I am clarifying things in regards to custody I have with Mr [redacted] I have physical custody of [redacted] meaning that he resides with me full time at my residence in Milford. In regards to legal custody, Rob and I have shared legal custody meaning we are both involved in regards to education, health and religion pertaining to [redacted] Neither party has 'sole' decision making. When an issue occurs at school or a request is being made by either party, we discuss things prior to emails sent.

Going forward, I am requesting that no emails are sent regarding our custody memorandum as this can cause conflict. [redacted] father and I are trying to co-parent effectively for the next 7 years.

Thank you,
Karen

Yahoo Mail: Search, Organize, Conquer

# Re: State Complaint against Milford Public Schools

From: Robert ([redacted]verizon.net)

To: Natalie.Jones@ct.gov; SDE.SE.Complaints@ct.gov

Cc: Natalie.Jones@ct.gov; Bryan.Klimkiewicz@ct.gov; mkatherine.matz@ct.gov; Charlene.russell-tucker@ct.gov

Date: Thursday, May 8, 2025 at 06:37 AM EDT

Dear Ms. Jones,
I expected the information regarding your previous commitments—especially the most recent promise to provide it by May 7. Despite this, I am only now being notified—**after the deadline has passed**—of yet another delay. Given the repeated extensions—including prior assurances that I would receive the report by **April 7, April 11, April 16, April 23, May 2, and most recently May 7**—I expect a **complete and transparent response** with all necessary details included by May 9.
Additionally, I require clarification regarding the **inconsistency in your prior assessment** of my complaint. You previously stated:
*"After reviewing the complaint you most recently filed, I have determined that the issues are the same as the complaint that you filed on November of 2024. Therefore, those issues were addressed in the complaint report that our office issued on January 10, 2025. Since this office already investigated these same issues, we will not be conducting another investigation and your complaint will be closed. I carefully compared the previous and current complaint you filed, as well as the issues that you raised."*
However, that **assessment led to the incorrect conclusion** that the complaints were identical. **Only after I challenged this did you reverse your position**, claiming my **February complaint was under investigation**—yet failing to provide a clear timeline or justification for why updates had been withheld for months.
Furthermore, you previously stated that you had **"carefully compared"** both complaints before making this determination. **If that were true, how could you have reached the incorrect conclusion that the complaints were identical?**
Given this contradiction, I need further clarity on:

1. **The exact date the investigation into my February complaint was officially initiated.**
2. **The reason updates were withheld for months, despite the time-sensitive nature of the concerns raised.**

Additionally, on **April 23**, you stated that a report regarding these issues would be sent by **May 2—yet it was not**. However, rather than proactively informing me of any delay, you **only acknowledged it after I reached out to you**. Given this inconsistency, I need clarity on **why the report was delayed** and **confirmation that this will not affect the accuracy, completeness, or timely delivery of the information promised by May 9**.
**I look forward to receiving a thorough and complete response, including the resolution of my complaint, by May 9.**
Sincerely,
Robert [redacted]

> On Wed, May 7, 2025 at 10:58 PM, Jones, Natalie <Natalie.Jones@ct.gov> wrote:
>
> > Hi Robert:
> >
> > The review has taken longer than expected, given that I had to do even more additional research.
> >
> > I will provide the information requested by 5/9.
> >
> > Best,
> > Natalie

**Natalie Jones**
Education Consultant
CONNECTICUT Education
Phone: 860-713-6933
Email: natalie.jones@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** SDE, SE.Complaints <SDE.SE.Complaints@ct.gov>
**Sent:** Monday, May 5, 2025 5:36 PM
**To:** [redacted]verizon.net <[redacted]verizon.net>
**Cc:** Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Fw: State Complaint against Milford Public Schools

Dear Robert:

I have received your email and you will receive the requested information on 5/7.

Best,
Natalie

---

**From:** SDE, DueProcess <DueProcess.SDE@ct.gov>
**Sent:** Monday, May 5, 2025 2:57 PM
**To:** SDE, SE.Complaints <SDE.SE.Complaints@ct.gov>
**Subject:** Fw: State Complaint against Milford Public Schools

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, May 5, 2025 6:27 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** SDE, DueProcess <DueProcess.SDE@ct.gov>; Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>
**Subject:** RE: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or

open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Jones,
Despite five separate assurances that I would receive updates or the promised report, I have yet to receive either. Specifically, you committed to following up on **April 7, April 11, April 16, April 23**, and most recently, you assured me that I would receive the report by **Friday, May 2**. None of these commitments have been fulfilled, and my previous questions remain unanswered.
These continued delays have **significantly hindered my ability to move forward** with necessary educational planning. Given these ongoing issues, I expect **confirmation** that I will receive **both the report and written responses to my outstanding questions, which are outlined in my response on April 24, no later than May 7**. Please acknowledge receipt of this request and confirm that these materials will be delivered by this deadline.
Thank you for your attention to this matter.
Sincerely,
Robert [redacted]

On Thu, Apr 24, 2025 at 4:36 PM, Robert <[redacted]verizon.net> wrote:

> Dear Ms. Jones,
>
> Thank you for your response and for confirming that my February complaint has been in the process of investigation. However, I am seeking clarification regarding the timeline of this investigation.
>
> While I appreciate your update, I have not received any prior confirmation or updates to indicate that the investigation was ongoing. This leaves me uncertain as to when the investigation actually began and why the issues raised in February were not addressed sooner, especially considering their time-sensitive nature.
>
> Could you please provide clarity on when the investigation into my February complaint was officially initiated and why there appears to have been a delay in addressing these matters? This information will help me better understand the process and ensure that all concerns are appropriately resolved.
>
> Thank you for your attention to this matter, and I look forward to your response.
>
> Kind regards,
>
> Robert [redacted]
>
> On Thu, Apr 24, 2025 at 4:27 PM, Jones, Natalie <Natalie.Jones@ct.gov> wrote:
>
>> Dear Mr. [redacted]
>>
>> I apologize for not being clearer before. This complaint has been in the process of investigation.
>>
>> Best,
>> Natalie
>>
>> **Natalie Jones**
>> Education Consultant
>> CONNECTICUT Education
>> Phone: 860-713-6933
>> Email: natalie.jones@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Wednesday, April 23, 2025 7:38 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** SDE, DueProcess <DueProcess.SDE@ct.gov>; Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>
**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Jones,
Thank you for your response and for clarifying the current status of the investigation into the Independent Educational Evaluation (IEE) request and parental involvement.
However, I remain concerned about the fact that these issues were not investigated sooner. The matters I raised in my February 2025 complaint are critical and directly impact my child's educational needs. I would appreciate clarification as to why these concerns were not addressed promptly and why an investigation wasn't initiated at the time the complaint was first filed.
As the issues surrounding my child's education are time-sensitive, I would like to better understand the delay in the investigation process. Timely resolution is essential to ensure that appropriate actions are taken to address the problems at hand.
I look forward to your response and an explanation regarding this matter.
Thank you for your attention to this issue.
Best regards,

Robert [redacted]

On Wednesday, April 23, 2025 at 07:25:59 AM EDT, Jones, Natalie <natalie.jones@ct.gov> wrote:

Dear Mr. [redacted]

I sincerely apologize for the confusion regarding your questions about your complaint. I now understand fully—thank you so much for your detailed clarification. We are investigating the issues regarding the IEE and the parental participation.

A report regarding these issues will be sent to you and the district by next Friday, May 2,

2025.

Again, I apologize for the mix up on my end and thank you for your patience and understanding. I also wanted to apologize for the delay in providing you with an update. Thank you for your diligent and thoughtful communication.

Take care,
Natalie

**Natalie Jones**
Education Consultant
CONNECTICUT Education
Phone: 860-713-6933
Email: natalie.jones@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Wednesday, April 23, 2025 7:11 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** SDE, DueProcess <DueProcess.SDE@ct.gov>; Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>
**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Jones,
I want to clarify that the issues raised in my February 2025 complaint are distinct from those addressed in the November 2024 complaint and the January 10, 2025 report. Specifically, the February complaint concerns:

- The failure to process an Independent Educational Evaluation (IEE) request.
- The failure to involve both parents in educational decision-making.

These were not part of the earlier complaint and deserve independent review.
I'm also concerned about the significant delay in addressing the February complaint. I followed up multiple times over two months without a clear response, only to be informed on

April 23 that the matter would not be investigated. I respectfully request clarification on how that decision was made, and why the complaint was closed without thorough review.
I ask that the February 2025 complaint be reopened and fully investigated, and that I receive written confirmation that this process is moving forward appropriately.
I look forward to your prompt response and confirmation that the complaint is being properly processed, as timely resolution will help ensure that appropriate actions are taken to address the issues raised.
Thank you for your time and attention.
Best regards,

Robert [redacted]

On Wednesday, April 23, 2025 at 01:26:12 AM EDT, Jones, Natalie <natalie.jones@ct.gov> wrote:

Dear Mr. [redacted]

I apologize again for the delay. After reviewing the complaint you most recently filed, I have determined that the issues are the same as the complaint that you filed on November of 2024. Therefore, those issues were addressed in the complaint report that our office issued on January 10, 2025. Since this office already investigated these same issues, we will not be conducting another investigation and your complaint will be closed.

If you have new allegations that you would like to make in a complaint, you can always file a new complaint with our office.

Again, I would like to thank you for your patience while I carefully compared the previous and current complaint you filed, as well as the issues that you raised.

Take care,
Natalie

**Natalie Jones**
Education Consultant
CONNECTICUT Education
Phone: 860-713-6933
Email: natalie.jones@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal

opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Tuesday, April 22, 2025 4:18 PM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** SDE, DueProcess <DueProcess.SDE@ct.gov>
**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Ms. Jones,

I am following up on the update you assured me would be provided by Friday, April 18. As I have not received any response, I would appreciate your immediate attention to this matter.

Please provide the requested update at your earliest convenience.

Thank you.

Robert

On Thu, Apr 17, 2025 at 10:39 AM, Robert <[redacted]verizon.net> wrote:

> Hi Ms Jones,
>
> Tomorrow is a holiday and I believe your office will be closed. I would appreciate if you could please provide me the update today. .
>
> Thank you
>
> Robert.
>
> On Wed, Apr 16, 2025 at 8:50 AM, Jones, Natalie <Natalie.Jones@ct.gov> wrote:
>
>> Again, I apologize. I will let you know by this friday.
>>
>> Best,
>> Natalie
>>
>> **Natalie Jones**
>> Education Consultant
>> CONNECTICUT Education
>> Phone: 860-713-6933
>> Email: natalie.jones@ct.gov
>>
>> The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed

above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Tuesday, April 15, 2025 8:27 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** SDE, DueProcess <DueProcess.SDE@ct.gov>
**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Ms. Jones,

I am following up regarding the update you had promised on April 11. As I have not yet received it, could you please let me know when I can expect the information?

I look forward to your response.

Robert.

On Fri, Apr 11, 2025 at 9:02 AM, Jones, Natalie <Natalie.Jones@ct.gov> wrote:

> I apologize. My family has been struggling with a series of illnesses. Thank you for checking. I promise that I will provide an update at some point today.
>
> Thank you for your patience.
>
> **Natalie Jones**
> Education Consultant
> CONNECTICUT Education
> Phone: 860-713-6933
> Email: natalie.jones@ct.gov
>
> The information contained in this

transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Friday, April 11, 2025 7:58 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>; SDE, DueProcess <DueProcess.SDE@ct.gov>
**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Ms. Jones,

I am following up on my complaint and your email from Monday, April 7, in which you mentioned that you would be getting back to me that afternoon. However, as of today, April 11, I have not received any further communication.

Could you please provide an update on the status of my complaint?

Thank you,

Robert.

On Mon, Apr 7, 2025 at 7:34 AM, Jones, Natalie <Natalie.Jones@ct.gov> wrote:

> I apologize for the delay. I will be getting back to you this afternoon.
>
> Best,
> Natalie
>
> Natalie E. Jones
> Education Consultant

Connecticut State Department of Education
Bureau of Special Education
Due Process Unit
(860)-713-6933
Natalie.Jones@ct.gov

PRIVILEGED AND CONFIDENTIAL INFORMATION: The information contained in this email and any attachments are intended for the exclusive use of the addressees, and may contain confidential attorney-client communications and/or privileged information. If you are not an intended recipient, you are hereby notified that any dissemination, disclosure, distribution or copying of this communication is strictly prohibited. If you are not an intended recipient, please do not read, distribute or take any action in reliance upon this communication. If you have received this communication in error, please notify the sender immediately by return email and promptly destroy this communication, including any attachments. Please note that emails to or from the State of Connecticut domain may be subject to the Freedom of Information Act, Conn. Gen. Stats. §§ 1-200 et seq.

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Sunday, April 6, 2025 7:08:57 AM
**To:** SDE, DueProcess <DueProcess.SDE@ct.gov>
**Cc:** Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** RE: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Hi Ms. Jones,

As per Jolie's email on March 20 below, she mentioned that you would be responding. However, I have not yet heard back from you.

I would like to kindly remind you that this complaint was originally filed on February 10, which was two months ago. Could you please provide an update on its status?

Thank you

Robert [redacted]

On Thu, Mar 20, 2025 at 9:42 AM, SDE, DueProcess <DueProcess.SDE@ct.gov> wrote:

> Good morning, Robert.
>
> I have included Natalie Jones in this message who will respond. Natalie is the assigned investigator.
>
> Thank you!
>
> Jolie
>
> ---
>
> **From:** Robert <[redacted]verizon.net>
> **Sent:** Wednesday, March 19, 2025 4:24 PM
> **To:** SDE, DueProcess <DueProcess.SDE@ct.gov>

**Subject:** Re: State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Hi Jolie,

This is a follow up to my email sent on March 8th regarding the status of my complaint. I have not received a response back.
Could you please let me know if it has been reviewed and when I can expect to hear from an investigator?
Thank you for your time and assistance. I look forward to your response.

Best regards,

Robert.

On Saturday, March 8, 2025 at 10:26:30 AM EST, Robert <[redacted]verizon.net> wrote:

Hi Jolie,
I am writing to follow up on the status of my complaint. Could you please let me know if it has been reviewed and when I can expect to hear from an investigator?
Thank you for your time and assistance. I look forward to your response.
Best regards,
Robert [redacted]

On Mon, Feb 10, 2025 at 4:21 PM, SDE, DueProcess <DueProcess.SDE@ct.gov> wrote:

> Good afternoon Mr. [redacted]
>
> Our office has received your special education complaint.
>
> According to federal regulations, a complaint must allege a potential violation of either state or federal special education law and provide facts that support the claim. The violation cited in a complaint must be alleged to have occurred within one (1) year of the date that the complaint is filed.
>
> Our office will review your complaint and assign a complaint investigator, who will reach out to you via email or telephone to discuss your complaint.
> Procedural Safeguards: https://portal.ct.gov/-/media/sde/special-education/prosaf.pdf

Thank you.

Jolie

**JOLIE MEDINA**
Bureau of Special Education
Due Process Unit
CONNECTICUT Education

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, February 10, 2025 1:37 PM
**To:** SDE, DueProcess <DueProcess.SDE@ct.gov>
**Cc:** Jennifer Stewart <jstewart@milforded.org>; Anna Cutaia <acutaia@milforded.org>
**Subject:** State Complaint against Milford Public Schools

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

To whom it may concern at the Connecticut State Department of Education.

Please find attached and completed State complaint form with a copy of the complaint including exhibit.
A copy of this complaint has been sent (CC'D) to Anna Cutaia, the Superintendent of Milford Public Schools and Jennifer Stewart, the Director of Pupil Personnel.
If there is any further information you need, please don't hesitate to contact me.
Very truly yours,
Robert [redacted]

# Re: Complaint Report 25-0409 - [redacted]

From: Robert ([redacted]verizon.net)

To: Katherine.Matz@ct.gov

Cc: Bryan.Klimkiewicz@ct.gov; Natalie.Jones@ct.gov

Date: Thursday, May 22, 2025 at 09:00 AM EDT

---

Dear Ms. Matz,

I understand that you have stated the investigation is concluded. However, the report itself explicitly states that I should reach out with any questions. Given that, I find it concerning that my request for written clarification has been denied. While you are willing to discuss this matter over the phone, you are unwilling to provide the same responses via email. This raises concerns about transparency and procedural integrity, as it is unclear why written documentation is being withheld when verbal communication was offered.
Respectfully,

Robert.

> On Thu, May 22, 2025 at 8:05 AM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:
>
> > Dear Mr. [redacted]
> >
> > My written response to your questions is that our investigation has concluded. If you disagree with the findings, you can file for due process as previously mentioned. I will not continue to exchange emails on this topic.
> >
> > **KATHERINE MATZ**
> > Special Education Bureau Chief
> > CONNECTICUT Education
> > Phone: 860-713-6919
> > Katherine.Matz@ct.gov
> >
> > The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).
> >
> > **From:** Robert <[redacted]verizon.net>
> > **Sent:** Tuesday, May 20, 2025 3:58 PM
> > **To:** Matz, Katherine <Katherine.Matz@ct.gov>
> > **Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
> > **Subject:** Re: Complaint Report 25-0409 - [redacted]
> >
> > EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or

open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Matz,

I appreciate your offer to answer my questions. However, I am specifically requesting a **written response** for **transparency and accountability**. A phone call does not provide documented clarification of the issues raised, nor does it ensure procedural integrity.

Additionally, I understand that you are standing by the conclusion of the report. However, my concerns remain unresolved, and a **refusal to provide a written response** only reinforces the lack of transparency in this process.

Given the importance of procedural transparency, I ask that all communication regarding this matter be documented appropriately. A written response is necessary to ensure clarity and accountability.

I look forward to receiving your formal response.

Sincerely,

Robert [redacted]

On Tue, May 20, 2025 at 1:23 PM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

Dear Mr. [redacted]

Again, I am happy to discuss your questions further on a phone call, in the hopes that a discussion format might provide you with more clarity. Having said that, the conclusion of the report will stand. If you would like to dispute the conclusion of the complaint report, you will need to file for due process.

**KATHERINE MATZ**
Special Education Bureau Chief
CONNECTICUT Education
Phone: 860-713-6919
Katherine.Matz@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, May 19, 2025 6:10 PM
**To:** Matz, Katherine <Katherine.Matz@ct.gov>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Matz,

Thank you for offering to schedule a phone call. However, given the importance of these issues and the necessity of clear documentation, I require a written response that addresses all of my concerns and questions in full. A verbal conversation will not provide the necessary transparency or accountability.

I expect a timely and substantive response that directly answers each point I have raised.

Thank you.
Robert [redacted]

On Mon, May 19, 2025 at 5:05 PM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

Dear Mr. [redacted]

I would be happy to schedule a phone call to discuss your questions. Are you available this Thursday (5/22) between 2.00-3.30pm?

**KATHERINE MATZ**
Special Education Bureau Chief
CONNECTICUT Education
Phone: 860-713-6919
Katherine.Matz@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, May 19, 2025 8:15 AM
**To:** Matz, Katherine <Katherine.Matz@ct.gov>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Good morning Ms.Matz,
Your response fails to address multiple procedural violations that directly impact my educational decision-making rights.
First, you have confirmed that the Bureau does not have the authority to interpret my parenting plan. However, instead of requiring the district to follow the proper legal process to resolve any dispute, the Bureau accepted the district's unilateral determination **without legal justification**. The district does **not** have the authority to interpret a court order—only a court does. If the district had concerns regarding my decision-making rights, they were **legally required** to seek clarification through judicial channels rather than bypassing procedural safeguards under **34 CFR §300.502(b)(2)**.
Additionally, the Independent Educational Evaluation (IEE) request was **signed by both legal custodial parents**, meaning the district had no justification to seek further confirmation from only one parent. Despite initially stating they would provide a list of evaluators, the district **never followed through**—nor did they initiate the legally required due process hearing to justify denying the request. This failure amounts to a direct violation of IDEA's protections.
Furthermore, I find it deeply concerning that, while the Bureau interviewed the Director of Special Education as part of its investigation, I—the complainant—was **never interviewed**. Given that IEE requests are jointly signed by both legal custodial parents and I was the individual who filed the complaint, my exclusion from the fact-finding process raises serious concerns about fairness and procedural integrity. Investigations are expected to include

perspectives from both the complainant and the respondent, and my omission compromises the objectivity of the findings.
I am requesting an immediate explanation for why the district was permitted to disregard these legal requirements without consequence, as well as why I was excluded from the investigative process. A generic reiteration of previous statements will not suffice— I expect a timely and substantive response that directly addresses these issues.
Best regards,
Robert [redacted]

On Mon, May 19, 2025 at 7:51 AM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

Good morning Mr. [redacted]

I can only reiterate that regarding your parenting agreement, the Bureau of Special Education does not have the authority to issue its own interpretation of your educational decision-making rights, and therefore we investigated your complaint in light of the District's interpretation of your educational decision-making rights, and found no violation. If you disagree with the District's interpretation of your parenting agreement, you must resolve the disagreement with the District directly.

**KATHERINE MATZ**
Special Education Bureau Chief
CONNECTICUT Education
Phone: 860-713-6919
Katherine.Matz@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, May 19, 2025 6:33 AM
**To:** Matz, Katherine <Katherine.Matz@ct.gov>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms. Matz,

I wanted to follow up on my email from May 15, as I have not yet received a response. Given the significance of the inconsistencies I outlined, I would appreciate clarification on my concerns regarding the Bureau’s determination.

I want to reiterate that this matter is time-sensitive, and I need clarification in order to move forward. A prompt response would be greatly appreciated.
Please let me know when I can expect a response. I appreciate your time and attention to this matter.
Thank you.

Robert [redacted]

On Thu, May 15, 2025 at 1:34 PM, Robert <[redacted]verizon.net> wrote:

Dear Ms. Matz,
Thank you for your response. However, I need clarification on a critical inconsistency in your determination.
You stated that the Bureau does not have the authority to interpret my parenting plan. Yet, despite this, the Bureau accepted the **district's interpretation** of the court order—**even though a school district has no legal authority to interpret any court order**. By doing so, the Bureau allowed the district to bypass the legally required due process protections under 34 CFR §300.502(b)(2), enabling the unilateral denial of my IEE request without challenge.
Additionally, the IEE request was **signed by both legal custodial parents**, and both parents **do** have educational decision-making rights. I am not sure where the Bureau came up with the idea that I do not. Given this fact, how does the Bureau justify allowing the district to deny the request without initiating the required due process hearing?
Furthermore, I remain concerned that the Bureau did not interview me—the complainant—during its investigation. Given that my concerns directly relate to violations of IDEA procedural safeguards, my exclusion from the fact-finding process raises serious fairness and transparency concerns. Can you clarify why this decision was made?
Given the significance of these legal concerns, I would appreciate a detailed response that directly addresses these inconsistencies.
I appreciate your prompt attention to this matter.
Thank you.
Robert [redacted]

On Thu, May 15, 2025 at 11:35 AM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

Dear Mr. [redacted]

I was able to follow up with Ms. Jones so that I can provide you with clarification regarding the complaint you filed in February 2025:

As an agency, we do not have the authority to interpret your parenting plan regarding your educational decision-making rights. (As I have shared previously, we did conduct extensive legal consultation on this point.)

At the time of your complaint, the district had interpreted the parenting plan to mean that you do not have educational decision-making rights for this student.

The district is not required to respond to a request for an IEE from

an individual who does not have educational decision-making rights for that student.

Therefore, the district is not in violation of state/federal IEE requirements.

**KATHERINE MATZ**
Special Education Bureau Chief
CONNECTICUT Education
Phone: 860-713-6919
Katherine.Matz@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

---

**From:** Matz, Katherine <Katherine.Matz@ct.gov>
**Sent:** Tuesday, May 13, 2025 2:13 PM
**To:** Robert <[redacted]verizon.net>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

Dear Mr. [redacted]

I will make every effort to get back to you sooner than the end of next week.

**KATHERINE MATZ**
Special Education Bureau Chief
CONNECTICUT Education
Phone: 860-713-6919
Katherine.Matz@ct.gov

The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections

1-200 et seq.).

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Tuesday, May 13, 2025 11:51 AM
**To:** Matz, Katherine <Katherine.Matz@ct.gov>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Jones, Natalie <Natalie.Jones@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms.Matz,

I appreciate your response and understand that Ms. Jones is currently out of the office. However, given the importance of the issue at hand, I wanted to kindly check whether it would be possible to receive clarification sooner than next week. A more timely response would be greatly appreciated so that I can determine the appropriate next steps.

Please let me know if that might be feasible. Thank you for your time and consideration.

Best,

Robert.

On Tue, May 13, 2025 at 9:50 AM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

> Dear Mr. [redacted]
>
> I will follow up with Ms. Jones, who is currently out of the office. One of us will get back to you by the end of next week (5/23).
>
> **KATHERINE MATZ**
> Special Education Bureau Chief
> CONNECTICUT Education
> Phone: 860-713-6919
> Katherine.Matz@ct.gov
>
> The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

**From:** Robert <[redacted]verizon.net>
**Sent:** Monday, May 12, 2025 7:07 AM
**To:** Jones, Natalie <Natalie.Jones@ct.gov>
**Cc:** Klimkiewicz, Bryan <Bryan.Klimkiewicz@ct.gov>; Matz, Katherine <Katherine.Matz@ct.gov>
**Subject:** Re: Complaint Report 25-0409 - [redacted]

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Dear Ms.Jones,
I am writing to respectfully but firmly request clarification regarding the specific findings and factual basis that led the Bureau to conclude there was no violation, despite the Department's own acknowledgment that it lacks the authority to interpret the custody order and the order's ambiguous language, as cited in the report. **In particular, I am seeking an explanation of how the Bureau reconciled its admitted lack of jurisdiction with the district's unilateral denial of a federally protected IEE request — and yet still reached a finding of no violation under IDEA.**
As you know, IDEA establishes clear procedural safeguards, including the right to an Independent Educational Evaluation (IEE) at public expense when a parent disagrees with a district's evaluation. Critically, a school district is not permitted to deny that right based on its own legal interpretation of custody language it deems ambiguous. If a district disagrees with the IEE request, the law is unequivocal: it must initiate a due process hearing without delay under 34 CFR §300.502(b)(2). **The district's failure to do so in this case represents a serious procedural lapse that, as far as I can tell, was not addressed in the Bureau's conclusion.**
**This raises a serious and unresolved contradiction: if the Bureau itself does not have the authority to interpret the custody order, then how can it accept — without challenge — the district's denial of the IEE based on its own unauthorized interpretation of that same order?** The district did not initiate due process, as IDEA requires, yet the Bureau still determined there was no violation. **That effectively validates conduct the Bureau simultaneously claims it cannot legally assess — which is deeply concerning.**
Additionally, I find it troubling that while the Bureau interviewed the Director of Special Education for the District as part of its investigation, I — the complainant — was not interviewed. **Although the IEE request was jointly submitted and signed by both of the child's legal custodial parents, I was the individual who filed the complaint.** My perspective was central to the facts under review, and while I understand the Bureau may have some discretion in whom to interview, it is generally expected that both the complainant and the respondent be interviewed as part of the investigation. **Therefore, my exclusion raises concerns about the completeness and fairness of the fact-finding process.**
**I am requesting an explanation for why the District's failure to initiate due process in response to the IEE request was not weighed as a significant factor in the final determination.** The federal regulations are not discretionary on this matter. Furthermore, the District's failure to provide the list of approved IEE providers — despite indicating in writing that it would — constitutes an additional procedural failure. **Why were these omissions not considered violations of the clear and mandatory procedures governing IEE requests?**
**In reviewing applicable law, it is well-established that a school**

**district may not unilaterally deny an IEE based on its own reading of a court order — especially when that order is admittedly ambiguous and when the district has no legal authority to interpret it.** If clarification were truly needed, the district could have sought a court order or initiated due process as required by law. It did neither. **I therefore ask: how did the Bureau reconcile this clear legal expectation with the district's complete failure to follow the legally required process?**

Finally, I must also ask how the Bureau can simultaneously claim that it does not have the authority to interpret a custody order, yet still characterize the order's language as "ambiguous." **This contradiction is critical, as it appears the Bureau both disclaimed the authority to interpret the order and simultaneously used its own interpretation to support the district's position.** That calls into question the legal basis and neutrality of the determination.

**Given the significant procedural protections IDEA provides to parents — and the clear federal mandate that school districts must either honor an IEE request or immediately seek a hearing — I believe a detailed and transparent explanation is required in light of the facts and legal inconsistencies present in this case.**

As noted in the final decision, I understand I may reach out with any questions, and I am doing so now to seek clear and complete clarification on the issues outlined above.

Thank you for your time and attention. I would appreciate and look forward to your timely response to this matter.

Sincerely,
Robert [redacted]

On Fri, May 9, 2025 at 6:13 PM, Matz, Katherine <Katherine.Matz@ct.gov> wrote:

> Dear Mr. [redacted]
>
> Attached please find the complaint report regarding your complaint dated 2/10/2025. The file is password protected; the password will be sent to you in a separate email.
>
> **KATHERINE MATZ**
> Special Education Bureau Chief
> CONNECTICUT Education
> Phone: 860-713-6919
> Katherine.Matz@ct.gov
>
> The information contained in this transmission is CONFIDENTIAL and PRIVILEGED and is intended only for the use of the recipient listed above. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon this message. If you have received this e-mail in error, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. The text of this e-mail is similar to ordinary telephone or face-to-face conversations and does not reflect the level of factual or legal inquiry or analysis, which would be applied in the case of a formal legal opinion. Please note that messages to or from the State of Connecticut domain

may be subject to the Freedom of Information Act (Conn. Gen. Stat. sections 1-200 et seq.).

**STUDENT'S NAME:** [redacted]
**TEACHER'S NAME: Mrs Stuart**

# MILFORD PUBLIC SCHOOLS

STANDARDS BASED REPORT CARD

**John F Kennedy Elementary School**
**ACADEMIC YEAR: 2024-2025**

## GRADE 5

### LANGUAGE ARTS SKILLS

| LANGUAGE ARTS SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| **Reading Literature:** | | | |
| Critically responds to text and supports thinking with text evidence | 1 | 1 | 1 |
| Summarizes stories including key details | 2 | 1 | 1 |
| Identifies theme and supports ideas with evidence | 1 | 2 | 1 |
| Compares and contrasts themes, topics and author's craft | 1 | 1 | 1 |
| **Reading of Informational Text*:** | | | |
| Critically responds to text and supports thinking with text evidence | | 1 | 1 |
| Summarizes informational text(s) including main idea(s) and key details | | 1 | 1 |
| Compares and contrasts the structure of two or more texts | | 1 | 1 |
| **Reading Foundational Skills:** | | | |
| Uses a range of vocabulary accurately | 2 | 2 | 2 |
| Reads fluently and accurately; comprehends grade level text | 2 | 2 | 2 |
| Spells grade-level words correctly and uses correct spelling in written work | 3 | 3 | 3 |
| **Writing:** | | | |
| Writes an organized opinion that is supported with reasons and/or research | | 1 | 1 |
| Writes organized narrative text | 1 | 1 | 1 |
| Writes organized informative/explanatory texts | | | 1 |
| Writes clearly using grade-level punctuation and capitalization | 2 | 2 | 2 |

### LEARNING AND SOCIAL SKILLS

| LEARNING AND SOCIAL SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| **Habits of Work:** | | | |
| Determination | 1 | 1 | 1 |
| Participation | 2 | 2 | 1 |
| Community | 1 | 1 | 1 |
| Reflective Practice | 2 | 1 | 1 |
| **Social and Civic Habits:** | | | |
| Self-Awareness | 1 | 1 | 1 |
| Self-Regulation | 1 | 1 | 1 |
| Social Awareness | 1 | 1 | 1 |
| Empathy | 1 | 1 | 1 |
| Motivation | 1 | 1 | 1 |

### Attendance

| Attendance | T1 | T2 | T3 | Total |
|---|---|---|---|---|
| Days Absent | 0 | 1 | 0 | 1 |
| Days Tardy | 2 | 3 | 2 | 7 |
| Days Early Dismissed | 0 | 0 | 0 | 0 |

### MATHEMATICS

| MATHEMATICS | T1 | T2 | T3 |
|---|---|---|---|
| **Operations and Algebraic Thinking:** | | | |
| Writes and interprets numerical expressions | 1 | 1 | 1 |
| Analyzes patterns and relationships | 2 | 1 | 1 |
| **Numbers and Operations in Base 10:** | | | |
| Reads, writes, and compares decimals | | 1 | 1 |
| Multiplies multi-digit whole numbers | | | 1 |
| Divides by 2 digit divisors | | | 1 |
| Adds and subtracts decimals | | | 1 |
| Multiplies and divides decimals | | | 1 |
| **Number and Operations - Fractions:** | | | |
| Adds and subtracts fractions | 1 | 1 | 1 |
| Multiplies a fraction by a fraction | | 1 | 1 |
| Solves problems involving multiplication of fractions and mixed numbers | | 1 | 1 |
| Divides fractions by whole numbers and whole numbers by fractions | | 1 | 1 |
| **Measurement and Data:** | | | |
| Converts within a given measurement system | | | 1 |
| Represents and interprets data | | | 1 |
| Understand concepts of volume | 1 | 1 | 1 |
| Relates volume to multiplication and to addition | 1 | 1 | 1 |
| **Geometry:** | | | |
| Solves problems using coordinate graphing | | | 1 |
| Classifies shapes based on their properties | | | 1 |
| **Mathematical Practices:** | | | |
| Makes sense of problems and perseveres in solving them | 1 | 1 | 1 |
| Reasons abstractly and quantitatively | 1 | 1 | 1 |
| Constructs viable arguments and critiques the reasoning of others | 1 | 1 | 1 |
| Models with mathematics | 2 | 2 | 2 |
| Uses appropriate tools strategically | 2 | 1 | 1 |
| Attends to precision | 1 | 1 | 1 |
| Looks for and makes use of structure | 1 | 1 | 1 |
| Looks for and expresses regularity in repeated reasoning | 1 | 1 | 1 |

STUDENT'S NAME: [redacted]
TEACHER'S NAME: Mrs Stuart

# MILFORD PUBLIC SCHOOLS

STANDARDS BASED REPORT CARD

John F Kennedy Elementary School
ACADEMIC YEAR: 2024-2025

## GRADE 5

| VISUAL ARTS SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| Art dexterity - applies new and existing motor skills | 2 | 2 | 2 |
| Application of art principles | 2 | 2 | 2 |
| Creative expression | 2 | 2 | 2 |
| SOCIAL AND CIVIC LEARNING | | | |
| Self-Regulation | 1 | 2 | 2 |
| Motivation | 2 | 2 | 2 |

| SCIENCE CONCEPTS AND PRACTICES | T1 | T2 | T3 |
|---|---|---|---|
| Demonstrates understandings of grade-level science concepts | 1 | 1 | 1 |
| Applies understandings of grade-level science and engineering practices | 2 | 2 | 2 |

COMMENTS:

See Page 3

| GENERAL MUSIC SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| Sings and performs a variety of songs and melodic patterns | 2 | 2 | 3 |
| Reads and performs a variety of rhythm patterns | 2 | 3 | 3 |
| SOCIAL AND CIVIC LEARNING | | | |
| Self-Regulation | 2 | 2 | 2 |
| Motivation | 2 | 2 | 2 |

| SOCIAL STUDIES SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| **Content Knowledge:** Uses knowledge of concepts, themes, and information from history and social studies to promote understanding of our nation and our world. | 2 | 1 | 1 |
| | | | |
| **History/Social Studies Literacy Skills:** Uses literacy, inquiry and research skills to analyze, evaluate and present history and social studies information. | 2 | 1 | 1 |

**Reporting Key for Academic Skills**

4 - Exceeding learning standard at this time of the year
3 - Meeting learning standard at this time of the year
2 - Approaching learning standard at this time of the year
1 - Not meeting learning standard at this time of the year
(shaded) - Not assessed at this time.

If a student has an individualized education plan, a 504 accommodation plan or otherwise, the report card will reflect any modification in grading, course content or student expectation.

Please see district website for additional information: www.milforded.org

| LIBRARY MEDIA SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| Research and information fluency | | 2 | 2 |
| Communication of information | 2 | 2 | 2 |
| Library and Digital Citizenship | 2 | 2 | 2 |
| SOCIAL AND CIVIC LEARNING | | | |
| Social Awareness | 2 | 2 | 2 |
| Self-Regulation | 2 | 2 | 2 |

| PHYSICAL EDUCATION SKILLS | T1 | T2 | T3 |
|---|---|---|---|
| Demonstrates competency in a variety of physical activities | 2 | 3 | 3 |
| Uses fitness concepts to achieve and maintain a health-enhancing lifestyle | | 3 | 3 |
| Participates regularly in physical activity | 2 | 2 | 2 |
| SOCIAL AND CIVIC LEARNING | | | |
| Self-Awareness | 2 | 2 | 2 |
| Social Awareness | 2 | 2 | 2 |

STUDENT'S NAME: [redacted]
TEACHER'S NAME: Mrs Stuart

# MILFORD PUBLIC SCHOOLS

STANDARDS BASED REPORT CARD

John F Kennedy Elementary School
ACADEMIC YEAR: 2024-2025

## GRADE 5

### COMMENTS T1:

Nice job [redacted] is a sweet, kind and enthusiastic boy. He is a pleasure to have in my fifth grade classroom. He has made a good adjustment to classroom routines. Academically, he continues to grow with his modifications and support from a paraprofessional. Socially, he continues to struggle with appropriate interactions with his classmates. My biggest concern is his refusal to listen to adults which is not only impacting his learning, but is a safety issue for himself and his classmates. I am hopeful with reminders and discussions around the importance of listening he can be more successful in the future. You can do it [redacted] :o)

### COMMENTS T2:

Good job [redacted] I am very pleased with [redacted] participation during our Morning Meeting. He enjoys sharing his answers to our social emotional questions. His classmates are very supportive and caring towards him, but his interactions with them are often inappropriate. This trimester we have seen an increased negative attitude from [redacted] towards his learning, as well as the adults working with him. He is at times very disrespectful to those around him who are trying to support him. I continue to be hopeful that with reminders and discussions around the importance of showing respect, he can be more successful in the future. You've got this [redacted] :o)

### COMMENTS T3:

[redacted] is a wonderful boy, and I am happy to have had him in my class. I know you will be very successful in middle school. Please continue during the summer with math review and as many reading experiences as possible. Have a wonderful summer! Keep reading and thinking, and always "Be the Best That You Can Be! "

## Re: 25-0686 [redacted] v Milford BOE - Notification: Resolution Meeting Did Not Occur

From: Herbert Z. Rosen (hrosen@berchemmoses.com)
To: [redacted]@verizon.net; hearingofficersylviaho@gmail.com
Cc: [redacted]@yahoo.com; dueprocess.sde@ct.gov; kirsten.dovenberg@ct.gov
Date: Thursday, July 10, 2025 at 11:14 AM EDT

Good Morning,

For the record, the Board disagrees with M[redacted]epresentation of what occurred and the Board's position. If the Hearing Officer or the Due Process Unit would like a further response on this issue, please let me know and a response can be provided. Otherwise, we will plan to proceed with next week's prehearing conference.

Respectfully submitted,
Herbie Rosen

BERCHEM MOSES PC

Herbert Z. Rosen
Berchem Moses PC

75 Broad Street Milford, CT 06460
(203) 783-1200 • www.berchemmoses.com
hrosen@berchemmoses.com

Rated by Super Lawyers 2025
visit SuperLawyers.com

CONFIDENTIALITY NOTICE: This email transmission (and/or the attachments accompanying it) may contain legally privileged and confidential information, and is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, disclosure, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please promptly notify the sender by reply email and destroy the original message.

---

**From:** Robert <[redacted]verizon.net>
**Sent:** Thursday, July 10, 2025 11:05 AM
**To:** Sylvia Ho <hearingofficersylviaho@gmail.com>
**Cc:** Herbert Z. Rosen <hrosen@berchemmoses.com>; Karen [redacted]@yahoo.com>; SDE, DueProcess <dueprocess.sde@ct.gov>; Kirsten Dovenberg <kirsten.dovenberg@ct.gov>
**Subject:** RE: 25-0686 [redacted] v Milford BOE - Notification: Resolution Meeting Did Not Occur

Dear Hearing Officer Ho,

This email is to formally inform you that the mandated resolution meeting for the due process complaint filed on behalf of [redacted] by me on June 12, 2025, which was scheduled for July 10, 2025, at 10:00 AM EDT, did

not take place.

The meeting was canceled by the district due to their insistence on imposing unlawful conditions, specifically:

- Their refusal to allow us to record the meeting for accuracy and accountability.
- Their demand that we sign a non-mandated confidentiality agreement.

The district explicitly stated that if we insisted on recording the resolution meeting, it would be canceled. They also stated that if we declined to sign a non-mandated confidentiality agreement, the meeting would not proceed, and they would record this as a refusal to attend due to our refusal to agree that the meeting would be confidential. This misrepresents our position, as we were fully willing to participate in the meeting without agreeing to those additional conditions. This approach not only distorts the facts but also constitutes a threat to inaccurately record our participation, undermining the fairness and transparency required in the resolution process under IDEA. Conditioning our participation on terms not required under IDEA—such as waiving the right to record or signing a confidentiality agreement—and stating that our refusal to accept those terms would be noted as a refusal to attend constitutes procedural coercion and undermines the integrity of the dispute resolution process.

We were ready and willing to proceed with the resolution meeting under lawful terms to discuss [redacted]s Free Appropriate Public Education (FAPE). However, the district chose to obstruct and cancel the meeting by imposing these unwarranted conditions.

It is also important to note that the district initially failed to convene this resolution meeting within the federally mandated 15-calendar day timeframe from the filing of our due process complaint on June 12, 2025, which constitutes a separate procedural violation.

Given the district's actions, the resolution process has definitively failed.

We remain prepared for the pre-hearing conference scheduled for next week and for the subsequent due process hearing.

For your full review and record, I have attached the relevant email communication chains between myself and Ms. Jen Stewart of the district, which detail the district's cancellation, their imposed unlawful conditions, and our consistent position. Additionally, I have included the proposed Confidentiality Agreement the district demanded we sign.

Sincerely,

Robert.

On Monday, July 7, 2025 at 10:16:49 AM EDT, Sylvia Ho <hearingofficersylviaho@gmail.com> wrote:

Attorney Rosen, Mr. [redacted]d Ms. [redacted]

The resolution meeting is a settlement conference between the parties and while it may be helpful to the parties, as the case may be, any recording is part of that settlement process and not part of the hearing. The Board's obligation is to convene a resolution meeting as required by IDEA regulations and I will leave you to discuss your disagreement regarding recording. I will only ask if the Board has convened a resolution meeting and if a resolution meeting occurred per IDEA regulations in the prehearing conference. I hope that clarifies for you my role.

Attorney Sylvia Ho
Hearing Officer
16 Spring Lane
Farmington, CT 06032

On Mon, Jul 7, 2025 at 10:07 AM Robert <[redacted]verizon.net> wrote:

> Good morning,

For the record, we have absolutely no objection to the district also recording the resolution meeting. As parents, we value transparency and believe it supports the process.

Thank you

Robert.

On Mon, Jul 7, 2025 at 9:50 AM, Herbert Z. Rosen <hrosen@berchemmoses.com> wrote:

Good Morning,

I emailed earlier today that I am free from 11:30am – 2pm on July 10. If the resolution meeting happens at 10am, I don't see what we can't have a prehearing conference later in the day.

For the record, I have been informed by my client that Mr [redacted] has stated that the Parents intend to record the resolution meeting. The Board will not agree to a resolution meeting that is recorded as it is a meeting being held for purposes of trying to reach a resolution/settlement. As long as the Parents agree that the resolution meeting will not be recorded, the Board will plan to continue with the resolution meeting at 10am on July 10.

Regards,

Herbie Rosen

BERCHEM MOSES PC

Herbert Z. Rosen
Berchem Moses PC

75 Broad Street Milford, CT 06460

(203) 783-1200 • www.berchemmoses.com

hrosen@berchemmoses.com

Rated by Super Lawyers 2025
visit SuperLawyers.com

CONFIDENTIALITY NOTICE: This email transmission (and/or the attachments accompanying it) may contain legally privileged and confidential information, and is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, disclosure, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please promptly notify the sender by reply email and destroy the original message.

## Re: [EXT MAIL] Re: Resolution Meeting

From: Robert [redacted]erizon.net)
To: jstewart@milforded.org
Cc: [redacted])yahoo.com
Date: Wednesday, July 9, 2025 at 01:01 PM EDT

Ms. Stewart,

We appreciate your acknowledgement that we want to participate in the resolution meeting. To be clear, we will be present and ready to proceed with the resolution meeting tomorrow, July 10, 2025, at 10:00 AM, as scheduled.

However, we must address your assertion regarding recording the meeting and the implications of not signing a confidentiality agreement.

While IDEA specifically mentions the right to record PPT meetings, there is no provision in IDEA that prohibits parents from recording a resolution meeting. The general spirit of federal special education law supports a parent's right to fully document all official meetings related to their child's special education process for accuracy and accountability. Insisting that the meeting cannot proceed if recorded is an unwarranted restriction on our participation and limits transparency, which is critical in a dispute resolution process.

We reiterate that IDEA does not require a confidentiality agreement for a resolution meeting. Your comfort level in negotiating without such an agreement does not override our right, and the district's obligation, to engage in a resolution meeting as mandated by federal law. Any limitation you state on offers due to our refusal to sign a non-mandated agreement could be seen as negotiating in bad faith and further impeding the required resolution process.

Our position is consistent: we intend to fully participate in the resolution meeting as required by IDEA. We will not be signing a confidentiality agreement, and we will be recording and documenting the meeting. We expect the district to fulfill its obligation to hold this meeting without imposing conditions that are not required by law and that limit transparency.

We will arrive tomorrow, July 10, 2025, at 10:00 AM, prepared to engage in the resolution meeting. We anticipate the district will proceed with the meeting as federally mandated.

Sincerely,

Robert

> On Wed, Jul 9, 2025 at 12:38 PM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Good Afternoon,
> >
> > I understand and appreciate that you want to participate in the resolution meeting. However, if you insist on recording the meeting, I will not consent to being recorded and continuing the meeting. This meeting is intended for settlement discussions. While the IDEA affords parents the right to record PPT meetings, there is no such provision applying to resolution meetings.
> >
> > I understand if you are not comfortable signing the confidentiality agreement.

However, if the confidentiality agreement is not signed, there may be limitations on what I can offer as a resolution, as I am not comfortable negotiating without the promise of confidentiality. I will have a copy of the proposed confidentiality agreement at tomorrow's meeting if you would like to reconsider.

I'll plan to see you both at tomorrow's meeting, provided that the meeting is not recorded.

Regards,

Jen

On Tue, Jul 8, 2025 at 11:20 AM Robert [redacted]verizon.net> wrote:

> Ms. Stewart,
>
> We must clarify your understanding of our position. We have **not refused to attend** the resolution meeting scheduled for July 10, 2025, at 10:00 AM. As stated in my email the morning, July 8, 2025, we **intend to attend the meeting in good faith and expect the district to do the same.**
>
> Our position remains that we will not be signing the proposed confidentiality agreement. As previously communicated, IDEA does not require confidentiality as a condition for participating in a resolution meeting, and we do not consent to restrictions that limit transparency or our ability to document the process. Requesting such an agreement is inconsistent with IDEA regulations.
>
> To reiterate: **We will be present and ready to proceed with the resolution meeting as scheduled on Thursday, July 10, 2025, at 10:00 AM.** We expect the district to hold the meeting as required by IDEA, irrespective of our refusal to sign a non-mandated confidentiality agreement.
>
> The record should accurately reflect that we are ready and willing to participate in this required meeting.
>
> Sincerely,
>
> Robert
>
> On Tue, Jul 8, 2025 at 11:09 AM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Hello,
> >
> > Resolution meetings are for the purpose of discussing a settlement of the due process. Settlement negotiations are confidential as a matter of public policy. Therefore, our discussions and communications in a resolution meeting are confidential and are not to be disclosed to any third parties. The purpose of the confidentiality agreement is that the parties confirm that. If your position is that you do not agree that conversations in the resolution meeting are confidential and that therefore you will not sign the agreement, then unfortunately, the resolution meeting cannot move forward.

The record will then show that we offered you a resolution meeting, and you refused to attend due to your refusal to agree that it would be a confidential meeting.

Regards,

Jen

On Tue, Jul 8, 2025 at 10:14 AM Rober[redacted]@verizon.net> wrote:

Ms Stewart,

We are confirming that we will not be signing the proposed confidentiality agreement for the resolution meeting scheduled on July 10.

IDEA does not require confidentiality as a condition of participating in a resolution meeting, and we do not consent to any restrictions that limit transparency or our ability to document the process.

Furthermore, requesting us to sign such an agreement is inconsistent with IDEA regulations and raises ethical concerns regarding transparency and fairness.

We also note that under IDEA, the resolution meeting must be held within 15 calendar days of the filing of a due process complaint. Our complaint was filed on June 12, 2025, and the meeting was not scheduled within that required timeframe.

Nevertheless, we intend to attend the meeting in good faith and expect the district to do the same.
Sincerly,

Robert.

On Tue, Jul 8, 2025 at 9:56 AM, Jennifer Stewart <jstewart@milforded.org> wrote:

Good morning,

Attached is the confidentiality agreement we'll be signing on Thursday. I wanted to share it with you ahead of time so you're familiar with the expectations.

Looking forward to seeing you Thursday at 10:00 am.

Regards,

Jen

--

P-70 3 of 3

# Re: [EXT MAIL] Re: Resolution Meeting

From: Robert ([redacted]@verizon.net)
To: jstewart@milforded.org
Cc: [redacted]@yahoo.com
Date: Friday, July 11, 2025 at 01:17 PM EDT

Ms. Stewart,

As the 15-day resolution period has passed, and as the district's attorney, Mr. Rosen, confirmed in his email yesterday, we will proceed with next week's pre-hearing conference.

We look forward to addressing this matter at the conference.

Sincerely,

Robert

> On Fri, Jul 11, 2025 at 12:26 PM, Jennifer Stewart <jstewart@milforded.org> wrote:
>
> > Good Afternoon,
> >
> > After further consideration I would like to move forward with the resolution meeting. The district will record the meeting as well. I listed my availability below:
> >
> > Monday 8:30 to 10:30 or 2:00 to 3:30
> > Tuesday 12:00 to 2:00
> > Wednesday 12:00 to 3:00
> >
> > Regards,
> > Jen
> >
> > On Wed, Jul 9, 2025 at 4:38 PM Robert <[redacted]@verizon.net> wrote:
> >
> > > Ms. Stewart,
> > >
> > > We acknowledge receipt of your email dated July 9, 2025, which you chose to send as a separate communication, explicitly stating that you **will cancel tomorrow's resolution meeting if we insist on recording it.**
> > >
> > > Before addressing your latest assertion, it's important to note that the district already failed to convene this resolution meeting within the federally mandated **15-calendar day timeframe** from the filing of our due process complaint on June 12, 2025. This constitutes a procedural violation on the district's part.
> > >
> > > As we've consistently communicated, including in my email to you today at 1:01 PM, our position on recording the meeting for accuracy and accountability, and not signing a confidentiality agreement, remains unchanged.

Your decision to cancel this federally mandated resolution meeting based on conditions not required by law, and despite our clear prior communication addressing these very points – including your earlier attempt to misrepresent the record by stating our refusal to sign a non-mandated confidentiality agreement would mean we "refused to attend" – demonstrates a **clear and consistent pattern of obstruction of the resolution process by the district and a failure to engage in good faith.** This pattern of imposing unwarranted conditions is further compounded by your decision to **break the established email chain**, fragmenting communications regarding a critical legal meeting.

We reiterate our readiness to proceed with the resolution meeting tomorrow, July 10, 2025, at 10:00 AM, fully prepared to discuss [redacted]s appropriate placement. We expect the district to fulfill its obligation to hold this meeting without imposing unwarranted conditions.

If, as you state, you choose to cancel tomorrow's resolution meeting, then we understand that the resolution process has failed due to the district's actions. We will inform the due process hearing officer accordingly and are prepared to move forward with the pre-hearing conference and the **subsequent due process hearing.**

Our priority remains securing [redacted]s Free Appropriate Public Education (FAPE).

Sincerely,

Robert

---

On Wednesday, July 9, 2025 at 03:12:10 PM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Hello, I've stated our position with respect to recording the resolution meeting. At this point we have offered you a resolution meeting and informed you that we will not consent to recording. While we were hopeful that we could have a productive and meaningful resolution meeting, if you are insisting on recording the meeting, then there will be no resolution meeting tomorrow. If you both are comfortable proceeding with tomorrow's meeting without recording, please let me know. Otherwise I will cancel tomorrow's meeting, and our counsel can discuss scheduling the hearing with both of you at next week's prehearing conference.

Regards,
Jen

JEN STEWART
*Director of Pupil Personnel*
*Milford Public Schools*
203-783-3410
jstewart@milforded.org
70 West River Street, Milford, CT 06460

--

# CONFIDENTIALITY AGREEMENT

RESOLUTION MEETING, July 10, 2025

R.K. v. MILFORD BOARD OF EDUCATION, Case No. 25-0686

The parties to the above-entitled action hereby agree to maintain the confidentiality of all discussions, offers, counter-offers, assertions, statements and other matters discussed during the course of this Resolution Meeting, it being acknowledged by both parties that the discussions held during the Resolution Meeting are in the nature of settlement discussions or offers to compromise a claim, and neither party may use any statements, materials, or discussions held during the Resolution Meeting against the opposing party or otherwise disclose these confidential discussions to any third party outside of the Resolution Meeting process. Nor shall any party audio or video record conversations pertaining to settlement.

In the event that either party needs to consult with counsel, or a paid advocate, during or following the Resolution Meeting, this agreement shall not be construed to prevent disclosure of the Resolution Meeting discussions to counsel for the purpose of obtaining legal advice or preparing a legally binding agreement. In the event that an agreement is reached during the Resolution Meeting and reduced to writing, that agreement may contain language superseding this confidentiality agreement.

__________________________________
Parent

__________________________________
Parent

________________________________
Jennifer Stewart, Director of Special Education and Pupil Services

**MILFORD PUBLIC SCHOOLS**
70 West River Street
Milford, CT 06460

# BEHAVIOR INTERVENTION PLAN

| | | | |
|---|---|---|---|
| Student | [redacted] | Date<br>Revised | 06/04/2021<br>02/2024 |
| DOB | [redacted] | School | John F. Kennedy School |
| Parents/ Guardians | Robert [redacted] &<br>Karen [redacted] | Grade | Fourth Grade |
| Special Education Teacher | Tara Truscello | School Social Worker | Lauri Dougherty |
| Supervisor of Special Education | Andrea Giannattasio | School Psychologist | Jen Davis |
| Regular Education Teacher | Alicia Curria | BCBA | Courtney Carrano |

**Target Behaviors:**
*(Behavior(s) which are presenting as problematic to the student's learning and which the planning and placement team has identified to reduce or extinguish.)*

**Elopement** - defined as any time [redacted] gets out of his seat without adult permission

**Calling Out/Making noises -** defined as any time [redacted] vocally talks out or makes vocal noises without being called on to do so

**Misuse of Materials -** defined as anytime [redacted] uses materials for purposes other than what they were intended. For example: writing on the desk, tapping with a pencil, playing with items on his desk, playing with hands.

**Work Refusal** - defined as anytime [redacted] does not initiate a work demand within 15 seconds of being asked to do so OR stops working for more than 15 seconds

**Hypothesis/Function of Behaviors:**

*(A synthesis of data gathered to offer a hypothesis regarding what function the target behavior(s) serves for the student.)*

Based on the results of the analysis of antecedents and consequences as well as other data collection,the function of the target behaviors are as follows:

**Elopement** is hypothesized to be to gain access to attention.

**Calling Out/Making noises** is hypothesized to be to gain access to attention.

**Misuse of Materials -** is hypothesized to have a dual function, primarily to escape or avoid something and secondarily to gain access to attention.

**Work Refusal** - is hypothesized to have a dual function, primarily to escape or avoid something and secondarily to gain access to attention.

**Desired Replacement Behaviors:**(*More acceptable behaviors planned to replace the target behaviors through the Behavior Intervention Plan)*

**Elopement -** staying in his seat

**Calling Out/Making noises -** waiting his turn, raising hand and waiting to be called on, and saying, "excuse me" to get staff or peers attention.

**Misuse of Materials -** using materials for what they purpose is intended to be

**Work Refusal** - asking for a break, completing and initiating work tasks and demands, asking for help

**Intervention Strategies:**
*(Specific interventions and strategies to be implemented in addressing the Target Behavior.)*

***Proactive Strategies:***

- **Clear Expectations** -[redacted] should be provided clear expectations especially prior to transitions that also includes behavioral expectations to ensure he is clear of what is expected of him.
  - For example, "you are going to line up quietly by walking."

- **Behavior Specific Feedback –** when providing [redacted] with verbal praise for engaging in appropriate peer interactions, raising his hand and not calling out; make praise sure you are making him aware of what specific behavior he is receiving the praise for.
  - For example, "nice job lining up getting in your spot", "I liked how you were able to complete your work independently."

- **Visual Checklist -** For multi step assignments, provide [redacted] with a task checklist for him to check off tasks as he completes them.
- **Direct Instruction -** [redacted] should receive direct instruction in the following areas:
  - **Functional Communication** - asking for attention, raising hand, requesting a break, asking for help,
  - **Peer interaction** - how to ask a friend to play, how to engage in conversation with peers, how to react when a peer does not want to play

***Consequence Strategies:***

- **Holding the Expectation:** If [redacted] engages in target behavior, the demand/task that was presented prior to engaging in behavior should remain until he complies with the task or demand. For example, if the direction was to do 5 minutes of independent reading and [redacted] does not comply, he should have to complete this task before engaging the next task or demand.

- **Planned ignoring-** the teacher will ignore inappropriate behaviors that [redacted] is engaging in and wait to provide attention for appropriate behaviors. Doing this will reinforce the appropriate behaviors and in turn increase those behaviors while decreasing maladaptive behaviors. When [redacted] exhibits calling out,and elopement, you should ignore the student, provide no eye contact or verbal statements. Provide visual cues. For instance, if [redacted] is calling out you may raise your hand As soon as the student demonstrates ANY behavior resembling the appropriate behavior, provide immediate praise.

***System of Reinforcement:***

- ***Differential Reinforcement of Low Rates -*** [redacted] should receive reinforcement if behaviors occur at low rates. [redacted] is provided with a visual of tokens. When [redacted] engages in target behavior a token is removed without providing attention. If [redacted] has one token at the end of the interval, he will receive access to preferred activity or item. [redacted] currently has five tokens for a duration of 30 minutes. The duration should be increased systematically over time as well as frequency decreased once [redacted] consistently meets criteria for reinforcement.

**Person Responsible:**
*(The individual's designated to implement intervention strategies and/or designated for oversight of specific portions of the Behavior Intervention Plan.)*

| Task: | Responsible Party: | Date Implemented: |
|---|---|---|
| Direct Instruction - Behavioral Strategies, Coping Strategies, Replacement Behaviors | School Team | Ongoing |
| Proactive Strategies, Consequence Strategies, System of Reinforcement, Environmental Supports | School Team & BCBA as needed | Ongoing |

**Monitoring Progress/Evaluation Methods:**
*(A description of how progress toward achieving desired outcome will be monitored and evaluates.)*

Data will be collected on targeted behaviors to monitor behavior trends.

**Timelines/Review Dates:**
*(Segments of time during which specific portions of the Behavior Intervention Plan are to be addressed as well as specific dates by which specific portions of the Behavior Intervention Plan are to be reviewed with regard to progress.)*

| Date: | Specific portion of the plan to review | Responsible Party: |
|---|---|---|
| 2 week minimum increments from date of implementation | Review and analysis of Data | BCBA/ School Team |

| | | |
|---|---|---|
| 2 week minimum increments from date of implementation | Program adjustment if needed | BCBA/School Team |
| 2 week minimum increments from date of implementation | Communication to guardians regarding behavior change | School Team |

***FADING OF PLAN:*** When stable rates of behavioral change over time are demonstrated, current intermittent schedules of reinforcement will be adjusted. This will be done mindfully and systematically by increasing demands and/or increasing the time interval of reinforcement delivery, thus allowing natural contingencies to support behavioral change

CT KIDS MATTER
345 Highland Ave
Suite 102
Cheshire, CT 06410
(203) 599-1492

**DATE: 11/29/24**

**Re: [redacted]**
**DOB: [redacted]**
**Admission Date: 4/21/23**

To Whom It May Concern:

I have been seeing [redacted] and his parents for individual and family therapy since April 2023. He is diagnosed with [redacted]. [redacted] has struggled to achieve his academic goals in public school. Given such, his parents have been researching Woodhouse Academy and asked for my opinion on whether this would be a good educational setting for [redacted]

After reviewing the website, I believe that Woodhouse Academy would be a very good choice for [redacted] He would benefit from the individualized educational planning and the focus on the development of living skills and self-advocacy. Like many young people with [redacted] Spectrum Disorder, [redacted] has sometimes found sustaining friendships somewhat challenging. It appears that one focus of Woodhouse Academy is establishing a sense of community. This emphasis on social skills and relationship development would be very helpful for [redacted] He is a friendly and outgoing boy who would benefit from being in a setting more specifically designed to meet the specific needs of boys like him.

Please feel free to reach out to me if you have further questions.

Sincerely,

Ron Brone

Ron Brone, PhD
(959) 201-9409

# Re: [EXT MAIL] Re: FOIA Emails

From: Robert ([redacted]verizon.net)
To: pgriffin@milforded.org; jstewart@milforded.org; acutaia@milforded.org
Cc: [redacted]yahoo.com
Date: Wednesday, November 6, 2024 at 06:38 PM EST

Ms. Griffin,

Please provide me printouts of these texts messages (screen shots) and please provide me ALL emails communications between all parties I requested. How were these texts messages sent/recived? Via personal cell phone?

Why did you fail to include these (text messages) before? Please provide me with an answer. I believe you are hiding a lot more from me.

Please advise ASAP

Robert [redacted]

> On Wednesday, November 6, 2024 at 05:52:31 PM EST, Pam Griffin <pgriffin@milforded.org> wrote:
>
> Good afternoon.
>
> I understand the FOIA request. I shared the search terms to cull all responsive records. I have obtained the text messages below.
>
> 8/2/24 From Amy Rizzo to Darlene Koosa
> Do you usually attend PPTs with me for PPTs?
>
> Darlene Koosa to Amy Rizzo
> Sometimes
>
> 6/9/24 From Amy Rizzo to Jen Stewart
> [redacted] is really struggling. I have noticed a difference since April break and Tara said it started before that. I hope we can make a good plan for him.
> No response from Jen.
>
> 2/13/24 From Amy Rizzo to Darlene Koosa
> Can you invite her back and say that we will fill her in tomorrow? She does not need to contact the family. She needs to work with [redacted] on his social skills counseling.
> The red is the only part of that thread that was about [redacted]
>
> Darlene Koosa to Amy Rizzo
> Okay.
>
> The district has provided you with all applicable and responsive records to your request.
>
> Sincerely,
>
> Pam Griffin

*Pam Griffin*
*Executive Assistant to the Superintendent*
*Milford Public Schools*
*70 West River Street*
*Milford, CT 06460*
*203-783-3433*

On Mon, Nov 4, 2024 at 10:31 AM Robert <[redacted]verizon.net> wrote:

MS. Griffin,

I believe my original FOIA request was clear. This is now the second request. You have failed to honor my original FOIA request and failed to provide me with ALL that I requested. You took it upon yourself to cherry pick what you wanted to send and and this is completely unacceptable. If you refuse to honor my request, I will be filing a complaint with the Freedom of Information Commission. I am coping and pasting my previous request. Please understand, when I requested ALL I meant ALL.

Please advise ASAP

Robert [redacted]

I am requesting ALL emails, text messages, records, audio recordings, records and voice messages from you and **the entire** JFK staff including Ms. Rizzo and MS. Macklin and Andrea Giannattasio to and from each other and from your office including yours to and from each other. (Entire JFK staff including Anna Cutaia and Christopher Brown, your predecessor) from August of 2022 through the present date) this includes ALL above mentioned communications about and pertaining to [redacted] mom and I and my son.

And:

I am requesting ALL email text messages and records and audio recordings, records and voice messages pertaining to my son from you and **the entire** JFK staff including Ms. Rizzo and Ms. Macklin and from and Andrea Giannattasio to and from each other and from your office including yours to and from each other. (Entire JFK staff including Anna

Cutaia and Christopher Brown, your predecessor) from August of 2022 through the present date) this includes ALL above mentioned communications about and pertaining to [redacted] mom and I and my son.

My FOIA request shall include **EVERYTHING and ALL** mentioned above including in my original FOIA request and in **ALL (in every format)** which is legally allowed by law.

Robert [redacted]

On Friday, October 18, 2024 at 02:58:55 PM EDT, Pam Griffin <pgriffin@milforded.org> wrote:

Mr. [redacted]

The blacked-out pages are pages that have been redacted. Those email threads did not pertain to the request. The blank pages are just extras that were pulled with the search. We don't delete pages from a search, hence, the redacted and the blank pages.

The specialist searched for emails containing the following:
[redacted] and/or
[redacted]yahoo.com and/or
[redacted]verizon.net and/or
Agiannattasio@milforded.org and/or
nmacklin@milforded.org and/or
arizzo@milforded.org and/or
Karen [redacted] and/or
Robert [redacted] and/or
[redacted] and/or

I know when you made the request a couple of years ago, you spoke to the director who explained the search process to you. Is there a specific email that you are looking for? We can search for it if you provide me with a name, date, or email.

Let me know.

Thanks.

Pam

*Pam Griffin*
*Executive Assistant to the Superintendent*
*Milford Public Schools*
*70 West River Street*
*Milford, CT 06460*
*203-783-3433*

On Fri, Oct 18, 2024 at 2:13 PM Robert <[redacted]verizon.net> wrote:

Most of the files are blank pages and the only few files I seen was from [redacted] mom there were no other emails that I requested from all the staff members to and from each other.

Yahoo Mail: Search, Organize, Conquer

On Fri, Oct 18, 2024 at 2:08 PM, Pam Griffin <pgriffin@milforded.org> wrote:

Good afternoon,

Please find attached the emails you requested through your FERPA request. Please let me know if you have difficulty opening the file.

Thanks and have a nice day.

Pam Griffin

*Pam Griffin*
*Executive Assistant to the Superintendent*
*Milford Public Schools*
*70 West River Street*
*Milford, CT 06460*
*203-783-3433*

## Re: [EXT MAIL] FERPA Request

From: Robert ([redacted]verizon.net)

To: jstewart@milforded.org

Cc: arizzo@milforded.org; acutaia@milforded.org; [redacted]yahoo.com; ldougherty@milforded.org; ttruscello@milforded.org; jdavis@milforded.org; kkristan@milforded.org; nmacklin@milforded.org; dstuart@milforded.org; dkoosa@milforded.org

Date: Tuesday, April 8, 2025 at 01:33 PM EDT

Ms. Stewart,

Due to the actions and behaviors exhibited by you and Ms. Rizzo at the March 6th Parent-requested PPT meeting, I regret to inform you that there will be no in-person meeting. The events of that meeting have left me with no confidence in the district's willingness to engage in good faith.

During that meeting, instead of addressing my concerns and answering my questions, both you and Ms. Rizzo resorted to deliberate interruptions that obstructed my ability to advocate for [redacted] You and your team systematically shut down my questions, avoided critical issues, and sidelined matters that were crucial to address. I was repeatedly silenced mid-sentence, while other staff members took the floor, derailing the conversation and preventing a meaningful dialogue. The intention was clear: to avoid answering uncomfortable questions and dismiss the concerns I raised. Far from being productive, this meeting was obstructive and counterproductive, preventing any progress whatsoever.

Furthermore, when I attempted to bring up past communications, your response was to restrict the conversation, attempting to shut me down rather than engage with the substantive issues. This only highlighted the district's refusal to provide transparent and accountable responses.

Your behavior and Ms. Rizzo's behavior during the meeting were confrontational and obstructive. Rather than fostering productive discussion, you escalated the situation with baseless accusations and even threatened to end the meeting when I merely requested that my questions be answered. This behavior prevented the meeting from being a constructive forum for answering questions and addressing concerns.

The district's ongoing refusal to directly address the concerns raised, answer our questions, and engage in transparent communication—despite our repeated efforts to do so in writing—clearly demonstrates a pattern of evasion, distortion, and obstruction. We have no reason to believe that an in-person meeting would result in anything other than the same dismissive and obstructive behavior.

Additionally, I must address the issue of receiving emails outside of regular business hours. I was emailed on a Saturday night, insisting on a meeting. This kind of communication disrupts my weekend and creates unnecessary stress. It is inappropriate to receive emails regarding non-emergent matters at such times. Boundaries should be respected in order to ensure professional and effective communication.

If the district is genuinely committed to addressing the issues at hand, it should do so in writing. I expect all responses to be provided via email, as this is the only acceptable form of communication moving forward. Please refer to my previous email, sent on March 10th, titled "Formal Complaint Regarding Conduct during March 6th Parent-Requested PPT Meeting." This serves as a clear example of why there will be no in-person meeting.

Robert

On Saturday, April 5, 2025 at 05:47:58 PM EDT, Jennifer Stewart <jstewart@milforded.org> wrote:

Dear Mr. [redacted] and Ms [redacted]

I'd like to schedule an in-person meeting with both of you to go over the Powerschool logs and incident data logs. Mrs. Rizzo and Mrs. Macklin will also be joining us. I think a face-to-face conversation will be much more productive than continuing over email, especially when reviewing these documents together.

I've included a few date options below. Please let me know which one works best for you.

Thursday April 17th 1:30

Tuesday April 29th 2:30

Tuesday May 6th 1:30

Tuesday May 13th at 1:30

Thursday May 15th 1:30

I'm looking forward to the discussion and believe it will help clear up any remaining questions. Thanks in advance for your time and cooperation.

Jen

On Fri, Apr 4, 2025 at 6:12 PM Jennifer Stewart <jstewart@milforded.org> wrote:

> Mr. [redacted]
>
> The staff are referring to your son using either 'he' or 'the student' as pronouns.
>
> Jen
>
> On Fri, Apr 4, 2025 at 4:28 PM Robert <[redacted]verizon.net> wrote:
>
>> Ms. Stewart,
>>
>> In response to your below email regarding the missing Power-school log entry from September 4, 2024, and the explanation provided about staff access limitations. After thoroughly reviewing the records and the information shared, there are several critical discrepancies and concerns that need to be addressed.
>>
>> **Contradictions Regarding Staff Access:**
>>
>> The statement that "the school staff and secretary who provided the records for you do not have permission to see all log entries" does not align with the evidence provided. Specifically:

# STATE OF CONNECTICUT

*STATE DEPARTMENT OF EDUCATION*

May 9, 2025

Ms. Jennifer Stewart
Director of Pupil Personnel Services
Milford Public Schools
70 West River Street
Milford, CT 06460
*Via electronic mail*

Mr. Robert [redacted]
*Via Electronic Mail*

Re: [redacted]
Complaint # 25-0409

Dear Ms. Stewart and Mr. [redacted]

A complaint was filed with the Bureau of Special Education (the Bureau) by the Student's father (the Parent) on behalf of the above-referenced student (the Student) against the Milford Public Schools (District). According to federal regulations, a complaint must allege a potential violation of either state or federal special education law and provide facts that support the claim. In the complaint, the Parent alleged that the District had been non-compliant with the rights afforded under the Individuals with Disabilities Education Act 2004 (IDEA) as itemized in the issue that follows.

Specific findings of fact and conclusions are set forth in this report, and where appropriate, corrective actions for the District.

The complaint inquiry letter set forth the issue to be investigated as follows:

**Issue:** 34 CFR § 300.502 and RCSA § 10-76d-9(c) provide that a parent may have a right to a publicly funded IEE if the parent disagrees with a district evaluation. When a parent requests an IEE, the district must, without unnecessary delay, file for a due process hearing to defend its evaluation or ensure that the evaluation is provided at no cost to the parent.

The Parent alleged that the Student's parents requested an independent educational evaluation (IEE) at public expense on January 28, 2025, and that as of the date of the complaint, the District had not provided the IEE at public expense or filed for a due process hearing to defend its evaluation. The Parent also alleged that the District has failed to include him in decisions regarding the Student's education and disagrees with the District's assertion that the Student's mother has the authority to make sole education decisions.

The following documents were reviewed for this report:

1. 10-76d-1 of the Connecticut General Statutes.
2. 34 CFR Part 300 of the Federal Register.
3. Regulations of Connecticut State Agencies.

4. The Parent's complaint and related documentation.
5. Records related to the Student in CT-SEDS.
6. Email communications provided by the District.

This interviewer also interviewed the Director of Special Education for the District.

The complaint timeline for this complaint was extended due to exceptional circumstances.

**Findings of Fact:**

1. The Student is 11 years old, in 5th grade, and currently attends the J. F. Kennedy School in Milford, Connecticut. He is eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA) disability category as a student with [redacted]

2. The District conducted a three-year reevaluation of the Student in January of 2024.

3. On January 28, 2025, the Parent sent an email from his personal email account to the District requesting an IEE at public expense because the parents disagreed with "past evaluations." The Parent uses the plural, first-person pronoun "we" throughout the email and the email is signed with the first names of the Student's mother and father.

4. On February 7, 2025, the Director for the District sent an email to both the Student's mother and father. The Director addressed the email to the Student's mother and stated the following:

   > I wanted to follow up regarding your request for an Independent Educational Evaluation (IEE). According to our records, you have the authority to make sole educational decisions. Could you please confirm if you're requesting this evaluation? Once I hear from you, I'll provide a list of potential evaluators to move forward.

5. On February 10, 2025, the Parent filed this complaint regarding the IEE at public expense request, as well as other issues.

6. The Student's parents are divorced, and the mother has physical custody of the Student.

7. The Student's parents submitted a "Parenting Plan" to the Superior Court dated December 20, 2016. In this plan, the parents agreed to the mother having physical custody, and the parents sharing joint legal custody regarding decisions about the Student's life, including educational decisions.

8. A judge presiding over the matter in Superior Court entered a Memorandum of Decision regarding the proposed "Parenting Plan" on January 2, 2019. The Judge modified portions of the "Parenting Plan" and stated at the end that, "The mother shall have the final decision making authority."

9. The District has interpreted this language in the Judge's decision to mean that the Student's mother has the final or sole authority regarding decisions about the Student's education.

10. The Parent disagrees and maintains that the parents share joint legal custody. (See Finding of Fact #7).

**Conclusion:**

34 CFR § 300.502 and RCSA § 10-76d-9(c) provide that a parent may have a right to a publicly funded IEE if the parent disagrees with a district evaluation. When a parent requests an IEE, the district must, without unnecessary delay, file for a due process hearing to defend its evaluation or ensure that the evaluation is provided at no cost to the parent. 34 CFR § 300 defines a parent as a biological or adoptive parent of the child, unless a judicial decree or order identifies a specific person to act as the "parent" or make educational decisions on behalf of the child, in this case such person shall be determined to be the "parent" for purposes of the IDEA. In this case, the Judge's decision, which added the language, "The mother shall have the final decision making authority" is ambiguous, because it does not specifically state that this statement applies to decisions regarding Student's education pursuant to the IDEA. The Connecticut State Department of Education does not have the authority or jurisdiction to interpret or enforce superior court decisions when the plain language of such decisions are unclear. Therefore, it is determined that the District did not violate 34 CFR § 300.502 and RCSA § 10-76d-9(c), and therefore no corrective action is required.

This complaint report is final and not subject to appeal pursuant to the complaint resolution process. A party who has a right to request a due process hearing (that is, the parent or a local education agency) and who disagrees with this decision may initiate a due process hearing, provided that the subject of the due process hearing request involves an issue about which a due process hearing can be filed and the two-year statute of limitations for due process hearings has not expired. You can reach me Natalie.jones@ct.gov if you have any questions.

Sincerely,

Natalie Jones

Natalie E. Jones
Education Consultant

cc: Mr. [redacted] Parent
Dr. Anna Cutaia, Superintendent of Schools
Mr. Bryan Klimkiewicz, Division Director, Bureau of Special Education
Mrs. Katherine Matz, Bureau Chief, Bureau of Special Education

# FERPA Request for Educational Records – May 4, 2023 Letter and Communication Plan

From: Robert ([redacted]verizon.net)
To: tzenowitz@milforded.org
Cc: acutaia@milforded.org; [redacted]yahoo.com
Date: Monday, October 6, 2025 at 09:12 AM EDT

Dear Mr. Zenowitz,

My name is Robert [redacted] and I am the parent of [redacted] a student at West Shore Middle School. I am writing to formally request access to educational records referenced in an email I received on Friday May 5, 2023 at 11:28 AM, from Brenda Anziano, who was serving as Interim Principal at the time.

In her message, she referenced an attached letter and communication plan, which were shared via a link. When I attempted to access the document, I received a message stating that the file has been deleted. I do not know why this document was deleted, but given its relevance to my child's education and its role in ongoing due process proceedings, it should not have been removed or made inaccessible. As a parent, I should have continuous access to educational records that pertain to my child.

This request is made pursuant to both the Family Educational Rights and Privacy Act (FERPA) and the Connecticut Freedom of Information Act (FOIA), as the referenced communication log and letter pertain directly to my child's education and may also constitute public records maintained by the district.

Please confirm receipt of this request and let me know if any additional steps are required. I am forwarding the original email for reference.

Sincerely,

Robert [redacted]
203-[redacted]
[redacted]verizon.net
[redacted]
Parent of [redacted] West Shore Middle School

----- Forwarded Message -----
**From:** Brenda Anziano <banziano@milforded.org>
**To:** Robert <[redacted]verizon.net>; '[redacted]yahoo.com" <[redacted]yahoo.com>
**Cc:** Andrea Giannattasio <agiannattasio@milforded.org>
**Sent:** Friday, May 5, 2023 at 11:28:32 AM EDT
**Subject:** Re: Document shared with you: "Ticket Report/Communication Log"

Here is my third try. Sorry.

Please see the attached letter and communication plan. This plan will go into effect on Monday and we will be sending home the communication log on Thursdays.

Brenda Anziano, Interim Principal

P.S. Mrs. Aspinwell has been out for two days. I have checked on [redacted] both days and he is doing great! Earning a lot of tickets and completing hie work.

On Thu, May 4, 2023 at 8:00 PM Robert <[redacted]verizon.net> wrote:

> I am unable to access the google document I would appreciate please sending it again

On Thu, May 4, 2023 at 2:24 PM, Brenda Anziano (via Google Docs) <drive-shares-dm-noreply@google.com> wrote:

# Brenda Anziano shared a document

Brenda Anziano (banziano@milforded.org) has invited you to **edit** the following document:

Attached is the communication chart we will be sending home on Thursdays beginning next week. Brenda

Ticket Report/Communication Log

Open

If you don't want to receive files from this person, block the sender from Drive

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because banziano@milforded.org shared a document with you from Google Docs.

Google Workspace

**Student** [redacted]

**School**: John F. Kennedy Elementary School
**Address of School**: 404 West Avenue, Milford, CT 06461
**Point of Contact for School District**: Jennifer Stewart, Director of Pupil Personnel Services

**Parent(s):**

**Parent 1 Name**: Robert [redacted]
**Address**: [redacted]
**Phone Number**: 203-[redacted]

**Parent 2 Name**: Karen [redacted]
**Address**: [redacted]
**Phone Number**: 203-[redacted]

# Due Process Complaint: In Re: [redacted]"[redacted]

I am formally requesting a due process hearing based on Milford Public Schools' ongoing and significant failure to provide my son [redacted] with the Free Appropriate Public Education (FAPE) to which he is entitled under the Individuals with Disabilities Education Act (IDEA). This request arises from a sustained and well-documented pattern of procedural and substantive violations — including the denial of critical services, failure to address his individualized emotional and behavioral needs, exclusion from meaningful IEP planning, and retaliation against protected parental advocacy.

Despite repeated efforts to resolve these issues collaboratively, the district has engaged in a troubling pattern of misconduct, including inappropriate disciplinary actions, emotional mistreatment by staff, and a systemic lack of transparency. These failures have had a serious and lasting negative impact on [redacted] well-being, educational progress, and psychological safety.

Given the district's demonstrated inability to provide [redacted] with FAPE in accordance with federal law, we are now seeking immediate, legally enforceable remedies — including an out-of-district placement fully funded by the Milford Public Schools and a formal determination that the district has violated its obligations under IDEA.

# Statement of Facts

[redacted] educational experience within the Milford School District has been characterized by a troubling decline in appropriate support, culminating in what appears to be a clear and documented pattern of adverse actions following parental attempts to secure proper services and accountability. The factual chronology is critical to understanding the district's failures:

## I. Initial Misrepresentation, Unmet Needs, and Reactive Interventions (January - September 2023)

1. **January 26, 2023:** Ms. Adinolfi and Ms. Giannattasio, representatives of the Milford School District, explicitly stated that the autism program at Mathewson school would "not be appropriate" and was "not recommended" for [redacted] They further asserted that [redacted] "currently has and will continue to have access to everything he needs." This assertion is directly contradicted by the district's later attempts to place [redacted] in this very program, suggesting either a misdiagnosis of needs or a later strategic shift in response to parental advocacy.
2. **March 4, 2023:** A communication from [redacted] teacher revealed significant issues: [redacted] had missed half of his learning sessions over the last month. More critically, the teacher documented [redacted] stating that he was her "worst student" and that "she (the teacher) hates him." This alarming statement by [redacted] directly indicates a profoundly damaging teacher-student relationship and an environment detrimental to his emotional well-being and learning.
3. **April 18, 2023:** Ms. Adinolfi, [redacted] special education teacher, sent a communication confirming a deeply distressing incident. She reported that [redacted] said she no longer liked him, cried the entire time, asked if being kept from lunch was his "punishment," and cried for a significant 30 minutes. This self-reported incident by Ms. Adinolfi demonstrates her inability to manage [redacted] emotional distress or provide appropriate intervention for a student with a disability.
4. **April 27, 2023:** At a PPT meeting, [redacted] parents raised their "growing concern" that [redacted] needs were not being met, advocating for a different approach given the failure of previous behavioral intervention plans and increased time with the school psychologist. Parents specifically complained about his special education teacher, Ms. Adinolfi, and how she handled things with [redacted] specifically citing the 30-minute crying incident with no intervention.
5. **May 1, 2023:** Parents sent a communication indicating they would be working on a detailed communication regarding their recent concerns from the PPT meeting.
6. **May 1, 2023:** In immediate response to the parents' expressed concerns at the PPT, the district reacted by implementing a "ticket system." This was a reactive measure, initiated after parental complaints, rather than a proactive, individualized solution based on comprehensive assessment.
7. **May 2, 2023:** Parents sent a detailed communication regarding the PPT meeting and the issues they had with his special education teacher, Charlotte Adinolfi, outlining how their son was being handled. The team reacted instead of being proactive, implementing a ticket system.
8. **May 5, 2023:** Interim Principal Brenda Anziano replied, stating: "We agree that our communication needs to improve in order to keep you more informed about [redacted] progress." She confirmed they reacted and implemented a token system. She also promised to establish a weekly communication plan to communicate his successes and challenges.
9. **May 5, 2023:** In the same communication, Ms. Anziano stated, "Mrs. Aspinwell has been out for two days. I have checked on [redacted] both days and he is doing great! Earning a lot

of tickets and completing his work." This statement implies positive progress was being made shortly after the parents' complaints, potentially to mitigate concern.

10. **May 20, 2023:** Parents sent a communication expressing dissatisfaction that the promised weekly communication from the school psychologist, Ms. Davis, had not materialized.
11. **May 20, 2023:** Parents reported inappropriate conduct [redacted] experienced from his special education teacher, Ms. Adinolfi. Based on what [redacted] told them, he relayed that Ms. Adinolfi said to him: "Do not go home and tell your daddy that I was eating peanut butter and apple in class ever again!" Parents reported that they no longer felt safe with [redacted] being around her any longer.
12. **May 24, 2023:** Brenda Anziano responded to the report regarding Ms. Adinolfi's conduct by deflecting responsibility and shifting blame onto [redacted] characterizing his legitimate responses as misbehavior. This effectively excused the teacher's inappropriate actions and minimized [redacted] concerns.
13. **May 29, 2023:** Parents formally replied, stating, "[redacted] mom and I feel it would not be in his best interests to continue with Ms. Adinolfi as his Special Education teacher, And as previously shared, we do not feel comfortable with Ms. Adinolfi around our son and cannot be held responsible if we do not trust what we are being told."
14. **July 19 - August 2, 2023:** During communications with Special Education Supervisor Andrea Giannattasio regarding a change in [redacted] special education teacher for Fall 2023, parents outlined further details about Ms. Adinolfi making [redacted] cry in class and why it happened: "Regarding the crying incident. [redacted] then opened up and informed us that he was working on his math, which he does struggle with and needs help in. He went to Ms. Adinolfi to ask for help on a hard math problem that he was struggling with. He informed us that she was busy looking on her cell phone. When he asked for help, instead of helping [redacted] he informed us that Ms. Adinolfi grabbed his math work out of his hand and gave him a book and kept repeatedly insisting for him to read repeating the same phrase, "just keep reading" And this is why [redacted] was crying. He informed us that he was very upset because he just needed help with his math."
15. **May 8 - June 8, 2023:** The communication logs received during this period, outlining progress and behaviors, were "extremely successful and very helpful" to the parents.
16. **September 1, 2023:** A communication from the new special education teacher revealed the complete removal of the previously very successful ticket system with no alternative plan in place. Parents currently assert that the ticket system was removed in retaliation for their previous complaints about the prior special education teacher. In addition, despite previously admitting their communications needed to improve regarding [redacted] progress, they also dismantled and pulled the communication logs, ending the promised weekly updates. Parents currently assert this appears to be a retaliatory move for reporting and complaining about his teachers.
17. **September 29, 2023:** A communication from BCBA Courtney Carrano stated: "I wanted to update you on my observations as well as the data taken on [redacted] He has made a nice transition back to school. During my observations, [redacted] did not exhibit any behaviors that his peers did not also exhibit nor did they occur more frequently than his peers. The data taken day to day by the school staff also support this. I will continue to monitor [redacted] behavior and collaborate with the school team in order to maintain low rates of behavior." Parents currently assert this statement turned out to be false as [redacted] behaviors, according to the team, later escalated substantially, and there was no

collaboration with the school team to maintain low rates of behaviors as promised. Parents currently assert they left [redacted] vulnerable and started accusing him of things he did not even do in retaliation for parents reporting and complaining about his teachers. This approach also demonstrated a deeply concerning and reactive mindset — one that chose to observe [redacted] without support to see what problems might arise, rather than taking proactive steps to ensure his success. This left [redacted] needlessly vulnerable and further illustrates the district's ongoing pattern of responding only after problems escalate, rather than maintaining effective supports or preventing foreseeable setbacks.

## II. Punitive Isolation, Shaming, and Escalating Emotional Harm (November 2023 - April 2025)

18. **Behavioral and Punitive Measures (2023–2024):** One incident involved [redacted] repeating inappropriate content shown to him by another classmate on a school Chromebook during class. Instead of addressing the supervision failure, the district punished [redacted] by isolating him and requiring him to use the nurse's bathroom for the remainder of the year. Parents raised concerns about the lack of monitoring and website blocking, especially given [redacted] autism and echolalia. The district responded only after the fact — promising to block websites and monitor students more closely — a reactive measure that failed to address the harm already caused. Despite [redacted] expressing that he wanted to be like the other children and use the regular bathroom, the district outright denied this request rather than consider how to support him appropriately. This action was an overly restrictive and inappropriate disciplinary measure.
19. **March 2024:** At a parent-teacher conference, behaviors such as fidgeting with items on walls and accidentally ripping one page in a book were reported. Parents offered to replace the book, but received no response. Instead of keeping the successful ticket system in place, parents assert the school chose to leave him vulnerable.
20. **March 2024:** The teacher stated, "We would also express that when we use the term 'behavior' it is not a negative situation, but actions that we address to help shape and reinforce appropriate behaviors. As a reference, behavior, as defined by the BIP, is 'Behavior(s) which are presenting as problematic to the student's learning and which the planning and placement team has identified to reduce or extinguish.'" They also claimed that when there are "big behaviors," they contact both parents, which parents state is not true.
21. **March 2024:** Parents currently assert that the behaviors reported are manifestations of [redacted] disability.
22. **April 15, 2024:** Parents stated, "we do realize this and understand [redacted] is different than the rest of the General ed classmates. It's just the way it is. This doesn't make him a bad person. We understand this may be frustrating at times for his teachers." They also requested weekly updates.
23. **May 13, 2024:** After not hearing back for a month, parents reached out regarding updates and stated, "As per our request below, we would appreciate if you could please send us a written update on [redacted] progress. Including his math, academic, and overall progress. We requested this every few weeks and a big help to us to hear from the team as a way to

help support [redacted] In addition, [redacted] had said that he would like to start using the regular boys restroom again like all the other children. He feels left out."

24. **May 10, 2024:** The school responded with a favorable update regarding his behaviors and progress.
25. **May 15, 2024:** Parents reached out as [redacted] reported that he asked to use the regular bathroom and Ms. Truscello said to him the reason he cannot use the regular bathroom is because he "can't be trusted." Parents documented this.
26. **May 17, 2024:** Ms. Dougherty reported that [redacted] made a self-harm comment. The school failed to give parents a copy of the C-SSRS at that time. This lack of response was concerning.
27. **May 17, 2024:** When parents questioned his progress, they received a response: "Nothing is at a standstill and I provided you with the current goals and objectives he is working on. He is making progress with these goals at this time. I would not say he is at a 'standstill', as you called it, but these goals we created are for a year's worth of learning, are specific to his learning needs and at this time he is making progress towards mastering them."
28. **May 22, 2024:** [redacted] reported that Ms. Truscello continued to tell him he "can't be trusted" and "to not go home and tell his dad." Parents documented this.
29. **May 27, 2024:** [redacted] reported that he asked his classroom teacher, Ms. Curria, if he could use the regular bathroom, and she told him he "can never use it again" and threatened to send him to the principal's office if he did. Parents documented this.
30. **June 3, 2024:** Parents reported that Ms. Curria told [redacted] "Ms. Curria is mean." When asked what happened, [redacted] said Ms. Curria came up to him and said, "[redacted] do you 2nd grade math!" when he was in fourth grade. Parents assert this comment caused him low self-esteem and was damaging to him, marking the beginning of a documented pattern of what we believe to be emotional maltreatment and neglect of [redacted] social-emotional needs. Parents currently assert this was retaliation for previously reporting what Ms. Curria said to him.

## III. Pressured Placement Change and Continued Obstruction (May - August 2024)

31. **May 30, 2024:** On Thursday, May 30, 2024, parents received a communication from Amy Rizzo, school principal, insisting on holding a meeting regarding [redacted] programming and placement on Monday, June 3rd. Parents note that [redacted] programming and placement had already been thoroughly discussed at the February 2024 PPT meeting. This communication also failed to provide the legally required 5 school days' notice.
32. **May 30, 2024:** Parents currently believe this meeting to change his programming, based on **baseless allegations about work becoming increasingly difficult,** was fueled solely by retaliation for reporting inappropriate behavior conducted by several of his teachers. They questioned how everything was appropriate in February, but not a week before school ended.
33. **June 3, 4, & 5, 2024:** Ms. Rizzo and her team consistently pressured parents for a PPT meeting regarding [redacted] beginning on May 30th and continuing relentlessly on June 3rd, June 4th, and June 5th.

34. **June 2024:** Parents never received any responses back from the incidents they reported in May through June.
35. **June 2024:** After back and forth, parents were informed the school wanted to discuss placing [redacted] in the Mathewson program ([redacted] program) they previously stated was "not recommended nor appropriate." This abrupt shift, made without any data-driven justification, suggests that the district was reacting to a crisis rather than thoughtfully planning for [redacted] long-term educational needs.
36. **June 10, 2024:** When parents had questions regarding their motives about the meeting, the school responded, "We have been sharing the increase in behaviors we have seen with [redacted] through the emails since the parent-teacher conferences in March. We have repeatedly asked for meetings with you to discuss these behaviors. You have repeatedly declined meeting with us." Parents state this was not true; they consistently asked for these communications to back up her claims, but she refused and never provided them.
37. **June 10, 2024:** conflicting statements from district staff raised serious concerns about the accuracy of the district's assessment of [redacted] needs and the adequacy of their educational response. On that date, Ms. Rizzo stated in a communication that "as previously stated, our communication about an increase in behaviors since the February PPT due to work becoming increasingly difficult resulted in the team considering options to better support [redacted] This statement is inaccurate. The parents had repeatedly requested documentation of these prior communications, which Ms. Rizzo failed or refused to provide.
38. **June 10, 2024:** Moreover, the district's assertion that [redacted] academic work had become "increasingly difficult" directly contradicts a May 16, 2024 email from his special education teacher, Ms. Truscello, who assured the parents that "nothing is at a standstill." She confirmed that [redacted] is actively working toward his current IEP goals, is making progress, and that the goals in place are appropriately designed for a full year of instruction and tailored to his individual needs. If [redacted] is indeed making meaningful progress toward appropriately designed goals, the suggestion that his academic demands have become unmanageable — to the point of considering a change in placement — calls into question the accuracy of the district's evaluation and the appropriateness of its recommendations. Conversely, if the district genuinely believes [redacted] is struggling due to increased academic and behavioral demands, its refusal to recommend academic instruction as part of his Extended School Year (ESY) services is both inconsistent and negligent. These conflicting narratives — one indicating stability and progress, the other implying decline and unmet needs — reveal a significant lack of coherence in the district's assessment and planning. Taken together, these contradictions underscore the district's failure to adequately address [redacted] evolving educational and behavioral needs, constituting a denial of his right to a Free Appropriate Public Education (FAPE) under the Individuals with Disabilities Education Act (IDEA).
39. **July 13, 2024:** Parents received a response stating, "I think we can agree that we all want him to have a successful 5th grade year."
40. **July 13, 2024:** Parents asked for answers to all their questions and concerns. The school failed to and continually refused to provide them. Parents also asked, "What makes you think throwing [redacted] out of JFK and tossing him into the [redacted] Program at Mathewson in a self-contained classroom (That is what this PPT meeting is about, isn't it?) where you're going to have a lot more behaviors, a lot more nonverbal students and a lot more

students who are much more below his level than he is, is going to be appropriate for him and provide him with a successful 5th grade year? What gives you that idea? Please address these questions via email."

41. **August 2, 2024:** The school responded in a separate communication that it was all a "misunderstanding and miscommunication," when parents assert it clearly wasn't.
42. **August 9, 2024:** Parents responded, outlining questions and concerns to address, including contradictory statements about meeting dates: On June 5th, the school wrote: "we will hold this meeting in the fall"; on June 10th, they wrote: "Our staff will not be available to meet this summer for a PPT," and "we will be reconvening a PPT in the fall"; then on July 10th, they wrote: "We hope to schedule a PPT in September"; then on August 2nd, "out of the clear blue sky," they insisted on holding this PPT meeting in August during parents' summer vacation with [redacted] This demonstrated contradictory and inconsistent scheduling.
43. **August 9, 2024:** Ms. Stewart refused and never responded to the parents' outline of contradictory scheduling.

## IV. Obstruction of Records, Escalating Emotional Harm, and Hostile Interactions (August 2024 - March 2025)

44. **August 16 - September 10, 2024:** Parents received a communication from Jennifer Stewart "backpedaling" about holding a meeting. There was back and forth, and parents repeatedly requested to have all of their questions and concerns answered. The school refused.
45. **September 5, 2024:** Parents made a formal FERPA request for [redacted] records.
46. **September 10, 2024:** Parents wrote: "I received a VM from the school nurse Jacqueline this morning that she dropped my Son's records off at the Milford Department of Health. Then I received a call from the Milford Department of Health, that the records are there for pick up. Why would she do that and send them there? Makes absolutely no sense. I made a FERPA request in the past. The school nurse never dropped off my sons records at the department of health. Please have the school nurse pick up my son's file from the Department of Health and bring them back so they could be with all the other documents when you have them ready."
47. **September 11, 2024:** Jennifer Stewart emailed, "I will have the medical records sent to the PPS office. Do you prefer to pick up the records at the PPS office or JFK?"
48. **September 11, 2024:** Parents assert that [redacted] mother was not required to sign a release for records, while the father was made to do so at the Department of Health, despite Jennifer Stewart previously stating she would have the records sent to the PPS office. Communication between the father and Ms. Stewart reflects ongoing concerns about inconsistencies in record handling. In an email exchange, the father requested alternative delivery options for the records sent directly to his residence, but Ms. Stewart reiterated that the records would be available for pickup at PPS or JFK. The father also highlighted that [redacted] mother was never contacted by the school nurse regarding a hand-delivery of her FERPA-requested records to the Department of Health, raising concerns about differential treatment. Then, on **September 15, 2024**, Stewart **contradicted her earlier statement**, claiming that the **PPS office did not have the medical records** and that the **health office had sent the father a release form to sign**

**before he could obtain them**. However, when the father contacted the health office directly, he **confirmed that no such form had ever been sent**. This contradiction, combined with the unnecessary requirement imposed on the father while [redacted] mother was able to receive records without signing a release, further **supports the parents' assertion that Ms. Stewart's actions were obstructive and retaliatory**.

49. **September 16, 2024:** Parents emailed Ms. Stewart and the team about Ms. Truscello yelling at [redacted] as he reported to them. Parents kindly requested that she be kind to him and treat him with respect.
50. **September 18, 2024:** Parents sent another communication to the school outlining what [redacted] told them: how Ms. Truscello was blaming him for things he did not do and he reported to them that she was "mean and a witch," and threatened to send him to Mathewson permanently! Parents asked that she cease and desist from making any more comments to [redacted] and requested to have Ms. Quinn work with him so he could be away from Ms. Truscello. This statement deeply frightened him.
51. **September 25, 2024:** Parents received a communication from Ms. Koosa claiming [redacted] was now pushing students in the back with a scooter and misbehaving, claiming he was not completing work and mimicked staff and made faces, etc. Parents currently believe the staff were triggering his behaviors in retaliation for parents reporting the staff's behavior towards him and complaining about staff. Parents state these behaviors were completely out of character for [redacted] Parents spoke with [redacted] who said he accidentally bumped into a classmate in gym, felt overwhelmed, asked for a break, and was denied.
52. **On September 30, 2024** On September 30, 2024, parents received a voicemail indicating [redacted] had made another self-harm comment, directly after reporting ongoing mistreatment from his teachers. Despite this serious concern and the parents' efforts to outline [redacted] emotional challenges, the school failed to provide a copy of the Columbia-Suicide Severity Rating Scale (C-SSRS) or any meaningful follow-up. This communication also included a cease and desist order related to what parents believed constituted emotional abuse. [redacted] disclosed that he was forced to call home against his will on four occasions, leaving voicemails for both parents and being instructed to say things he had not done. In one of these calls, a teacher can be heard in the background telling [redacted] to say, "No, that you put your hands on another child." Because [redacted] has echolalia, he repeated the statement rather than expressing his own experience. These calls had no legitimate educational or therapeutic purpose and appeared to be used as punishment for minor behavioral incidents. The district neither obtained parental consent nor included this practice in any structured behavior plan, raising serious legal and ethical concerns. Parents assert that this treatment was not in line with any positive behavioral intervention strategy, as required under IDEA, but instead constituted emotional abuse in retaliation for their reports, with staff targeting [redacted]
53. **October 24, 2024:** Parents received a communication from Amy Rizzo riddled with what parents describe as "baseless allegations against [redacted] in response to their reported incidents. Instead of addressing the concerns raised, the district responded by portraying [redacted] in a negative light, further exacerbating his struggles.
54. **October 30, 2024:** Parents replied, pointing out Ms. Rizzo's inconsistencies and falsehoods.

55. **September 30 - October 28, 2024:** Parents describe ongoing conversations about medical records with Jennifer Stewart, in which she was, in their view, being dishonest and refused to answer questions honestly.
56. **October 16, 2024:** Jennifer Stewart insisted on holding a PPT meeting, but this followed a claim that the previous attempt to transfer [redacted] out of his current program was a "misunderstanding and miscommunication," which parents dispute. Parents assert that the school **fabricated** an excuse to hold the meeting. They requested that the team address their questions and concerns before setting a date, but the school refused to provide transparency or respond to their inquiries beforehand..
57. **October 23, 2024:** Parents responded, emphasizing discrepancies in how medical records were handled for [redacted] mother versus his father. Despite Jennifer Stewart initially stating that the father's records would be transferred to the PPS office or mailed to him, she later **falsely claimed** that he **needed to sign a release and pick them up from the Department of Health**—a requirement that was **never actually necessary**. [redacted] mother was able to receive her records **without this demand**. Additionally, on **September 23rd, Ms. Stewart falsely claimed** that [redacted] mother had **not yet made a request for medical records**, even though she had **submitted an identical FERPA request on September 6th**. This contradiction was further highlighted when, on **October 21st,** [redacted] **mother directly refuted Ms. Stewart's claim**, stating she had **already made the request but had not received her records, and asked that they be mailed to her immediately**. Parents argued that these shifting requirements and false statements were **intentionally obstructive and retaliatory**, unnecessarily creating difficulties for the father while allowing [redacted] mother to bypass the same demands. Additionally, they rejected accusations that they had refused anything, reiterating their **long-standing requests for transparency, answers to their concerns, and cooperation**—requests that had gone ignored since August. Given **Ms. Stewart's inconsistent explanations, misleading claims, and refusal to engage in good faith**, parents asserted that her actions **created unreasonable obstacles for the father** and were **not in** [redacted] **best interest**.
58. **October 26, 2024:** Parents sent a communication to Ms. Rizzo requesting information regarding the inappropriate staff behavior of forcing [redacted] to call home against his will.
59. **November 6, 2024:** Despite multiple follow-ups, a formal FERPA request, and assurances that the data would be provided, the requested information regarding [redacted] was never sent. Jennifer Stewart repeatedly failed to fulfill her commitment, withholding the data entirely and failing to respond.
60. **November 19, 2024:** On multiple occasions, parents reached out to the school team and Ms. Rizzo to clarify which staff member was responsible for forcing [redacted] to call home against his will. Parents received what they describe as a "dismissive response" from Ms. Rizzo. Ms. Rizzo's response attempts to minimize the seriousness of the concerns by reframing the staff's actions as supportive rather than coercive, despite clear evidence that [redacted] who has echolalia, was repeating what he was instructed to say rather than expressing his own experience. She dismisses the impact of these incidents and fails to acknowledge the emotional distress caused by the school's handling of the situation. Parents responded accordingly on November 20, 2024.

61. **Detailed Accounts of Emotional Maltreatment**: By fall 2024, [redacted] emotional distress escalated significantly due to interactions with his special education teacher, **Ms. Truscello**, as detailed in communications from September 16th and 18th. He frequently came home crying, recounting instances where she yelled at him and threatened him with permanent placement at Mathewson, which deeply frightened him. [redacted] also reported being unfairly blamed for incidents he did not cause, intensifying his feelings of distress and isolation. Despite being made aware of these escalating concerns, the district failed to take appropriate corrective action or investigate. This period also saw [redacted] subjected to the distressing disciplinary practice of being **forced to call home against his will** on four separate occasions, as reported on September 30th. These calls, lacking any legitimate educational or therapeutic purpose, served solely as punishment for minor behavioral incidents and were implemented without parental consent or inclusion in a structured behavior plan, raising serious legal and ethical concerns. Instead of addressing the issues, the district responded by portraying [redacted] negatively, as seen in the October 24th communication, further exacerbating his struggles. A cease-and-desist letter eventually halted what we believe to be emotional abuse, but significant emotional damage had already occurred, reflecting a systemic disregard for [redacted] emotional well-being despite clear warning signs.
62. **Self-Harm Comments and Lack of Response (Spring – Fall 2024)** shortly after [redacted] reported troubling comments from his teachers, he made a self-harm statement at school. While the district reportedly administered the C-SSRS, they failed to provide a copy or follow up meaningfully with the family. This same pattern repeated in fall 2024, including the incident on September 30, when [redacted] again reported mistreatment and made another self-harm comment. Despite the serious emotional risk, the district again failed to share the C-SSRS or take any meaningful steps to address [redacted] emotional needs. During this period, [redacted] began reporting daily crying episodes and feelings of being unfairly blamed for incidents he did not cause, further underscoring the emotional toll of the district's inaction and mistreatment.
63. **Throughout the Fall of 2024**: Parents continued to request documentation and clarification from the district regarding various incidents and [redacted] records, as exemplified by their formal FERPA request on September 5th, subsequent communication on September 10th regarding medical records, and ongoing discussions documented between September 30th and October 28th. The district frequently failed to provide requested records and documentation, forcing parents to follow up multiple times, including the unfulfilled request on November 6th. When records were finally received, they were often incomplete, leading parents to question the district's transparency and honesty.
64. **March 2025:** A parent PPT meeting was requested to address long-standing, unanswered concerns. The meeting quickly became hostile, with the father frequently interrupted, cut off mid-sentence, and prevented from asking critical questions. The district refused to address key concerns, dismissed them as irrelevant, and actively sidestepped accountability. When the father persisted in seeking answers, district staff—including Ms. Stewart—raised their voices, became confrontational, and threatened to terminate the meeting entirely. Records of this meeting serve as direct evidence of the district's conduct, capturing the interruptions, dismissals, raised voices, and factual inconsistencies in statements made by staff. The behaviors exhibited—dismissiveness, obstruction,

deflection, and outright refusal to answer questions—directly hindered the father's ability to advocate for [redacted] educational needs. Parents were repeatedly accused of "misinterpreting" district communications, despite quoting them verbatim. When attempting to reference prior communications—which were directly relevant—Ms. Stewart attempted to shut down the discussion, stating, "Do you have any other questions that do not pertain to emails?" This deliberate avoidance of accountability and refusal to engage in transparent discussion made it impossible to advocate effectively for [redacted]

## V. Continued Procedural Violations, Outplacement Denial, and Documentation Issues (December 2024 - April 2025)

65. **December 10, 2024:** Parents sent a communication to the team and district to request outplacement for [redacted] asserting they have failed to meet his needs and violated his FAPE.
66. **December 10, 2024:** Communications with the district showed the school administration repeatedly misrepresented the situation by falsely claiming that the parents refused multiple meeting requests while failing to address their ongoing concerns and requests for transparency. Their responses deflected accountability, disregarded the impact of restrictive placement decisions, and failed to provide the requested documentation, undermining trust in the process.
67. **December 10, 2024:** The school unilaterally scheduled [redacted] annual PPT meeting without parental input, disregarding their role in determining a mutually agreed-upon date. The response pressured parents to accept the meeting time while misrepresenting the school's willingness to engage and failing to acknowledge their request for transparency.
68. **December 12, 2024:** After initially requesting access to records, the school completely ignored the request, forcing a follow-up to obtain the documentation. This continued failure to provide critical records, including those related to the C-SSRS assessment, obstructed the right to access essential information regarding [redacted] well-being.
69. **January 16, 2025:** Despite repeated parental requests for separate meetings to discuss [redacted] outplacement and annual review, the District disregarded this input and unilaterally scheduled a combined meeting. The failure to acknowledge the parents' availability and proposed dates demonstrates a lack of collaboration and transparency.
70. **January 16, 2025:** The District insisted on combining the meetings for administrative convenience, ignoring the distinct nature of these discussions. This decision violated the parents' legal rights under IDEA to have these matters addressed independently.

**Request for Documentation and Procedural Violations (2024 – 2025)**

71. The District repeatedly ignored requests for documentation, requiring multiple follow-ups to obtain records—often met with silence. In December 2024, parents formally requested an outplacement starting in 6th grade and asked for separate meetings to discuss outplacement and the annual review. The District refused and combined the meetings. Despite assurances of a substantial discussion about outplacement, no meaningful conversation took place.

72. At the conclusion of the annual PPT meeting on January 16, 2025, the district stated its intent to place [redacted] in the Harborside program heavily suggesting predetermination. Ten days later, we received a finalized IEP and a second PPT notice that retroactively added “transition planning” language, which had not been present in the original December notice. This post-hoc change constituted a procedural violation.
73. In September 2024, we submitted FERPA and FOIA requests for records and emails related to [redacted] education. In January 2025, I had to again request copies of the Columbia assessments. The district responded by falsely claiming that all documentation had already been provided. However, after we challenged this, additional records were produced — a pattern that repeated itself and revealed a disturbing lack of transparency and accountability in the district’s handling of essential documentation.
74. Furthermore, the district promised a "substantial discussion" with respect to the request for outplacement. There was "absolutely no substantial discussion whatsoever."
75. **August 2024 onwards:** Since August 2024, Ms. Stewart repeatedly acknowledged the existence of data regarding [redacted] academic and behavioral performance and assured parents it would be provided. Despite multiple formal requests and continued follow-up, this data was not delivered as promised. Instead, the District consistently claimed that all records had already been provided—statements later proven false when missing documents, including the May 17, 2024 Columbia Risk Assessment, were only produced after repeated good-faith efforts. This ongoing pattern of denial, delay, and misinformation reflects a clear failure to comply with access to information and has impeded parents' ability to make informed decisions.
76. **January 20 - 28, 2025:** This correspondence outlines parents' formal disagreement with the district’s denial of outplacement for [redacted] and documents ongoing concerns regarding the district’s failure to meet his educational and emotional needs. Despite repeated requests and documented incidents of emotional harm, including two self-harm statements, the district has taken a reactive approach and failed to provide a proactive, supportive environment. Parents reaffirmed their request for an out-of-district placement beginning September 2025.
77. **January 29 - March 6, 2025:** These communications reveal a clear pattern of the district’s failure to respond directly, transparently, and in a timely manner to critical concerns about [redacted] IEP. Despite repeated requests, the district has not provided any documentation of alleged outreach to schedule a PPT meeting, nor have they explained or substantiated the increase in paraeducator support prior to the January 16 meeting. Instead, they’ve avoided questions, responded inconsistently, and failed to address serious concerns raised months earlier about [redacted] emotional well-being. This ongoing lack of accountability and meaningful engagement has disrupted [redacted] support and denied full participation in the IEP process. The district only claimed they reached out "last spring" (May of 2024) for a PPT regarding an increase in paraeducator support in response to parents' inquiry on September 18, 2024, requesting [redacted] spend more time with his paraeducator. The district reached out in May of 2024 to switch placement to a previously deemed "not recommended and not appropriate" [redacted] program starting in 5th grade.
78. **January 29, 2025:** Both parents requested an Independent Educational Evaluation (IEE). The District's response constituted significant procedural violations, as they sidestepped the father, falsely stated the mother had sole educational decision-making authority when

she does not, and unilaterally interpreted a court order, which they have no right to do. Furthermore, the District failed to provide the promised list of IEE providers, and did not initiate their own due process hearing to justify denying the request. This represents a direct contravention of IDEA procedural safeguards. When these grave concerns were raised with the State's Bureau of Special Education through a formal complaint (Complaint Report 25-0409), the Bureau's response was equally concerning and indicative of a lack of impartial oversight. While the Bureau explicitly stated it lacked authority to interpret parenting plans, it paradoxically accepted the District's unilateral interpretation and found no violation, thereby enabling the District's illegal bypass of due process requirements. Moreover, despite being the complainant and a legal custodial parent, I was never interviewed during the Bureau's investigation, raising serious questions about the fairness and integrity of their fact-finding process. Repeated requests for written clarification and documentation of these critical inconsistencies were met with refusals, with the Bureau opting only for verbal communication, which undermines principles of transparency and accountability. This demonstrates a systemic failure within the administrative review process to address the District's fundamental procedural violations, thereby necessitating this impartial due process hearing to ensure [redacted] rights are protected under IDEA.

79. **March 10, 2025:** A formal written complaint was submitted to the district, outlining serious procedural violations following the March 6th PPT meeting. Despite the passage of over two months, no written response or acknowledgment from the district has been received. This unreasonable delay, combined with repeated refusals to address concerns via email since August 2024, demonstrates a clear failure to engage in meaningful, good-faith communication, directly violating IDEA rights.
80. **March 31, 2025:** A formal request was submitted for the district to remove an improper prefatory statement in the parent/student input section of the IEP. Jennifer Stewart, the Director of Pupil Personnel, refused to remove it, falsely claiming for a second time that the mother had the authority to make educational decisions. This demonstrates ongoing misinformation and a refusal to properly document parental input.
81. **March - April 2025:** Parents repeatedly sought clarification from the district about their failure to provide timely written notice that transition planning would be discussed at the January 16 PPT meeting—a clear violation of procedural safeguards. Despite claims from Ms. Stewart that a revised invitation had been sent, it was only created retroactively after the IEP was finalized, with the transition box checked on the day of the meeting. The district's conflicting explanations, refusal to answer direct questions, and retroactive document changes reveal a troubling pattern of non-transparency and procedural evasion, denying meaningful participation in a critical part of [redacted] educational planning and violating procedural safeguards.
82. **April 8, 2025:** Parents submitted two formal communications detailing unresolved procedural concerns, including the retroactive alteration of IEP notices, unexplained discrepancies in behavioral incident logs, and vague or contradictory explanations regarding [redacted] alleged conduct. Despite the gravity of these concerns, the district failed to respond substantively or correct the inconsistencies. Of particular concern is the manipulation of data in incident logs—entries were added months after the fact, relevant records were omitted without explanation, and [redacted] name was replaced with

ambiguous pronouns, which obscured the identity of the student referenced and compromised accountability.

83. **83. March 10, 2025 – Present: Ongoing Failure to Comply with Records Request** On March 10, 2025, a formal records request was submitted under the Freedom of Information Act (FOIA). As of the date of this complaint—well beyond the 45-day statutory deadline—the district has failed to produce a complete or legally sufficient response. Key records remain outstanding, and the district has not provided a definitive timeline for compliance. This is part of a documented pattern. In response to a prior FERPA request, the district provided 84 pages that were entirely redacted, 198 pages of duplicated content, and 113 blank pages. This raises serious concerns regarding the district's adherence to its obligations under federal records access laws.As a result of the continued failure to comply, a formal FOIA complaint has been filed with the appropriate oversight body. The district's conduct reflects a sustained lack of compliance with federal requirements and has impeded access to educational records relevant to the due process proceedings.
84. **Throughout 2024-2025:** Despite being aware of [redacted] sensory regulation needs, the district failed to implement a sensory diet, which could have meaningfully helped him manage focus and behavior. This neglect is yet another example of the district's failure to proactively address [redacted] unique needs.
85. **January 2025 (Annual PPT):** At the time, the IEP explicitly marked "No" for ESY eligibility, despite no documented discussion or evaluation of [redacted] ESY needs. If ESY truly wasn't discussed, then the district had no basis to make that determination at all—meaning they either arbitrarily denied services without proper review or failed to follow the required process. The district later attempted to retroactively correct this error by producing a revised IEP that states "Yes" for ESY eligibility, but this does not erase the original procedural violation. Their delay caused financial hardship and scheduling conflicts for the family, further demonstrating a lack of procedural integrity and transparency.
86. **January 2025 (Post Annual PPT):** Based on the district's documented decision in January that ESY was not required, parents made financial commitments and enrolled [redacted] in summer camp, relying on their official stance. Now, after failing to discuss ESY at the appropriate time, the district is attempting to reverse its position, disregarding the financial hardship and scheduling conflicts their actions have created. Their failure to follow proper procedures has placed an undue burden on our family, further demonstrating their lack of procedural integrity and transparency in educational planning.
87. **January 2025 (Post Annual PPT):** The district's four-month delay in properly addressing ESY represents a serious violation of timely decision-making, which IDEA requires to ensure students receive appropriate services without disruption. This delay not only denied meaningful parental participation but also potentially prevented [redacted] from receiving necessary summer supports, which could directly impact his educational progress.
88. **May 4, 2023:** We received a communication from the district which stated: "We agree that our communication needs to improve in order to keep you more informed about [redacted] progress." This acknowledgment is critical, as it reflects the district's admission of communication failures regarding [redacted] progress. Despite this agreement, the district has continued to fail in maintaining clear and consistent communication. This

failure has exacerbated the issues surrounding [redacted] educational planning and the denial of FAPE. The district's inability to follow through on its commitment has contributed to a persistent lack of transparency and an ongoing failure to address the educational and emotional needs we have repeatedly raised.

**VI. Ongoing Procedural Irregularities in PPT Notices and Documentation (March – May 2025)**

This section outlines multiple procedural inconsistencies and omissions regarding Planning and Placement Team (PPT) notices for [redacted], specifically surrounding meetings scheduled in April and May 2025. These inconsistencies raise significant concerns about transparency, accuracy, and compliance with notification requirements under the Individuals with Disabilities Education Act (IDEA) and Connecticut state law.

## A. Dual Notices Issued on March 31, 2025

**89.** On March 31, 2025, we received two separate PPT meeting notices, issued nine minutes apart, for the same PPT meeting scheduled on April 10, 2025. These notices were only posted on the CT-SEDS website, which itself raises accessibility and timely notice concerns.

**90.** The first notice, timestamped 2:42 PM, listed the following participants:

- Sara Collette – Instructional Supervisor, Special Education (Middle School)
- Sarah Stanley – Special Education Teacher
- [redacted] – Student
- Nadine Macklin – Instructional Supervisor, Special Education

**91.** The second notice, timestamped 2:51 PM, showed the following significant changes:

- Sara Collette's title was changed, removing the "Middle School" designation; she is now listed only as "Instructional Supervisor, Special Education"
- Sarah Stanley's role changed, now listed as "Special Education Teacher (Harborside Representative)"
- [redacted], the student, was completely removed from the notice
- Nadine Macklin was also removed from the list of participants

**92.** These rapid, unexplained changes to both the participant list and their roles within minutes of each other are concerning and confusing, and they undermine the consistency and credibility of the documentation. Furthermore, the first PPT notice (2:42 PM) is completely omitted from the CT-SEDS system, despite having been received and clearly timestamped. This suggests either a deletion or failure to archive an official record, which is a violation of proper documentation protocol and potentially a breach of FERPA record-keeping regulations.

## B. CT-SEDS Upload on April 28, 2025: May 6, 2025 PPT Meeting

**93.** On April 28, 2025, a new notice was uploaded to the CT-SEDS portal indicating a PPT meeting scheduled for May 6, 2025. This new notice contains additional changes:

- Jennifer Stewart, previously listed on prior documentation, has now been removed with no explanation.
- Nadine Macklin, who was removed in the second March 31 notice, has now been added back.
- Sarah Stanley's designation has changed again, now listed as: "Special Education Teacher (Daily Living Middle School Program Representative)," which differs from her earlier "Harborside Representative" title.

**93a.** That same day, on April 28, 2025, we sent a written notice to the district, clearly stating that we did not consent to the proposed placement and objected to the scheduled meeting.

**93b.** Despite this clear and direct communication, the district failed to acknowledge the parents' notice or amend their meeting plans accordingly. Instead, the PPT remained scheduled on CT-SEDS as if consent had been granted, indicating a disregard for parental input and procedural requirements under IDEA.

**93c.** In addition, the district failed to provide proper written notice of both the April 10 and May 6 PPT meetings in accordance with federal and state regulations. The notices were only uploaded to CT-SEDS without sending physical or electronic written notification to the parents. This practice violates 34 C.F.R. § 300.503 and Connecticut state law, which require timely and accessible written notice of PPT meetings to allow for meaningful parental participation.

**93d.** On the same day, Jennifer Stewart responded by stating:

"During [redacted] annual review, the PPT did not discuss whether or not [redacted] was eligible for Extended School Year services... Just a reminder: [redacted] Extended School Year (ESY) services have not yet been planned."

This admission contradicts the finalized IEP, which already indicated "No" for ESY services. If the matter was never discussed, it was a violation of parental participation rights to finalize that determination without parental input. The district's stated intention to hold a retroactive meeting to determine ESY eligibility—months after finalizing the IEP—demonstrates an improper attempt to cure prior procedural violations rather than engage in lawful planning. Moreover, Stewart's email indicated that the district would proceed with the May 6 PPT unless the parents proposed an alternate date, despite having already received the parents' written objection. This amounts to a predetermined action and shows a disregard for procedural safeguards under IDEA.

## C. Summary of Procedural Irregularities

**94.** Issuance of two conflicting PPT notices on the same date with unexplained personnel and role changes
**95.** Removal of the student ([redacted]) from the second PPT notice without justification

**96.** Omission of the 2:42 PM March 31 notice from the CT-SEDS system entirely
**97.** Continuous shifting of staff titles and program affiliations without clarification
**98.** Lack of clarity or documentation explaining removal of Jennifer Stewart
**99.** District proceeded with plans for a PPT meeting after receiving clear written notice of parental non-consent
**100.** Failure to provide proper written notice of the April 10 and May 6 PPT meetings in violation of IDEA and state law
**101.** Improper attempt to retroactively discuss and revise ESY eligibility after it was finalized in the IEP without parental input

These discrepancies not only violate the procedural safeguards guaranteed under IDEA but also impair the parents' ability to prepare meaningfully for the PPT meetings. They raise serious concerns about transparency, legal compliance, and the school district's overall documentation and notification practices.

**Procedural Violations and Denial of Parental Participation in the Development of [redacted] IEP**

**Failure to Incorporate Parent Input into the IEP**

On May 29, 2025, we submitted a written request explicitly requiring that our full parent input statement be inserted directly and verbatim into the "Parent and/or Student Input" section of [redacted] IEP. This request was necessary to ensure that our concerns—including the context surrounding our non-participation in the May 21, 2025 PPT meeting—were accurately documented in the IEP itself. We clearly stated that simply attaching an email to the student's file was not acceptable and that the input must be included without edits.

Despite this, the district failed to comply with our request. Ms. Stewart responded on June 4, 2025, stating only that "the email will be added to the file"—a response that did not meet our legal request. We followed up with a formal demand for written confirmation and a copy of the fully updated IEP, requiring a response by June 9, 2025 (7 business days from our original May 29 letter). As of today, the district has failed to provide the updated IEP as specifically requested and required. This ongoing failure to comply with our specific and legally mandated request for accurate IEP documentation constitutes a further and continuing procedural violation.

This failure to properly document parental input violates IDEA's requirements for meaningful parental participation. Parent concerns are not optional; they must be reflected in the IEP itself—not stored separately—so that transparency and full participation are ensured in the special education process.

**Misrepresentation of Parent Participation & Predetermination of Services**
Before May 21, 2025, we had formally and repeatedly notified the district that we did not consent to the proposed placement at Harborside Middle School, and that we would not attend

further PPT meetings about that placement. We made this position clear in our April 28, 2025 letter and again in follow-up emails on May 14 and May 16. We explicitly informed the district that we intended to resolve ongoing issues—including placement and ESY eligibility—through due process, not additional meetings.

Despite this, the district proceeded to hold a PPT meeting on May 21, 2025, and recorded in the IEP notes that "Ms. [redacted] and Mr. [redacted] did not attend the PPT," omitting all relevant context. This documentation misleadingly suggests disinterest or disengagement, when in fact we had already explained our non-attendance and provided clear legal reasoning. This misrepresentation directly undermines the transparency and integrity of the IEP process. Compounding this issue, the IEP already included a decision of "No" for Extended School Year (ESY) services at the time of that meeting—even though the district admitted that ESY eligibility had never been discussed by the IEP team. This constitutes clear predetermination in violation of IDEA, which requires such determinations to be made by the full team with parental involvement. The district's later attempt to retroactively "convene" a discussion on ESY cannot cure the initial procedural violation. While the district later revised the IEP to reflect ESY eligibility, this retroactive correction came only after our objections were raised and does not negate the initial procedural failure or its impact on [redacted] right to timely and appropriate services.

**Failure to Maintain Accurate Historical Parent Input**
In addition to the district's failure to integrate our May 29, 2025 statement, it also failed to carry over prior parent input from earlier IEPs, despite our explicit request. This omission erased critical historical context and disregarded longstanding parental concerns that remain unresolved. The IEP must function as a living document that reflects the full scope of team input, including a complete record of parental concerns across time.

**Conclusion: Pattern of Procedural Noncompliance**
The district has engaged in a persistent pattern of procedural noncompliance, including:
• Misrepresentation of parent participation in the IEP record;
• Denial of meaningful opportunity for parental input;
• Predetermination of placement and services;
• Failure to include previously submitted parent input; and
• Attempted retroactive correction of procedural violations.

These procedural violations, taken together, have significantly impeded our ability to participate meaningfully in [redacted] educational planning and have resulted in a denial of a Free Appropriate Public Education (FAPE) as required under IDEA.

**Improper School Interference with Parental Rights and Retaliation**

In early June 2025, school personnel unjustifiably inserted themselves into a private parental matter regarding my son's yearbook, resulting in emotional distress to my child and a direct

infringement on my parental rights. Despite my son expressing a clear desire to bring the yearbook home with me during my scheduled parenting time, his teacher confiscated it and stated it would go home with his mother—based on a preemptive email request made a full week earlier by the other parent. I formally requested the yearbook at school and was denied, even though the school later claimed it was not their decision where the yearbook would go.

On May 27, 2025, I reviewed email correspondence between [redacted] mother, Karen [redacted] and his teacher, Ms. Stuart, in which Ms. Stuart explicitly acknowledged that she would hold [redacted] yearbook at school for Karen to retrieve. This confirms that the teacher had prearranged a plan to honor one parent's request by withholding the yearbook from the other, despite it being during the father's scheduled parenting time. However, when I later raised concerns, Principal Amy Rizzo claimed that "Mrs. Stuart encouraged [redacted] and other students to keep their yearbooks at school yesterday so that they would have them available for today's yearbook signing." This statement directly contradicts Ms. Stuart's prior communication and raises serious concerns about the school's honesty, neutrality, and handling of sensitive family matters. The inconsistency suggests an effort to obscure the school's role in enforcing one parent's request over the other, contrary to the child's stated wishes and the principles of equitable parental involvement.

My son was also inappropriately involved by the principal during this interaction, who attempted to pressure him to comply with a predetermined plan, despite his visible distress. I raised concerns professionally; yet shortly afterward, the district's Director of Security, Mr. Nielsen, sent me a retaliatory email implying that my behavior was disruptive—without citing any documented incident or providing a factual basis. This message came after I had informed the principal that I intended to file for due process, underscoring its retaliatory nature.

Furthermore, Mr. Nielsen made these accusations without contacting me for my account of the events or conducting any fair inquiry—a profound denial of basic due process. His vague allegations, coupled with threats of potential "access restrictions," created a hostile and intimidating environment wholly inconsistent with professional or lawful conduct. These actions were not isolated but part of a broader pattern of retaliation, intimidation, and unequal treatment that has followed my protected advocacy for my child, in violation of both the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act.

## The District's Unreliable and Contradictory Assessment of [redacted] Behavioral and Social-Emotional Needs

The District's approach to assessing and reporting [redacted] behavioral and social-emotional progress has been alarmingly inconsistent and unprofessional, raising serious questions about the school's capacity to accurately understand and meet his needs within the current environment. This fundamental flaw in assessment directly impedes the provision of a Free Appropriate Public Education (FAPE).

During the school year, progress reports concerning [redacted] presented a bewilderingly contradictory picture. On one hand, he was described in glowing terms: "a sweet, kind and enthusiastic boy," a "pleasure to have in my fifth grade classroom," who "enjoys sharing his

answers to our social emotional questions," and whose "classmates are very supportive and caring towards him." These positive affirmations paint a picture of a well-adjusted and engaged student.

Yet, juxtaposed immediately with these positive descriptors were equally strong, but vaguely defined, negative observations. [redacted] was simultaneously depicted as demonstrating "refusal to listen to adults," leading to a stated "safety issue" for himself and his classmates. He was noted for "inappropriate interactions with his classmates," an "increased negative attitude," and being "very disrespectful to those around him who are trying to support him." These concerning labels, particularly "safety issue" and "disrespectful," were presented without any specific, objective examples of the behavior itself. The reports offered no details on what constituted "inappropriate interactions" or how his "refusal to listen" manifested, leaving the District's claims unsubstantiated and impossible to verify or address effectively. Furthermore, despite these serious concerns, the school's proposed interventions were limited to vague "reminders and discussions," failing to outline specific, individualized strategies or professional support being implemented to address behaviors explicitly labeled as a "safety issue."

The unreliability of these assessments was thrown into even sharper relief by [redacted] final report card for the school year. Received on June 11, 2025, this final report offers an overwhelmingly positive and unqualified assessment: "[redacted] is a wonderful boy, and I am happy to have had him in my class. I know you will be very successful in middle school." The dramatic and unexplained shift from significant behavioral concerns (including stated safety risks and disrespect towards adults) to such unequivocal praise, without any documented interventions or measurable progress noted, undermines the integrity of the District's entire evaluation process. It demonstrates a profound lack of consistency and professionalism in how [redacted] needs are identified, monitored, and reported.

This pattern of inconsistent and unreliable assessment by the District directly impacts its ability to provide [redacted] with FAPE. If the school cannot accurately and objectively identify his challenges, document his progress, and implement targeted, data-driven interventions, it cannot genuinely meet his unique needs. This fundamental flaw in assessment contributes significantly to the unsuitability of the current public school environment for [redacted] highlighting the necessity of outplacement to ensure he receives a consistent, professionally evaluated, and appropriate education.

# Summary of Concerns and Violations

The Milford School District has unequivocally failed to provide [redacted] with a Free Appropriate Public Education (FAPE) and has committed several, material procedural violations under the Individuals with Disabilities Education Act (IDEA), directly impacting [redacted] educational benefit and the parents' ability to participate meaningfully in the IEP process.

### A. Denial of FAPE – Substantive Harms

The district's actions and inactions have directly resulted in a lack of meaningful educational benefit for [redacted] causing emotional distress, regression, and impeding his academic and social-emotional development.

**Failure to Address Emotional and Behavioral Needs Appropriately:**

- **Teacher Misconduct and Emotional Harm:** Ms. Adinolfi's documented verbal abuse ("worst student," "hates him," "doesn't like him anymore") and punitive actions (keeping him from lunch, grabbing his work, instructing him to "just keep reading" while on her phone) caused significant emotional distress and interfered with his learning environment (**Points 2, 3, 4, 14**). Ms. Curria's "2nd grade math!" comment (**Point 30**) similarly caused low self-esteem. Ms. Truscello's repeated yelling, blaming, and threats of permanent placement at Mathewson deeply frightened [redacted] and caused him to come home crying (**Point 50**). The district's failure to adequately address this misconduct and its dismissive responses (e.g., Ms. Anziano attempting to "flip the script" without denying the teacher's conduct - **Point 12**; Ms. Rizzo minimizing forced calls - **Point 60**) demonstrate a profound lack of understanding of, or disregard for, [redacted] emotional vulnerability and the impact of staff behavior on a student with a disability.
- **Inappropriate Behavioral Interventions and Shaming:** The district's approach to [redacted] behaviors has been punitive and counterproductive. The isolation to the nurse's station for the remainder of the year and denial of regular bathroom access (**Point 18**) constitutes an overly restrictive placement change without proper process. Teachers repeatedly telling [redacted] he "can't be trusted" (**Points 25, 28, 29**) are shaming tactics, not therapeutic interventions, directly violating principles of positive behavioral supports.
- **Forced Coercion and Emotional Abuse:** [redacted] being "forced to call home against his will" on four separate occasions and "instructed to say things he did not do" (**Points 52, 61**) is a serious concern of emotional abuse and directly contrary to any positive behavioral support strategy. The district did not obtain parental consent or include this practice in a structured behavior plan, raising serious legal and ethical concerns. The district's subsequent attempt to "minimize the seriousness" (**Point 60**) of these incidents demonstrates a complete failure of responsibility and accountability.
- **Neglect of Self-Harm Statements:** The repeated failure to provide the C-SSRS after [redacted] self-harm comments (**Points 26, 52, 62**) is a serious procedural violation and demonstrates a profound disregard for [redacted] safety and mental health needs, leaving him vulnerable and unsupported. This lack of response was concerning, particularly as these comments occurred after he reported continuing mistreatment.
- **Failure to Implement Sensory Diet:** The district's failure to implement a sensory diet, despite being aware of [redacted] sensory regulation needs, demonstrates a neglect to proactively address his unique needs and contribute to his overall well-being and ability to manage focus and behavior (**Point 84**).

**Inadequate Educational Benefit and Progress:**

- The district's claims of "increasingly difficult" work leading to escalating behaviors (**Points 36, 37**) directly contradict their own prior positive academic updates (**Point 27**) that [redacted] was "making progress towards mastering" his IEP goals. This inconsistency

undermines the credibility of the district's assessment of [redacted] academic needs and suggests a pretext for changing his placement.

- The abrupt and unilateral dismantling of the highly successful ticket system and discontinuation of communication logs (**Point 16**) directly removed effective supports and vital parental oversight, impeding [redacted] progress and the district's ability to monitor his needs. This lack of proactive support directly contributed to [redacted] reported escalation of behaviors.
- The complete lack of a support plan for [redacted] during the BCBA's baseline data collection in September 2023, ignoring previously proven effective strategies, left him vulnerable and demonstrated a reactive, rather than proactive, approach to his needs (**Point 17**).
- The district's failure to recommend academic services as part of [redacted] Extended School Year (ESY) programming, despite claiming growing academic difficulties in May 2024, further reinforces their failure to provide adequate support and appropriate planning (**Point 85**).
- The continued reports of [redacted] missing learning sessions (**Point 2**) and the alleged triggering of "out-of-character" behaviors (**Point 51**) demonstrate an environment not conducive to learning and a failure to provide robust academic and social-emotional support aligned with FAPE.

## B. Denial of FAPE – Procedural Violations (Materiality and Impact)

Numerous procedural violations have occurred, which are not merely technical infractions but have materially interfered with [redacted] right to FAPE and his parents' right to meaningful participation in the IEP process.

**Failure to Provide Records and Violations of Parental Access Rights:**

- Jennifer Stewart's repeated refusal to provide requested data, including the Columbia Risk Assessment (Points 59, 68, 75), despite multiple formal requests and assurances that "all records had already been provided," significantly obstructed and delayed parental access to critical information, impeding timely decision-making. This obstruction directly impacted parental ability to make informed decisions about [redacted] education and well-being.
- The discriminatory demand for the father to sign an unnecessary release form, while not making the same demand of the mother (**Points 48, 57**), is a clear act of discriminatory practice, creating undue burden on a parent exercising their rights.
- The failure to meet deadlines for providing a complete response to record requests (**Point 83**), including outstanding meeting notes and a clear timeline for fulfillment, demonstrates a systemic failure in upholding transparency and procedural safeguards.
- The district has failed to maintain accurate, consistent, and transparent documentation of incidents involving [redacted] as evidenced by conflicting log entries, delayed disclosures, vague language in place of [redacted] name, and the absence of supporting materials (**Point 82**). This undermines trust in the integrity of the documentation and suggests possible fabrication or exaggeration of events.

- **Omission of Official Records from CT-SEDS:** The complete omission of a formal PPT notice (March 31, 2025, 2:42 PM) from the CT-SEDS system, despite having been officially sent and received, represents a clear failure to maintain proper educational records and ensure accurate archiving, directly impacting transparency and accountability (**Point 92**).

**Denial of Meaningful Parental Participation:**

- **Unilateral Scheduling of PPTs and Inadequate Notice:** The district unilaterally scheduled [redacted] annual PPT meeting without parental input (**Point 67**), and repeatedly pressured parents to meet (**Point 33**), violating their right to a mutually agreed-upon time. The insistence on a meeting with less than 5 school days' notice (**Point 31**) is a direct procedural violation.
- **Combined PPT Meetings and Lack of Substantial Discussion:** The district disregarded repeated parental requests to hold separate meetings for outplacement and annual review, instead unilaterally scheduling a combined meeting (**Points 69, 70**). This decision ignored the distinct nature of these discussions and violated the parents' legal rights under IDEA to have them addressed independently. Furthermore, the district promised a "substantial discussion" regarding outplacement at the January 16 PPT but failed to deliver any such discussion (**Point 74**).
- **Failure to Provide Proper Notice for Transition and Retroactive Documentation:** The district failed to provide timely written notice that transition planning would be discussed at the January 16 PPT, and later retroactively altered documents to cover this violation (**Points 72, 81**). This prevented meaningful parental input on a legally required component of the IEP.
- **Improper IEP Documentation:** Jennifer Stewart's refusal to remove an improper prefatory statement in the parent/student input section of the IEP, falsely claiming the mother had sole educational decision-making authority (**Point 80**), constitutes a clear procedural violation that misrepresents parental input and undermines their role.
- **Hostile PPT Environment:** The hostile atmosphere at the March 2025 PPT meeting, characterized by interruptions, dismissals of concerns, raised voices, and threats to terminate the meeting (**Point 64**), directly hindered the father's ability to advocate effectively and denied meaningful parental participation. The refusal to engage in transparent discussion and the accusations of "misinterpreting" communications further highlight this obstruction.
- **Failure to Address ESY Services Appropriately:** The district's arbitrary marking of ‘No’ for ESY eligibility without documented discussion or evaluation of his needs at the January 2025 PPT constitutes a significant procedural violation (**Point 85**). Their subsequent attempt to retroactively correct this error by proposing a new meeting does not erase the initial violation and has created financial hardship and scheduling conflicts for the family, **demonstrating** a lack of procedural integrity and transparency (**Points 86, 87**).
- Additionally, on April 28, 2025, the district acknowledged in writing that [redacted] ESY eligibility had not been discussed during his annual review and proposed a new PPT meeting for May 6, 2025, to retroactively address the matter. However, [redacted] finalized IEP already listed “No” for ESY services—an official determination that should not have

been made without parental input. The district's stated intention to hold a meeting after the IEP was completed, in order to revisit a key eligibility decision, reflects an improper attempt to cure an earlier procedural violation. This retroactive approach does not comply with IDEA's requirements for timely and participatory planning. Moreover, the parents explicitly rejected the proposed May 6 meeting in writing, stating that no further PPTs were warranted and that any unresolved matters would be addressed through due process. Despite this clear objection, the district proceeded to maintain the meeting in CT-SEDS and implied it would move forward regardless of consent. This conduct demonstrates a disregard for parental input and violates the procedural safeguards required by IDEA.

- **Inconsistent PPT Notices and Documentation:** The issuance of multiple conflicting PPT notices for the same meeting, rapid and unexplained changes to participant lists and roles (including the removal of the student's name), and continuous shifting of staff titles without clarification (**Points 89, 90, 91, 93, 94, 95, 97, 98, 99**) directly undermine the parents' ability to understand who will be at the meeting and what roles they will play, thereby impairing meaningful preparation and participation in the IEP process.

**Failure to Respond to Complaints and Lack of Transparency:**

- The district consistently refused to answer parental questions and concerns via email (**Points 34, 43, 44, 56, 59, 63, 64, 66, 69, 71, 73, 77**), demonstrating a pattern of non-responsiveness and undermining the collaborative spirit of IDEA.
- The failure to provide a written response or acknowledgment to a formal written complaint within two months (**Point 79**) is a clear procedural violation and demonstrates a systemic failure to engage in good-faith communication and accountability.
- The district's shifting and inconsistent explanations regarding incident logs, missing entries, and belated surfacing of allegations (**Points 76, 77**) demonstrate a severe lack of transparency and undermine the accuracy and reliability of [redacted] official records.
- The initial acknowledgment of communication shortcomings in May 2023 (**Point 88**) is a critical admission, yet the district has consistently failed to follow through on its commitment, exacerbating issues surrounding [redacted] educational planning and FAPE denial.

**Denial of Independent Educational Evaluation (IEE):**

- The district's sidestepping of the father's IEE request by falsely claiming the mother had sole educational decision-making authority (**Point 78**), coupled with their failure to provide a list of providers or file for due process to challenge the IEE, is a direct and egregious violation of a parent's right to an independent assessment. This denied [redacted] the opportunity for an independent assessment of his needs and reflects a pattern of overriding parental rights.

**Unilateral Change of Placement:**

- The punitive isolation of [redacted] to the nurse's station and the denial of access to the regular bathroom for the remainder of the year (**Point 18**) constituted a significant change in his educational placement and environment without proper notice, PPT meeting, or

parental consent, a clear procedural violation that fundamentally altered his access to the general education environment. This action was taken only after the fact, despite concerns about lack of monitoring and website blocking.

## C. Systemic Pattern of Reactive, Negligent, and Retaliatory Conduct

The issues detailed above expose a pervasive and deliberate pattern of neglect, retaliation, and legal noncompliance by Milford Public Schools. This is not a matter of accidental mistakes or bureaucratic disorganization — it is a systemic failure to meet [redacted] educational, emotional, and behavioral needs as required under the Individuals with Disabilities Education Act (IDEA). The district has repeatedly acted only after harm occurred, rather than proactively providing the supports necessary to prevent it, as the law mandates.

**Parents currently assert that the evidence strongly suggests a pervasive pattern of retaliation by the Milford School District against [redacted] and his parents for their consistent and diligent advocacy on his behalf. This retaliation has manifested as:**

- **Teacher Misconduct and Shaming:** Ms. Adinolfi's statement ("Do not go home and tell your daddy that I was eating peanut butter and apple in class ever again!") immediately following parental complaints (**Point 11**), Ms. Curria's humiliating "2nd grade math!" comment (**Point 30**) after previous reports against her, and Ms. Truscello's repeated yelling, blaming, and threats of permanent placement at Mathewson (**Point 50**) are direct examples of actions **currently asserted by parents as retaliation** designed to punish [redacted] for his parents' actions and to induce fear. Ms. Truscello's repeated admonitions to "not go home and tell his dad" (**Point 28**) are also indicative of an attempt to conceal inappropriate interactions.
- **Systemic Program Changes and Undermining Support:** The abrupt and unilateral removal of the highly successful ticket system and communication logs (**Point 16**) directly after complaints about Ms. Adinolfi, and the sudden, aggressive push for a placement in the Mathewson [redacted] program (previously deemed inappropriate) (**Points 32, 35**), are **currently asserted by parents as adverse actions** taken in response to protected parental activity. The district's fabricated explanations for this shift (**Points 36, 37**) and dismissal of concerns by attributing changes to a "miscommunication and misunderstanding" (**Point 41**) further support a retaliatory motive.
- **Discriminatory Treatment in Record Requests:** Jennifer Stewart's discriminatory demand for the father to sign an unnecessary release form for records, while not requiring the same from the mother (**Points 48, 57**), is **currently asserted by parents as a clear act of retaliation** against a specific parent advocate, designed to create obstacles and deny equal access to information.
- **Forced Coercion and Fabricated Allegations:** The alleged triggering of new, "out-of-character" behaviors (**Point 51**) after parental complaints, coupled with [redacted] being forced to make false phone calls home (**Points 52, 61**), are **currently asserted by parents as severe forms of retaliation** designed to create a false, negative narrative about [redacted] behavior and to deter further advocacy. Ms. Rizzo's unfounded allegations (**Point 53**) against [redacted] in response to parental reports further solidify this pattern. The

district's subsequent portrayal of [redacted] in a negative light exacerbated his struggles (**Point 53**).

- **Obstruction of Information and Communication:** The consistent refusal to provide records, answer questions, and respond to formal complaints (**Points 34, 43, 44, 56, 59, 63, 64, 66, 69, 71, 73, 77, 79**) serves to impede parental oversight and participation, and is **currently asserted by parents as a punitive response** to persistent advocacy. The retroactive creation/alteration of documents (**Points 72, 75, 81**) is a deliberate attempt to cover up procedural failures in response to scrutiny.
- **Hostile PPT Environment and Discrediting Tactics:** The district's conduct at the March 2025 PPT, including interruptions, dismissals, raised voices, and attempts to discredit the father's valid concerns by accusing him of "misinterpreting" communications and trying to limit discussion to only non-email related topics (**Point 64**), are **asserted by parents as retaliatory tactics** aimed at silencing and frustrating parental advocacy. The subsequent ignoring of the father's email outlining concerns further demonstrates a lack of accountability following this hostile interaction (**Point 64**).

The districts escalating violations — including delayed and incomplete responses, falsified and **inconsistent** documentation, exclusion of parental participation, retaliation against advocacy, and the failure to implement established supports — reflect a deeply rooted disregard for IDEA's procedural safeguards and substantive requirements. The district's actions have caused [redacted] significant and lasting harm. Immediate, decisive intervention is required to address these ongoing violations and to ensure [redacted] receives the Free Appropriate Public Education (FAPE) to which he is legally entitled.

**Requested Relief**

We request an out-of-district placement as the central and necessary remedy for the district's ongoing failure to provide [redacted] with a Free Appropriate Public Education (FAPE) as required under the Individuals with Disabilities Education Act (IDEA).

- **Outplacement:** An order for an appropriate out-of-district placement for [redacted] beginning in 6th grade, as the current placement has failed to meet his educational, behavioral, and emotional needs. We further request that the Milford School District fully fund all tuition and transportation costs associated with this placement. The district has demonstrated a clear and ongoing inability to provide [redacted] with FAPE within its current structure, as evidenced by a documented pattern of misconduct, retaliation, and inadequate support.
- **Compliance with IDEA Following Outplacement:** A directive ensuring that the Milford School District complies with all procedural and substantive IDEA requirements related to [redacted] transition to and continued education in the out-of-district placement. This includes appropriate transition planning, meaningful parental participation in the development and review of [redacted] IEP at the new placement, and full adherence to all procedural safeguards to ensure his rights remain fully protected.

- **Finding of FAPE Violation:** A formal determination that the Milford School District has failed to provide [redacted] with FAPE, in violation of IDEA, due to persistent procedural violations, retaliatory actions, and failure to meet his individualized educational needs.

**Conclusion**

The Milford School District's actions demonstrate a systematic and profound failure to provide [redacted] with FAPE. This failure is evidenced by substantive inadequacies in addressing his emotional and behavioral needs, a clear and documented pattern of material procedural violations that have undermined parental rights, and a disturbing trajectory of direct retaliation against a vulnerable student and his advocating family. The district's consistent lack of transparency, refusal to engage in good-faith communication, and the harm inflicted upon [redacted] necessitate the full scope of the requested relief to safeguard his legal right to a Free Appropriate Public Education and to ensure accountability for these egregious IDEA violations.

Dated: June 12, 2025

Respectfully
Robert [redacted]

**STATE OF CONNECTICUT**
**DEPARTMENT OF EDUCATION**
**SPECIAL EDUCATION DUE PROCESS HEARING**

In the Matter of:

Robert [redacted] Pro Se
v.
Milford BOE

Case No. 25-0686

October 16, 2025

VIA E-MAIL

To:

Patrick L. Kennedy, Hearing Officer
P.O. Box 8078
Manchester, CT 06040-0078
(860) 644-6522
plkennedyesq@aol.com

Herbert Rosen, Esq
Berchem Moses PC
75 Broad Street
Milford, CT 06460
hrosen@berchemmoses.com

From:

[redacted] net

# Motion for Stay of Proceedings

## I. Procedural Due Process Violations

1. The Father in the above-captioned matter respectfully moves for a stay of proceedings due to serious procedural due process violations and unresolved concerns regarding impartiality.
2. On September 11, 2025, the Hearing Officer advised the Father via email that exhibits and witness lists should be submitted "at least five business days before a hearing in which you wish to submit the exhibits or provide the testimony." This guidance made no mention of cross-examination. The Father relied on this instruction in preparing materials and reasonably understood that the deadline applied to exhibits used in presenting his own case.
3. However, during the hearing on September 24, the Hearing Officer imposed a stricter interpretation, stating for the first time that the five-day deadline applied to all uses of exhibits, including cross-examination. This change was not communicated in advance and contradicted the original guidance. As a result, the Father was barred from using exhibits to cross-examine the District's witness, despite having complied with the stated deadline.
4. The Father did not prepare cross-examination materials for the first day of hearing because he reasonably understood, based on the Hearing Officer's scheduling guidance, that the District would present its case first and that the Father's testimony would occur later. The procedural shift — including the enforcement of exhibit deadlines in a manner that barred the use of exhibits for cross-examination — created a prejudicial surprise and impaired the Father's ability to challenge the District's case.
5. When the Father indicated that the witness would be recalled during his own case, the Hearing Officer later stated — in his written denial of the Father's motion for recusal — that the District would not be required to produce the witness again due to what he described as the Father's "deliberate, bad-faith refusal" to file exhibits. This characterization was unsupported by the record and raises serious concerns about impartiality and fairness. The accusation of "deliberate, bad-faith refusal" was made without any supporting evidence and ignored the Father's reliance on the Hearing Officer's original guidance.
6. In his written denial of the Father's recusal motion, the Hearing Officer stated that he had ruled the Father was not required to file exhibits until five business days before the hearing in which he intended to use them, including using them for purposes of cross-examination. However, this language does not appear in the September 11 email, and the inclusion of cross-examination was introduced for the first time during the hearing. This retroactive reinterpretation misrepresents the procedural record and further undermines the fairness of the proceedings.
7. These actions constitute violations of procedural due process under the Individuals with Disabilities Education Act (IDEA), including the right to present evidence, confront and cross-examine witnesses, and receive a fair hearing before an impartial officer. The contradictory procedural guidance, the denial of cross-examination, and the unsupported accusation of bad faith undermine the fairness of the hearing.

## II. Irreparable Harm and the Need for a Stay

8. On September 24, 2025, the Father submitted a written request for clarification regarding the ability to recall the District's witness, Ms. Truscello, during his own case presentation. The request was made in good faith following the Hearing Officer's statement during the hearing that the Father would not be permitted to question the witness about exhibits introduced during his own case. No response has been received.
9. The absence of a response further impairs the Father's ability to prepare and present his case, reinforcing the need for a temporary stay to address these unresolved procedural issues. The inability to cross-examine the District's witness and present responsive exhibits has already impaired the fairness of the proceedings. A stay is necessary to prevent further prejudice and to ensure the Father's due process rights are protected.
10. Continuing the hearing under these compromised conditions would cause irreparable harm to the Father's right to a fair and impartial adjudication. The denial of cross-examination and the inability to present exhibits directly affect the integrity of the evidence and the ability to challenge testimony. Once the hearing proceeds under these constraints, the damage to the record and the fairness of the process cannot be reversed. This procedural breakdown directly impairs the Father's ability to challenge the District's evidence, which in turn compromises the child's right to a Free Appropriate Public Education (FAPE).

## III. Relief Requested

11. This motion seeks a temporary stay to allow for resolution of procedural concerns that directly affect the fairness and integrity of the hearing. It is not intended to delay proceedings, but to preserve judicial economy and avoid the risk of reversal or remand due to unresolved due process violations.
12. The Father respectfully submits that the requested stay meets the standard for temporary relief, including the presence of irreparable harm, serious procedural violations, and the need to preserve the integrity of the hearing process. Ensuring a fair hearing process serves not only the Father's rights but the public interest in protecting a child's access to a Free Appropriate Public Education.
13. Accordingly, the Father respectfully requests that proceedings be stayed pending resolution of the procedural objections raised in this motion. While the Hearing Officer retains authority to rule on motions, the Father submits that the issues raised — including the denial of cross-examination and the accusation of bad faith — warrant review by an impartial authority outside the current hearing. The Father intends to seek review of these concerns through appropriate channels, including the Connecticut State Department of Education's complaint resolution process or judicial review under the Individuals with Disabilities Education Act, if necessary. A temporary stay is essential to preserve the integrity of the hearing and prevent further prejudice.

## Attached for Review

- **Exhibit A –** Emails from Hearing Officer (Sept 11–12, 2025) regarding exhibit deadlines and anticipated scheduling
- **Exhibit B** – Transcript Excerpt (September 2025 Hearing) This excerpt documents the procedural contradiction regarding exhibit deadlines, the denial of cross-examination, and the Father's stated intent to recall the witness.
- **Exhibit C –** Denial of the Father's motion for recusal, including the accusation of bad faith, which raises impartiality concerns.
- **Exhibit D –** September 24, 2025 letter requesting clarification regarding witness recall, showing the Father's good-faith effort to resolve procedural uncertainty.

This motion is submitted respectfully and in good faith to preserve the integrity of the hearing process

Respectfully submitted,

Robert [redacted]

Exhibit A

Re: RK vs Milford BOE 25-0686

From: plkennedyesq@aol.com (plkennedyesq@aol.com)
To: hrosen@berchemmoses.com; [redacted]yahoo.com; [redacted]verizon.net
Date: Tuesday, September 16, 2025 at 08:47 PM EDT

The regulation only bars exhibits from being used if they are not produced five business days in advance of the specific date that they are to be used. The attorneys as a matter of courtesy and administrative efficiency generally do a full exhibit exchange in advance of the hearing. Since the District is presenting first I would allow it to have the same right as parties going first in other types of legal proceedings to present rebuttal evidence after the Parents conclude their case.

Patrick L. Kennedy
Hearing Officer

> On Saturday, September 13, 2025 at 11:30:40 AM EDT, Robert <[redacted]verizon.net> wrote:
>
> > Attorney Rosen,
> >
> > Based on guidance from Hearing Officer Kennedy and the applicable regulations—34 C.F.R. § 300.512 and Conn. Agencies Regs. § 10-76h-12—exhibits must be submitted at least five business days prior to the hearing date on which they will be used.
> >
> > Since I will not be presenting my case or testimony until the October hearing date, and I do not intend to introduce exhibits during the district's presentation, my submission deadline will be calculated from that October date.
> >
> > If you believe otherwise, I welcome clarification from the Hearing Officer.
> >
> > Robert [redacted]
> >
> > On Sat, Sep 13, 2025 at 11:12 AM, Herbert Z. Rosen <hrosen@berchemmoses.com> wrote:
> >
> > > Good Morning,
> > >
> > > The District expects that it will require three days to present its case. However, we expect to receive the Complainants' exhibits at least five days prior to September 24, pursuant to 34 C.F.R. Sec. 300.512 and Regs. Conn. State Agencies Sec. 10-76h-12.

Although we will be presenting witnesses first, our understanding is that the Complainants would not be permitted to introduce any of their own evidence through cross-examination of our witnesses if we do not receive those exhibits in advance of the hearing. Further, it would be prejudicial towards the District's good faith attempts to mount a defense to the Complainant' claims if we were unable to view any of the records or exhibits that the Complainants are basing their claims on in advance.

Respectfully submitted,
Herbie Rosen

**Herbert Z. Rosen**
**Berchem Moses PC**

75 Broad Street Milford, CT 06460

(203) 783-1200 • www.berchemmoses.com

hrosen@berchemmoses.com

CONFIDENTIALITY NOTICE: This email transmission (and/or the attachments accompanying it) may contain legally privileged and confidential information, and is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, disclosure, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please promptly notify the sender by reply email and destroy the original message.

---

**From:** plkennedyesq@aol.com <plkennedyesq@aol.com>
**Sent:** Friday, September 12, 2025 5:17 PM
**To:** Karen [redacted] <[redacted]yahoo.com>; Herbert Z. Rosen <hrosen@berchemmoses.com>; Robert <[redacted]verizon.net>
**Subject:** Re: RK vs Milford BOE 25-0686

I think it unlikely that the district will take less than a day to present its case but, again, I suggest that you consult with the district's attorney concerning anticipated scheduling.

Patrick L. Kennedy
Hearing Officer

On Friday, September 12, 2025 at 05:07:15 PM EDT, Robert <[redacted]verizon.net> wrote:

> At the prehearing conference, you indicated that the respondent will present their case first. Given that the hearing begins on September 24, could you please confirm whether that day is expected to be dedicated entirely to the respondent's presentation?
>
> Understanding this will help me determine when I am likely to begin presenting my case and ensure

Exhibit A

that my exhibits are submitted in accordance with the five-business-day rule.

Thank you for your guidance,

Robert

On Fri, Sep 12, 2025 at 5:00 PM, plkennedyesq@aol.com <plkennedyesq@aol.com> wrote:

I cannot. The parties may wish to confer on how long they expect their respective cases to take.

Patrick L. Kennedy
Hearing Officer

On Thursday, September 11, 2025 at 06:03:24 PM EDT, Robert <[redacted]verizon.net> wrote:

I understand the other party will present their case first on September 24. Could you please confirm which hearing date I'll be scheduled to begin presenting my case and providing testimony? I want to make sure my exhibits are submitted at least five business days in advance of that date.

Thank you.

Robert.

On Thu, Sep 11, 2025 at 5:06 PM, plkennedyesq@aol.com <plkennedyesq@aol.com> wrote:

If you are using the US Postal Service you should send my copies to PO Box 8078, Manchester, CT 06040-0078. If you are using a private courier that cannot deliver to a postal mail box you may send them to 132 Strawberry Lane, Manchester, CT. You should submit exhibits and witness lists at least five business days before a hearing in which you wish to submit the exhibits or provide the testimony. (This usually means a week, but keep in mind that Columbus Day would push back the deadline for the following hearing one more day.)

Patrick L. Kennedy
Hearing Officer

On Thursday, September 11, 2025 at 04:49:11 PM EDT, Robert <[redacted]verizon.net> wrote:

I understand your preference for hard copies during the hearing, and I will submit a hard copy packet of my exhibits directly to you. Could you please confirm the appropriate mailing address for delivery, as well as the deadlines for both the hard copy and electronic submissions?

I'd also like to confirm whether it would be acceptable to provide the opposing party

Exhibit A

with the exhibits in electronic format only, rather than hard copy. I want to ensure I'm complying with all procedural requirements while also streamlining the process for all parties.

Please let me know if this arrangement is acceptable or if hard copies must be provided to both parties.

Exhibit A

On Thu, Sep 11, 2025 at 4:37 PM, plkennedyesq@aol.com
<plkennedyesq@aol.com> wrote:

I really need the hard copies as I sometimes have some computer problems with large files and toggling through exhibits gets in the way of running the hearing. (If we were having an in-person hearing I would not have a computer there at all, only a notepad.) You may want to consider whether you have too many exhibits, particularly if the exhibits go back long before the events which are the subject of the complaint.

Patrick L. Kennedy
Hearing Officer

On Thursday, September 11, 2025 at 04:11:34 PM EDT, Robert
<[redacted]verizon.net> wrote:

Dear Officer Kennedy,

I've prepared all of my exhibits as individual PDF files and organized them with an index, as required for electronic submission. Because of the substantial volume of documents involved, preparing and submitting hard copies presents a significant challenge. I'd like to respectfully request an exemption from the hard copy submission requirement.

If this modification is acceptable, I will submit the full set of exhibits electronically in a ZIP file, clearly labeled and indexed, and confirm receipt with all parties. I believe this approach would maintain clarity and accessibility while ensuring timely delivery.

Thank you very much for your time and consideration, and please let me know how best to proceed.

Robert.

On Thu, Sep 11, 2025 at 3:48 PM, plkennedyesq@aol.com
<plkennedyesq@aol.com> wrote:

Mr [redacted] Ms [redacted] & Attorney Rosen,

Attached please find a set of guidelines for zoom hearings.

Patrick L. Kennedy
Hearing Officer

-- WARNING: FRAUD ALERT. If you receive an e-mail appearing to be from this office which requests

Exhibit A

> that you wire or otherwise transfer funds to any party, you must confirm the request and any corresponding instructions via telephone before you initiate any wire or other transfer. PLEASE CONFIRM BY CALLING THE ORIGINATOR OF THE EMAIL, USING PREVIOUSLY KNOWN CONTACT INFORMATION, PRIOR TO WIRING OR OTHERWISE TRANSFERRING FUNDS.

**That's your testimony?**

**A. Correct.**

**Q. So, would you consider his behaviors -- when you use the term "behavior," would you consider that a negative thing?**

**A. No.**

**ATTORNEY ROSEN: Objection. Relevance?**

**THE WITNESS (Truscello): I'm sorry.**

**THE HEARING OFFICER: I don't really -- I'll sustain the objection.**

**I didn't really understand that question.**

**ROBERT [redacted] Well, we received an e-mail from Ms. Truscello that -- a communication from her that when we use the term "behavior," it's not a negative thing.**

**ATTORNEY ROSEN: Objection. This is testimony and argumentative.**

**THE HEARING OFFICER: Yeah. Yeah, that's sustained.**

**ROBERT [redacted] Okay. So, that -- that will come up in the future, understanding that.**

**ATTORNEY ROSEN: I just want to note this Witness is made available now. So, to say this comes up in the future, the Witness is here today for cross-examination.**

**ROBERT [redacted] Well, as well, too, when I have my --**

when it comes to our testimony I'm going to have more questions and I'm going to need the Witness, too. So, it doesn't just --

THE HEARING OFFICER: No, that's not how it works. See, that -- and anything, anything you wanted to cross-examine, and anything you wanted to use for cross-examination, that's why you should have had it in five days ago.

ROBERT [redacted] But you told us specifically in an e-mail, for the record, Mr. Officer Kennedy, that we wouldn't be testifying today.

I'm just cross-examining.

THE HEARING OFFICER: Well, yeah. But --

ROBERT [redacted] (Unintelligible) --

THE HEARING OFFICER: Sir?

ROBERT [redacted] But I'm being cut off, sir. (Unintelligible) --

THE HEARING OFFICER: Sir?

ROBERT [redacted] Can I be -- please --

THE HEARING OFFICER: Let me --

ROBERT [redacted] Sir, I'm being cut off. Can I please not be cut off, please, sir? I would like to get this on the record.

We have an e-mail from you specifically stating that, no, you're not going to be getting

your testimony in, especially the first day. We have that because the District will be going and then our testimony will be coming up.

So, if this is considered the testimony, that's not what we were told in the e-mail from you prior to that. So, that's why the exhibits --

THE HEARING OFFICER: Sir?

ROBERT [redacted] -- were not sent. It's five days before --

THE HEARING OFFICER: Sir?

ROBERT [redacted] -- we present. I'm not presenting my case now, sir.

THE HEARING OFFICER: Sir, that includes, if you want to use exhibits, that includes for any purpose, including cross-examination, that you know, and you chose not to have them in by five days before --

ROBERT [redacted] So, you're saying I can't use my exhibits to bring all this into evidence?

THE HEARING OFFICER: No, not today.

ROBERT [redacted] Well, not today. But then in the future then I can bring them?

THE HEARING OFFICER: You can, but she won't. But you know she won't be here to cross-examine, so.

ROBERT [redacted] But they can still come in as

Exhibit C

**CONNECTICUT STATE DEPARTMENT OF EDUCATION**
**RULING RE MOTION FOR RECUSAL**

VIA E-MAIL

Date: October 3, 2025

**Re: RK vs Milford BOE**

Case No.: 25-0686

To:
Mr Ro [redacted]
[redacted]
Shelton, CT 06484
[redacted]verizon.net

Ms Karen [redacted]
[redacted] Drive
Milford, CT 06461
[redacted]yahoo.com

Herbert Rosen, Esq
Berchem Moses PC
75 Broad Street
Milford, CT 06460
hrosen@berchemmoses.com

From:
Patrick L. Kennedy, Hearing Officer
P.O. Box 8078
Manchester, CT 06040-0078
(860) 644-6522
plkennedyesq@aol.com

This ruling is directed to the Motion for Recusal filed by the Father in the above-captioned case on September 29, 2025.

The motion asserts three grounds for recusal. The first is that, when the Father became unruly and insisted on talking over the Hearing Officer, he was reminded that his case could be dismissed with prejudice as a sanction.[1] Thereafter, the Father's conduct improved somewhat and the hearing was able to continue without any dismissal needing to be issued. The administrative hearing process could not function if hearing officers did not use the tools at their disposal to curb the disruptive behavior of pro se litigants (or attorneys).

The other two grounds are mere disagreements with procedural rulings. The undersigned Hearing Officer ruled that the Father was not required to file exhibits until five business days prior to the hearing in which he intended to use them, including using them for purposes of cross-examination. The Father apparently disagrees with the second part of the preceding sentence.[2] When the Father was limited in his ability to cross-examine the District's witness because he not filed the exhibits that he needed to, he indicated that he would recall the witness for his own case. The undersigned Hearing Officer indicated that the District would not be required to produce a witness, with its attendant disruption of the school system, based on the Father's deliberate, bad-faith refusal to file the exhibits that he needed at the time that he needed them.

---

[1] It should be noted that administrative hearing officers, unlike judges, do not have contempt powers.

[2] The District disagrees with the first part.

Exhibit C

Disagreement with procedural rulings or other matters involving the conduct of hearings is not grounds for recusal, it is grounds for appeal. If the ultimate ruling is not in the Parents' favor, they can file an administrative appeal with the appropriate court.[3] The Father has not alleged that the undersigned Hearing Officer has any personal of financial interest in the outcome of this case or has any friends or relatives involved in it. If there is no true conflict of interest, a demand for recusal is not proper based on mere disagreement with rulings.

Finally, it appears that the Father filed a recusal motion against a prior hearing officer in this case. Moving to disqualify one hearing officer after another until a litigant cherry-picks the one that he wants undermines the integrity of the process. Recusal also has a disruptive effect, particularly in a case, such as this one, where the evidentiary hearing has begun. As a new hearing officer could not make credibility determinations on a cold transcript, the hearing would need to start from scratch. Allowing recusal on specious grounds under such circumstances would allow a party to reboot a case that was not going well, further undermining the integrity of the process.

Therefore, the Motion for Recusal is denied.

[3] As can the District if the ruling is not in the District's favor.

Exhibit D

# Clarification Request from Today's Hearing

From: Robert ([redacted]verizon.net)
To: plkennedyesq@aol.com
Cc: [redacted]yahoo.com; hrosen@berchemmoses.com
Date: Wednesday, September 24, 2025 at 08:29 PM EDT

Dear Hearing Officer Kennedy,

I would like to respectfully document a point from today's hearing and to seek clarification for the record.

During the hearing I asked, referring to when my time comes to present my case, if once I submit my exhibits I would be able to question Ms. Truscello about the exhibits I put in. You responded, "Nope."

I asked this in good faith, trying to understand the process and ensure I am following the correct procedures. I understand that cross-examination is limited to the scope of the district's presentation. However, I believe that the opportunity to question a witness about exhibits submitted during one's own case presentation is an essential part of the hearing process and a fundamental aspect of procedural due process. The exhibits I intend to introduce are directly relevant to my case, and my ability to question Ms. Truscello about those exhibits is essential to presenting a complete and meaningful defense.

Therefore, I respectfully request confirmation that I will be permitted to recall the district's witness or witnesses relevant to my case and to question them about the exhibits I submit during my time to present my case. My intent is not to re-litigate issues raised in the district's case, but to develop evidence directly related to my claims.

Thank you for your attention to this important matter.

Sincerely,

Robert [redacted]